Kerry K. Fennelly (SBN 232621)
kfennelly@kraw.com
Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund and
Board of Trustees of the
GCIU-Employer Retirement Fund

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>EAGLE GRAPHICS, INC., a New York corporation,<br><br>　　　　　Defendant. | CASE NO. 2:20-CV- 02082<br><br>**COMPLAINT**<br><br>Collection of Benefit Contributions pursuant to ERISA Section 515 (29 U.S.C. § 1145) |

## COMPLAINT

Plaintiffs, GCIU-Employer Retirement Fund ("Plaintiff Fund") and Board of Trustees of the GCIU-Employer Retirement Fund ("Board of Trustees"), for causes of action against Defendant Eagle Graphics, Inc., allege as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

1.     This is an action for collection of contributions from Defendants due and owing to the GCIU-Employer Retirement Fund ("Fund").  This action arises under section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145.

2.     This court has jurisdiction over this action under ERISA Sections 502(e), 29 U.S.C. §§ 1132(e).

3.     Venue lies in this Court under ERISA Sections 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the GCIU-Employer Retirement Fund ("Fund") is administered in Los Angeles County, California.

## PARTIES

4.     Plaintiff Fund is a multiemployer pension plan within the meaning of ERISA Sections 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5.     Plaintiff Board of Trustees is comprised of the present trustees who are the named fiduciaries of the Fund within the meaning of § 402(a) of ERISA, 29 U.S.C. § 1102(a), and is the plan sponsor of the Fund within the meaning of §§ 3(16)(B)(iii) and 4001(a)(10) of ERISA, 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10).  The Board of Trustees administers the Fund in Los Angeles County, California.

6.     Pursuant to ERISA Sections 502(a)(3) and 4301(a)(1), 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Board of Trustees is authorized, as a named fiduciary, to bring this action on behalf of the Fund, its participants and beneficiaries for the purpose of collecting withdrawal liability. The Fund is also authorized to bring this action in its own name pursuant to a provision contained within Article VIII, Section 18 of the Plaintiff Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of the Fund.  A true and correct copy of the Fund's Trust Agreement is attached hereto as Exhibit 1.

7.     Defendant Eagle Graphics, Inc., ("Eagle Graphics") is an active corporation organized under the laws of the State of New York.

2

8.     At all times relevant to this action, Defendant was an "employer" as the term is defined by ERISA Section § 3(5), 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

## BACKGROUND

9.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 8 of this Complaint as though fully set forth herein.

10.     On or about August 24, 2017, Plaintiff Fund and Defendant entered into a Repayment Plan Agreement ("Agreement") regarding pension benefit contributions that were owed to the Plaintiff Fund for the period of July 1, 2011 through April 30, 2017.

11.     Pursuant to the Agreement, Defendant was obligated to submit to a payroll audit covering the period of July 1, 2011 through April 30, 2017 to ascertain the amount of the contributions that would be owed to the Plaintiff Fund; to remit ongoing benefit contributions beginning with May 2017; and to pay the Plaintiff Fund $74,465.15 upon execution which would be applied to the total owed for July 1, 2011 through April 30, 2017 to be determined in the payroll audit.

12.     On or about August 31, 2017, Plaintiffs received Defendant's payment of $74,465.15 as required by the Agreement.

13.     Defendant resumed contributions beginning with those for May 2017 but stopped remitting contributions beginning with those due for February 2018, thus breaching the Agreement.

14.     On or about August 13, 2019, Defendant sent a payment to the Plaintiff Fund contributions for February 2018 through May 2018. At that time, Defendant owed contributions for February 2018 through June 2019, thus the payment did not bring Defendant's delinquencies current.

15.     On or about October 23, 2019, Plaintiff's payroll auditor completed the payroll audit. Due to Defendant's delinquency with respect to ongoing contribution obligations

3

during the pendency of the payroll audit, the payroll audit period was expanded from April 30, 2017 to May 31, 2019. A true and correct copy of the Payroll Audit Report prepared by the Fund's auditor is attached hereto as Exhibit 2.

## FIRST CAUSE OF ACTION

(Payroll Audit Liability)

16.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 15 of this Complaint as though fully set forth herein.

17.     Section 515 of ERISA, 29 U.S.C. § 1145, provides that:

> "Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

18.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides that an employer is obligated to pay unpaid contributions, liquidated damages, interest, reasonable attorney's fees, and costs and expenses of suit to be determined upon motions or at trial.

19.     At all times relevant herein, Defendant was a party to a Collective Bargaining Agreement ("CBA") with the Graphic Communications Conference/ International Brotherhood of Teamsters Local 503-M ("Local Union").  True and correct copies of the relevant CBAs are attached hereto as Exhibit 3.

20.     Pursuant to the CBAs, the Defendant is bound by the terms and conditions, rules and regulations of the Plaintiff Fund's Trust Agreement.

21.     Under Article IX, Section 2 and 3 of the Trust Agreement governing the Plaintiff Fund, Defendant is contractually liable to timely report on a monthly basis the hours worked by all of its employees performing bargaining unit work and pay contributions to the Plaintiff Fund accordingly.

22.     Under Article IX, Section 5 of the Plaintiff Fund's Trust Agreement, Defendant is also required to permit the Plaintiff Fund to review its books and records to confirm

4

COMPLAINT

that monthly contributions are being made in accordance with the terms of the CBA.

23.     Moreover, under Article IX, Section 5, in the event the payroll audit discloses that the participating employer has not paid contributions as required by the CBA, the employer shall be liable for the costs of the audit.

24.     In the event that Plaintiff Fund must file suit to collect unpaid monthly contributions, Article IX, Section 7 of the Trust Agreement obligates Defendant to pay audit costs, attorney's fees and costs and expenses of said suit.

25.     Furthermore, in the event that Plaintiff Fund must file suit to collect unpaid monthly contributions, Defendant must also pay liquidated damages to Plaintiff Fund in accordance with Article IX, Section 7 of its Trust Agreement which provides that:

> In the event it is necessary to pursue a collection to a court judgment, the delinquent employer shall be liable for additional liquidated damages of ten percent (10%) of the amount of the contributions which are owed, making a total of twenty percent (20%). As provided in Section 515 of the Employee Retirement Income Security Act of 1974, as amended, the employer shall, if a judgment is entered, be obligated to the Trust Fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of twenty percent (20%), reasonable attorney's fees and costs, and such other legal or equitable relief as may be appropriate.

26.     The audit of Defendant's books and records was performed by the Plaintiff Fund covering the period of July 1, 2011 through May 31, 2019.

27.     The payroll audit revealed that Defendant owed $121,304.37 in principal, which included base contributions and contribution increases under the Fund's Rehabilitation Plan, $43,751.51 in interest at 10% per annum calculated through October 18, 2019 (when the auditor's report was drafted), and $6,539.50 in audit costs (collectively, "Payroll Audit Liability"). See Exhibit 2.

28.     The payroll audit accounted for the February 2018 through May 2018 contribution payment as set forth in Paragraph 14 above.

29.     The Payroll Audit Report did not reflect Defendant's earlier payment of $74,465.15 as set forth in Paragraph 12 above.

COMPLAINT

30.    In applying the $74,465.15 payment to the Payroll Audit Liability, this payment was applied to the oldest debt first. To the extent that any shifts were paid by this payment, the payroll auditor revised the interest incurred to be through August 31, 2017, when this payment was received, instead of October 18, 2019, when the auditor's report was drafted.

31.    The $74,465.15 payment accounted for the entirety of the July 1, 2011 through December 31, 2013 contributions and interest, and partially covered the January 1, 2014 through December 31, 2014 balance of the Payroll Audit Liability.

32.    Defendant's remaining Payroll Audit Liability is $87,753.00, based on interest calculated through October 18, 2019, and including payroll audit costs of $6,539.50.

33.    On November 13, 2019, Plaintiffs, through counsel, informed Defendant of the updated amounts owed. A true and correct copy of the letter to Defendant is attached hereto as Exhibit 4.

34.    Pursuant to Article IX, Section 6 of Plaintiffs' Trust Agreement, interest of ten percent (10%) per annum continues to accrue on the delinquent contribution portion of the Payroll Audit Liability until paid.

35.    Moreover, pursuant to Article IX, Section 6 of Plaintiffs' Trust Agreement, Defendant is also liable for liquidated damages of ten percent (10%) of the amount of contributions that are owed. However, pursuant to Article IX, Section 7 of Plaintiffs' Trust Agreement, if a judgment is entered against Defendant, liquidated damages of twenty percent (20%) of the amount of contributions that are owed will be due.

36.    Defendant has not paid its Payroll Audit Liability and liquidated damages.

37.    Defendant breached the Trust Agreement by failing to report all hours worked by its employees performing bargaining unit work under the CBAs and to pay all contributions owed to the Plaintiff Fund.

38.    As a result, Defendant is in violation of section 515 of ERISA, 20 U.S.C. § 1145.

///

///

COMPLAINT

## SECOND CAUSE OF ACTION

### (Collection of Minimum Total Annual Contributions)

39.    Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40.    Plaintiff Fund's Rehabilitation Plan obligates each participating employer to pay a minimum total annual contribution amount. Specifically, the Rehabilitation Plan states that,

> Effective for each calendar year on or after the adoption of the Rehabilitation Plan by the bargaining parties, the required minimum contributions (including the base contribution and the rehabilitation plan contributions increases) for each employer (determined on a controlled group basis) will be no less than the total annual contributions for the that employer from September 1, 2008 through August 31, 2009.

A true and correct copy of the relevant Rehabilitation Plan provision is attached hereto as Exhibit 5.

41.    Between September 1, 2008 through August 31, 2009, ("base period"), Defendant's total contributions totaled $17,360.35.

42.    Based on the contributions that were paid by the Defendant and those that are still to be paid based on the July 1, 2011 through May 31, 2019 payroll audit, Defendant has not met its minimum total annual contribution requirement for the 2011, 2012, 2015, 2016, 2018, and 2019 years.

43    For the period of January 1, 2011 through December 31, 2011, Defendant's total annual contributions were $16,746.13. As such, Defendant underpaid its minimum total annual contributions by $614.22.

44.    For the period of January 1, 2012 through December 31, 2012, Defendant's total annual contributions were $15,572.69. As such, Defendant underpaid its minimum total annual contributions by $1,787.66.

45.    For the period of January 1, 2015 through December 31, 2015, Defendant's total annual contributions to be paid will be $16,682.44. As such, Defendant's underpayment

of its minimum total annual contributions will be $677.91.

46.     For the period of January 1, 2016 through December 31, 2016, Defendant's total annual contributions to be paid will be $17,068.44. As such, Defendant's underpayment of its minimum total annual contributions will be $291.91.

47.     For the period of January 1, 2018 through December 31, 2018, Defendant's total annual contributions to be paid will be $15,777.76. As such, Defendant's underpayment of its minimum total annual contributions will be $1,582.59.

48.     For the period of January 1, 2019 through December 31, 2019, Defendant's total annual contributions to be paid will be $6,381.06. As such, Defendant's underpayment of its minimum total annual contributions will be $10,979.29.

49.     Plaintiffs notified Defendant of their outstanding underpaid minimum total annual contribution by letter sent January 31, 2020. However, Defendant has not paid the $15,933.58 due and owing.

50.     Pursuant to Plaintiff Fund's Trust Agreement and 29 U.S.C. §1132(g)(2), in the event the Defendant fails to timely remit the contributions, it is liable not only for the amount of contributions due, but also for: (1) interest on the unpaid and untimely paid Fund contributions, at the rate of ten percent (10%) per annum; (2) liquidated damages equal to twenty percent (20%) of those delinquent contributions; and (3) costs and fees of collection and attorneys' fees.

51.     By reason of the foregoing, Defendant is indebted to Plaintiffs in the sum of $15,933.58, plus interest, liquidated damages, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION

### (Audit of Books and Records)

52.     The allegations of Paragraphs 1 through 51 are incorporated by reference as if fully restated.

53.     The CBA and Plaintiff Fund's Trust Agreement obligate Defendant to permit the Plaintiffs, on demand, to check, examine and audit its books and records, including its payroll records, relating to hours worked by all employees, including bargaining unit,

8

COMPLAINT

and non-bargaining unit employees, of Defendant.

54.    Plaintiff Fund's Trust Agreement obligate Defendant to timely report on a monthly basis the hours worked by all of its employees performing bargaining unit work and to

pay contributions to the Plaintiff Fund accordingly.

55.    Defendant is contractually liable under the Trust Agreement to pay the costs and expense of the audit, all auditing fees, and any and all attorney fees and costs incurred by the Plaintiffs in obtaining the audit.

56.    Upon information and belief, Defendant had an obligation to make contributions with regard to the hours worked by employees covered by the CBA during the period of June 1, 2019 through January 21, 2020.

57.    Plaintiffs require an audit covering the period June 1, 2019 through January 21, 2020 to determine whether Defendant has accurately reported the number of hours worked by its employees.

58.    Defendant has not provided Plaintiffs with the requisite books and records for June 1, 2019 through January 21, 2020.

59.    Defendant, therefore, must be ordered to produce its books and records for Plaintiffs' review and audit, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys' fees and costs incurred in obtaining that audit.

WHEREFORE, Plaintiffs request the following relief:

(a) On Plaintiffs' First Cause of Action, a judgment against Defendant, and on behalf of Plaintiffs, for:

        (i)     Unpaid contributions and audit costs for the audit period of July 1, 2011 through May 31, 2019, plus associated interest and liquidated damages for unpaid contributions;

        (ii)    Plaintiffs' reasonable attorneys' fees and costs of the action; and

        (iii)   Such other legal and equitable relief as the Court deems appropriate.

COMPLAINT

(b) On Plaintiffs' Second Cause of Action, judgment against the Defendant, and on behalf of Plaintiffs for:

        (i)    $15,933.58 in underpaid total minimum annual contributions for the periods of January 1, 2011 through December 31, 2011; January 1, 2012 through December 31, 2012; January 1, 2015 through December 31, 2015; January 1, 2016 through December 31, 2016; January 1, 2018 through December 31, 2018; and January 1, 2019 through December 31, 2019;

        (ii)   Judgment against the Defendant for (1) interest at the rate of ten percent (10%) per annum; plus (2) the greater of interest on the underpaid contributions or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) costs and fees of collection and attorneys' fees; and

        (iii)  Such other legal and equitable relief as the Court deems appropriate.

(C) On Plaintiffs' Third Cause of Action, judgment against the Defendant, and on behalf of Plaintiffs:

        (i)    Requiring Defendant to produce its books and records covering the period of June 1, 2019 through January 21, 2020 for Plaintiffs' review and audit;

        (ii)   Plaintiffs' reasonable attorneys' fees and costs of the action; and

        (iii)  Such other legal and equitable relief as the Court deems appropriate.

COMPLAINT

1

Dated: <u>March 3, 2020</u>                    <u>/s/ Valentina S. Mindirgasova</u>

2                                             Kerry K. Fennelly
                                              Valentina S. Mindirgasova
3                                             Kraw Law Group, APC
                                              1017 East Grand Avenue
4                                             Escondido, CA 92025
                                              (760) 747-1100
5                                             (760) 747-1188
                                              kfennelly@kraw.com
6                                             vmindirgasova@kraw.com

7                                             Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT 1

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 12
2:20-cv-02082



# GCIU-EMPLOYER RETIREMENT FUND

## Trust Agreement

**Effective January 1, 1976**

**As Revised and Restated December 1, 2012**

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 13
2:20-cv-02082

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 14
2:20-cv-02082

# TABLE OF CONTENTS

PREAMBLE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARTICLE I — DECLARATION OF TRUST  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

       1. Name  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

       2. Purpose  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

       3. Nature of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

       4. Duration of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

       5. Term of Trust Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARTICLE II — DEFINITIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARTICLE III — THE TRUSTEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       1. The Board of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       2. Statutory Capacities of Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       3. Agents for Service of Process  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       4. Number of Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       5. Alternate Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       6. Identity of Present Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

       7. Appointment of Successor Employer Trustees  . . . . . . . . . . . . . . . . . . . 6

       8. Appointment of Successor Labor Organization Trustees  . . . . . . . . . . . . . . . 6

       9. Individuals Disqualified from Serving as Trustees  . . . . . . . . . . . . . . . . .6

     10. Acceptance of Appointment by Trustees . . . . . . . . . . . . . . . . . . . . . . . . . 6

     11. Term of Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

     12. Termination of Appointment by Appointing Entity  . . . . . . . . . . . . . . . . . . . 6

     13. Termination of Appointment for Failure to Attend Meetings  . . . . . . . . . . . 7

     14. Termination of Appointment for Conviction of a Crime  . . . . . . . . . . . . . . .7

     15. Termination of Appointment for Mental Incapacity  . . . . . . . . . . . . . . . . . .7

     16. Resignation of Appointment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

     17. Vacancies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

     18. Return of Books and Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

— A —

GCIU-Employer Retirement        EXHIBIT 1 to COMPLAINT - 15
Fund, et al. v. Eagle                 2:20-cv-02082
Graphics, Inc.

ARTICLE IV — TRUST FUND ADMINISTRATION . . . . . . . . . . . . . . . . . . . . . . . . 8

    1. Manner of Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    2. Constitution of a Quorum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    3. Proxies Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    4. Regular Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    5. Special Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    6. Action without a Formal Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    7. Failure of the Trustees to Agree—Arbitration . . . . . . . . . . . . . . . . . . . . . 8

    8. Election of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    9. Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    10. Authorized Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    11. Compensation and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    12. Benefits to Trustees Not Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE V — PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    1. Bargaining Unit Employees Entitled to Participate . . . . . . . . . . . . . . . . .11

    2. Labor Organization Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    3. Non-Bargaining Unit Employees of Participating Employers . . . . . . . . . . 11

    4. Transferred Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    5. Trust Fund Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    6. Unauthorized Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    7. Sole Proprietors and Partners Ineligible . . . . . . . . . . . . . . . . . . . . . . . . . .12

    8. Participation of Non-Bargaining Unit Employees . . . . . . . . . . . . . . . . . . .12

ARTICLE VI — TRUSTEE RESPONSIBILITIES . . . . . . . . . . . . . . . . . . . . . . . . . .13

    1. General Duty - Receipt of Contributions and Administration of the Retirement
       Benefit Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    2. Compliance with the Internal Revenue Code . . . . . . . . . . . . . . . . . . . . . . 13

    3. Funding Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    4. Basis of Payments to and from Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . 13

    5. Application of Trust Fund Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    6. Fiduciary Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

— B —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 16
2:20-cv-02082

7. Deposits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

8. Investments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

9. Specifically Permitted Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10. Title to Investments and Other Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11. Fidelity Bond  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

12. Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

13. Annual Audit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

14. Annual Actuarial Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

15. Plan Description  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

16. Annual Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

17. Statements of Accrued Pension Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18. Pension Funding Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19. Income Tax Withholding and Reporting  . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

20. Documents to be Examined or Furnished  . . . . . . . . . . . . . . . . . . . . . . . . . . .17

21. Procedure for Establishing Funding Policy  . . . . . . . . . . . . . . . . . . . . . . . . .18

22. Payments to Pension Benefit Guaranty Corporation  . . . . . . . . . . . . . . . . .18

23. Benefit Claim and Review Procedures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

ARTICLE VII — ALLOCATION OR DELEGATION OF TRUSTEE
              RESPONSIBILITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

1. Allocation of Responsibilities to Committees . . . . . . . . . . . . . . . . . . . . . . . 19

2. Delegation of Investment Responsibilities  . . . . . . . . . . . . . . . . . . . . . . . . . . 19

3. Delegation of Other Responsibilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4. Review of Performance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

ARTICLE VIII - TRUSTEE POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

1. General Powers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

2. Specific Powers Discretionary  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

3. Benefit Plan Being Administered  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4. Amendments to the Benefit Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

5. Means of Providing Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

6. Facility of Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

— C —

7. Administrative Manager . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

8. Banking Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

9. Other Professional and Non-Professional Persons . . . . . . . . . . . . . . . . . . . . 22

10. Obtaining of Necessary Premises, Equipment, and Supplies . . . . . . . . . . . 22

11. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

12. Borrowing Money . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

13. Reserve Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

14. Payment of Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

15. Refunds of Contributions Erroneously Paid . . . . . . . . . . . . . . . . . . . . . . . . . 23

16. Penalties for False or Withheld Information . . . . . . . . . . . . . . . . . . . . . . . . . 23

17. Correction of Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

18. Prosecution of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

19. Defense of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20. Compromise of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

21. Subscription and Participation Agreements . . . . . . . . . . . . . . . . . . . . . . . . . 24

22. Participation in Non-Profit Educational Organizations . . . . . . . . . . . . . . . . 24

23. Reciprocity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

24. Mergers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

25. Eligible Rollover Plan Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

26. Interpretation and Application of Documents . . . . . . . . . . . . . . . . . . . . . . . . 25

27. Adoption and Implementation of a Funding Improvement Plan and
    Rehabilitation Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

ARTICLE IX — CONTRIBUTIONS AND COLLECTIONS . . . . . . . . . . . . . . . . . . . 27

1. Contribution Reporting Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

2. Contributions Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

3. Contribution Due Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

4. Delinquent Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

5. Audit of Employer Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

6. Liquidated Damages, Attorneys Fees, Interest, and Other Charges . . . . . . . 28

7. Additional Liquidated Damages in Event of Court Judgement . . . . . . . . . . 28

— D —

8. Waiver of Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

9. Protection of Employees in Cases of Delinquency . . . . . . . . . . . . . . . . . . 28

10. Coordination with Provisions in Collective Bargaining Agreements . . . . . 29

ARTICLE X — EMPLOYER WITHDRAWAL LIABILITY . . . . . . . . . . . . . . . . . . . 30

1. Calculation and Collection of Employer Withdrawal Liability . . . . . . . . . . 30

2. Determination of Amount of Unfunded Vested Benefits Allocable
to Withdrawing Employer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

3. Payment of Withdrawal Liability in Monthly Installments . . . . . . . . . . . . . 30

4. Adoption of Administrative Rules and Regulations . . . . . . . . . . . . . . . . . . . 30

5. Notice of Potential Withdrawal Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ARTICLE XI — BENEFIT CLAIM, HEARING AND ARBITRATION
PROCEDURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

1. Hearings Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

2. Requests for Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

3. Conduct of Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

4. Hearing Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

5. Arbitration - Mandatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

6. Benefit Claim and Review Procedures for a Participating Employee or
Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

7. Sole and Exclusive Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

ARTICLE XII — LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

1. Liabilities and Debts of Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

2. Liabilities and Debts of Participating Parties . . . . . . . . . . . . . . . . . . . . . . . .34

3. Personal Liabilities of Trustees and Fiduciaries . . . . . . . . . . . . . . . . . . . . .34

4. Judgments against Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

5. Participating Parties' Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

6. Cessation of Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

7. Protection of Trust Fund, Contributions, and Benefits . . . . . . . . . . . . . . . . 35

8. Reliance upon Written Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

9. Agents of Trust Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

— E —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 19
2:20-cv-02082

ARTICLE XIII —MISCELLANEOUS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    1. Trust Fund Offices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    2. Applicable Laws and Regulations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    3. Notices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    4. Severability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    5. Title—Words  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

    6. Information to be Furnished and Distributed  . . . . . . . . . . . . . . . . . . . . . . . 36

ARTICLE XIV—AMENDMENTS AND TERMINATION  . . . . . . . . . . . . . . . . . . . 37

    1. Amendments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    2. Termination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

    3. Allocation upon Termination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

SIGNATORY PARTIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

— F —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 20
2:20-cv-02082

# PREAMBLE

WHEREAS, the signatory parties (or their predecessors in interest) did previously execute a "Retirement Benefit Plan", with an ef  fective date of October 1, 1955, which document created and governed a joint labor-management employee pension benefit fund presently known as the

**GCIU — Employer
Retirement Fund
and**

WHEREAS, said document did also create an employee pension benefit plan present ly known as the

**GCIU — Employer
Retirement Benefit Plan
and**

WHEREAS, said document was subsequently amended in several respects, and

WHEREAS, said document was adopted in accordance with the applicable provi  - sions of Section 302(c) of the Labor Management Relations   Act of 1947 and applicable provisions of the Internal Revenue Code, and

WHEREAS, the enactment of the Employee Retirement Income Security Act of 1974 mandated the adoption of certain substantive changes in the documents governing employ ee pension benefit funds and thus  required amendment of the existing document, and

WHEREAS, the  Trustees have again determined to revise and restate the existing Trust Agreement so as to further take into account contemporary needs and conditions, including amendments which have been made since the September 1,  1999 revision,

NOW THEREFORE, the Trustees and remaining signatory parties do hereby revise and restate the "Trust Agreement", as follows:

— 1 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 21
2:20-cv-02082

# ARTICLE I
# DECLARATION OF TRUST

1.   *Name*

The Trustees and the remaining signatory parties hereby reaffirm the declaration and establishment of a Trust Fund known as the

**GCIU — Employer**
**Retirement Fund**

The Trustees may hold property, enter into contracts, and in all matters act on behalf of the Trust Fund in such name.  The Trust Fund may sue or be sued in such name.

2.   *Purpose*

The purpose of the Trust Fund is to provide an entity to which contributions from participating employers can be paid and through which the       Trustees can administer the GCIU—Employer Retirement Benefit Plan for the benefit of the participating employees for whom such contributions have been paid, and their beneficiaries.

3.   *Nature of Trust Fund*

The  Trust Fund is a "trust" as contemplated by Section 302(c)(5) of the Labor Management Relations Act of 1947; a "trust" as contemplated by Section 401(a) of the Internal Revenue Code; and a "trust" as contemplated by Section 403(a) of the Employee Retirement Income Security Act of 1974. It is an entity separate and apart from the participating employers, employer associations, and labor organizations.

4.   *Duration of Trust Fund*

The Trust Fund shall continue in existence on an indefinite basis, contemporaneously with the term of this Trust Agreement.

5.   *Term of Trust Agreement*

This revised and restated Trust Agreement shall be effective as of December 1, 2012, and shall continue indefinitely until such time as it may be terminated in accordance with the provisions of Article XIV hereof.

EXHIBIT 1 to COMPLAINT - 22
2:20-cv-02082

# ARTICLE II
## DEFINITIONS

The following definitions shall govern in this Trust Agreement:

1. "Beneficiary"—any person designated by a participating employee, under the terms of the Retirement Benefit Plan, to receive benefits, if any, upon the death of such participating employee.

2. "Collective bargaining agreement"—a written agreement between a participating employer and a participating labor or ganization, providing generally for wages, hours, and working conditions, by the terms of which the employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

3. "Contributions"—the payments which a participating employer is obligated to make to the Trust Fund pursuant to the terms of a collective bargaining agreement, subscription agreement, or participation agreement.

4. "Participating employee"—an individual employed by a participating employer and for whom that employer makes contributions to the Trust Fund, as allowed by the provisions of Article V, Sections 1, 2, 3, 4, and 5 and any individual who formerly was so employed and who has achieved vested or retired status under the terms of the Retirement Benefit Plan.

5. "Participating employer"—any employing entity that is party to a collective bargaining agreement or subscription agreement with a participating labor or ganization, as allowed by the provisions of Article V, Section 1 hereof. An employing entity may be a sole proprietorship, partnership, unincorporated association, corporation, or joint venture; or the United States of America; or any state, county or municipality; or other public agency, public corporation, or governmental unit.

A participating labor organization, or the Trust Fund, or any related trust fund, shall also be considered as a "participating employer" for the limited purpose of allowing the employees of such entities to participate in the Trust Fund, as permitted by Article V, Sections 2 and 5 hereof.

6. "Participating employer association"—any employer association or multi-employer bargaining group that is party to a collective bargaining agreement with a participating labor organization, as allowed by the provisions of Article V, Section 1 hereof.

7. "Participating labor or ganization"—Graphic Communications Conference of the International Brotherhood of Teamsters, and any local union, district council, joint district council, conference, or other bar gaining agency af filiated with or represented by the Conference, that has entered into a collective bar gaining agreement or subscription agreement with a participating employer or employer association, as allowed by the provisions of Article V, Section 1 hereof.

8. "Participation agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer is obligated to make contributions to the Trust Fund on behalf of the non-bargaining unit employees covered by such an agreement.

9. "Pension benefits" or "employee pension benefits"—the pension and related benefits provided in the Retirement Benefit Plan.

— 3 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 23
2:20-cv-02082

10. "Related trust fund"—an employee benefit trust fund, other than this Trust Fund, to which participating employers make contributions as required by collective bargaining agreements with participating labor organizations.

11. "Retirement Benefit Plan"—The GCIU—Employer Retirement Benefit Plan as constituted on the effective date of this Trust Agreement and as hereafter amended.

12. "Signatory parties"—the parties who have created this Trust Agreement and whose identities and signatures appear on the last page hereof and their successors. (See Note on page 40)

13. "Subscription agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer and participating labor organization subscribe to the terms and provisions of this Trust Agreement, and by the terms of which an employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

14. "Trustees" or "Board of Trustees"—the Trustees of the Trust Fund and their successors.

15. "Trust" or "Trust Fund"—the entity created by this Trust Agreement and all property and money held by such entity, including all contract rights and records.

— 4 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 24
2:20-cv-02082

# ARTICLE III
## THE TRUSTEES

1. *The Board of Trustees*

   The Trust Fund and the Retirement Benefit Plan shall be controlled and administered by a Board of Trustees composed of Employer Trustees and Labor Organization Trustees.

2. *Statutory Capacities of Trustees*

   For purposes of complying with Section 302(c)(5)(B) of the Labor Management Relations Act of 1947, the participating employers shall be represented, in the administration of the Trust Fund, by the Employer Trustees; and the participating employees shall be represented by the Labor Organization Trustees.

   For purposes of complying with the various provisions of the Employee Retirement Income Security Act of 1974 the  Trustees shall be considered as "named fiduciaries", "fiduciaries", the "plan administrator", and the "plan sponsor", as those terms are used in the Act.

3. *Agents for Service of Process*

   The Trustees shall also be considered as agents of the  Trust Fund for the purpose of accepting service of legal process, provided that the  Trustees may designate their administrative manager, or another person, as agent of the  Trust Fund for this purpose.

4. *Number of Trustees*

   There  may be up to eighteen (18)   Trustees, nine (9) of whom shall be Employer Trustees and nine (9) of whom shall be Labor Or ganization Trustees.

5. *Alternate Trustees*

   There may also be up to ten (10) alternate  Trustees, five (5) of whom shall be alter - nate Employer  Trustees and five (5) of whom shall be alternate Labor Or        ganization Trustees.

   In the event any Employer Trustee is absent from any meeting of the Trustees he may designate an alternate Employer   Trustee to serve in his place and stead. If the absent Employer Trustee fails to make such a designation, the Employer    Trustees who are present at the meeting may designate an alternate Employer Trustee to serve in the place and stead of the absent  Trustee.

   In the event any Labor Or  ganization Trustee is absent from any meeting he may designate an alternate Labor Or ganization Trustee to serve in his place and stead. If the absent Labor Or  ganization  Trustee fails to make such a designation, the Labor Organization Trustees who are present at the meeting may designate an alternate Labor Organization Trustee to serve in the place and stead of the absent  Trustee.

   The alternate Trustees, if any, shall be appointed in the same manner and retain such appointment under the same conditions as the regular  Trustees. When designated to serve for a regular Trustee, and while serving, an alternate  Trustee shall have all of the powers and responsibilities of a regular  Trustee.

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 25
2:20-cv-02082

6.   *Identity of Present Trustees*

The regular and alternate     Trustees servin g as of the revised date of this       Trust Agreement are:

| Employer Trustees | Labor Organization Trustees |
|---|---|
| Hugh Gaylord | Edward A. Treacy |
| Jim Janiga | Stephen E. Northup |
| Joseph Conley | John D. Bachler |
| Thomas E. Phillips | George Tedeschi |
| Tom Sarnecki | |
| | *Alternate Labor Organization Trustees* |
| | Ralph Meers |

7.   *Appointment of Successor Employer Trustees*

In the event of the termination of appointment, resignation, or death of an Employer Trustee, a successor Employer   Trustee shall be appointed by unanimous action of the remaining Employer Trustees.

8.   *Appointment of Successor Labor Organization Trustees*

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be appointed by unanimous action of all of the signatory labor or  ganizations. If any signatory labor or ganization fails, within sixty (60) days, to respond to a suggested appointment made by the other signatory labor or ganizations, that signatory labor or  ganization will be deemed to have waived its rights to participate in or to contest the appointment.

9.   *Individuals Disqualified from Service as Trustees*

No individual who has been convicted of any of the crimes listed in Section 41   1(a) of the Employee Retirement Income Security Act of 1974 shall serve as a  Trustee during the period of disqualification specified in the statute.

10.  *Acceptance of Appointment by Trustees*

Each Trustee shall sign a document accepting his appointment as  Trustee and agreeing to abide by the terms and provisions of this  Trust Agreement.

11.  *Term of Appointment*

Each Trustee shall serve until termination of appointment, resignation, or death.

12.  *Termination of Appointment by Appointing Entity*

The appointment of an Employer  Trustee may be terminated, at any time, by unani - mous action of the remaining Employer  Trustees.

The appointment of a Labor Organization Trustee may be terminated, at any time, by unanimous action of all of the signatory labor or ganizations.

The termination of a   Trustee's appointment shall be ef fective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or signatory labor organizations. Any such notice shall be addressed to

— 6 —

the Trustees and shall be mailed to the Trust Fund's administrative office.

13.   *Termination of Appointment for Failure to Attend Meetings*

The appointment of a Trustee shall be automatically terminated if such Trustee fails to attend three *(3)* consecutive meetings of the Trustees, without being excused from attendance by specific action of the remaining Trustees noted in the minutes. Alternate Trustees are exempt from this requirement.

14.   *Termination of Appointment for Conviction of a Crime*

The appointment of a Trustee shall be automatically terminated if such Trustee is convicted of any of the crimes listed in Section 41 1(a) of the Employee Retirement Income Security Act of 1974. If a Trustee who is so disqualified should continue to serve as a Trustee, in circumstances where the remaining Trustees have no knowledge of his disqualification, such service shall not invalidate any of the actions or decisions of the Trustees during the period of such service.

15.   *Termination of Appointment for Mental Incapacity*

The appointment of a Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by court decree.

16.   *Resignation of Appointment*

A Trustee may resign his appointment at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

17.   *Vacancies*

No vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust Fund so long as a quorum exists as specified in Article IV, Section 2 hereof.

18.   *Return of Books and Records*

In the event of the termination of appointment, resignation, or death of a Trustee, the Trustee (or his legal guardian, heirs, or personal representative) shall, upon the request of the Chairman or the Secretary or of the administrative manager, forthwith turn over to the administrative manager, any and all records, books, documents, monies, and other property in the possession of the Trustee, or under his control, that belong to the Trust Fund or that were received by him in his capacity as Trustee.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 27
2:20-cv-02082

# ARTICLE IV
# TRUST FUND ADMINISTRATION

1. *Manner of Voting*

Any action to be taken by the Trustees shall require a favorable vote by the Employer Trustees and by the Labor Organization Trustees, according to the unit method of voting. The Employer Trustees shall have but one vote among them (which shall be determined by a majority of the Employer Trustees present) and the Labor Organization Trustees shall have but one vote among them (which shall be determined by a majority of the Labor Organization Trustees present).

Any Trustee including the Chairman or Secretary may offer or second any motion or resolution for the Trustees' consideration. Any individual Trustee shall be entitled, upon request, to have his vote recorded in the official minutes.

2. *Constitution of a Quorum*

To constitute a quorum at any meeting of the Trustees there must be present at least three (3) Employer Trustees, or duly designated alternates, and three (3) Labor Organization Trustees, or duly designated alternates.

3. *Proxies Prohibited*

To encourage full attendance at meetings of the Trustees and due consideration of the matters being voted upon, there shall be no proxies. A Trustee must be present in order to cast a vote.

4. *Regular Meetings*

The Trustees shall hold regular periodic meetings consistent with the needs of Trust Fund business, provided that there shall be at least two *(2)* regular meetings held during each calendar year. The Trustees shall determine the time and place of all such meetings.

5. *Special Meetings*

Either the Chairman or the Secretary or any two *(2)* Trustees (one Employer and one Labor Organization Trustee) may call a special meeting of the Trustees by giving written notice to all the other Trustees of the time and place of such meeting, at least thirty (30) days before the date set for the meeting, provided that thirty (30) days advance notice shall not be necessary if all Trustees are agreeable to an earlier meeting.

6. *Action without a Formal Meeting*

The Trustees may take action without a formal meeting by means of the presentation of a written motion or resolution sent to all Trustees by the administrative manager and the subsequent obtaining of Trustee votes on the motion or resolution in letters , by email, or by facsimile transmission sent by each Trustee to the administrative manager . Any such action shall be reported in the minutes of the next formal meeting.

7. *Failure of the Trustees to Agree—Arbitration*

In the event the Employer Trustees and Labor Organization Trustees should deadlock on any matter submitted for their consideration, the dispute may be referred by either group of Trustees to an impartial arbitrator in accordance with the labor arbitration rules of the American Arbitration Association. A deadlock shall be deemed to occur when there

— 8 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 28
2:20-cv-02082

is a tie vote on any motion before the Trustees.

The Trustees shall attempt to agree on the joint submission of a statement of the issue in dispute. However, if the Trustees cannot jointly agree upon such a statement, each group of Trustees shall submit to the arbitrator, in writing, its version of the issue in dispute. As part of his award, the arbitrator shall state his determination as to the exact issue.

The decision and award of the arbitrator shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby.

The expenses of any such arbitration, including any court proceedings relating thereto, and the fee of the arbitrator and the reasonable attorney's and witness fees of the parties, shall be chargeable to the Trust Fund.

The procedure specified in this Section shall be the sole and exclusive procedure for the resolution of deadlocked issues.

8. *Election of Officers*

The Trustees shall elect a Chairman, Vice-Chairman, Secretary and Assistant Secretary. Two of these officers shall be Employer Trustees and two shall be Labor Organization Trustees. When the Chairman is an Employer Trustee, the Vice-Chairman shall also be an Employer Trustee; when the Secretary is a Labor Organization Trustee, the Assistant Secretary shall also be a Labor Organization Trustee, or vice-versa.

The officers shall hold office indefinitely, provided that at the first regular meeting in each odd numbered year, either the Employer Trustees or the Labor Organization Trustees may obtain, on their request, a rotation of all offices and a new election of all officers.

An officer may resign his office at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed, emailed or faxed to the Trust Fund's administrative office. In case of the resignation, death, or termination of appointment of either the Chairman or the Secretary, there shall be a new election of all offices. In case of the resignation, death, or termination of appointment of either the Vice-Chairman or the Assistant Secretary, there shall be a new election of that office only.

9. *Duties of Officers*

The Chairman shall chair the meetings of the Trustees, shall appoint all committees and shall carry out such other duties as the Trustees may assign to him. The Vice-Chairman, in the absence of the Chairman, shall act in place of the Chairman and perform the Chairman's duties.

The Secretary shall advise the Trustees as to all correspondence and financial reports pertaining to the Trust Fund and shall keep minutes or records of all meetings, proceedings, and actions of the Trustees, provided that these particular responsibilities may be delegated to the administrative manager or to other professional persons retained by the Trustees. The Assistant Secretary, in the absence of the Secretary, shall act in place of the Secretary and perform the Secretary's duties.

10. *Authorized Signatures*

The Chairman or the Vice-Chairman, and the Secretary or the Assistant Secretary, shall sign all negotiable instruments, certificates, contracts, government reports, and other

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 29
2:20-cv-02082

legal documents on behalf of the Trust Fund, provided that the authority for signing nego-
tiable instruments may be delegated to the administrative manager, corporate trustee (if
any), depository bank, or custodian bank. All persons doing business with the Trust Fund
may rely on such signatures.

If the Trust Fund issues benefit checks to participating employees or their beneficia-
ries, the signatures of the Chairman and Secretary may be affixed thereto by a facsimile
signature device, under safeguards determined by the Trustees.

11.   *Compensation and Expenses*

No Trustee shall receive any compensation from the Trust Fund for services as a
Trustee.

Each Trustee (and each alternate Trustee who is called upon to substitute for an
absent Trustee) shall be reimbursed out of the Trust Fund for all expenses properly and
actually incurred by him in the administration of the Trust Fund. The Trustees shall estab-
lish the conditions for the reimbursement of expenses.

12.   *Benefits to Trustees Not Prohibited*

Nothing in this Trust Agreement shall prohibit a Trustee from receiving any benefits
under the terms of the Retirement Benefit Plan, if he is otherwise eligible for the same as
a participating employee or as a beneficiary of a participating employee.

GCIU-Employer Retirement          EXHIBIT 1 to COMPLAINT - 30
Fund, et al. v. Eagle                     2:20-cv-02082
Graphics, Inc.

## ARTICLE V
## PARTICIPATION

1.   *Bargaining Unit Employees Entitled to Participate*

Employees in bargaining units covered by collective bargaining agreements between employers and employer associations in the printing and paper products industry and the Graphic Communications Conference of the International Brotherhood of Teamsters, or any local union, district council, joint district council, conference or other bargaining agency affiliated with, merged with, or represented by the Conference, shall be entitled to participate in this Trust Fund.

The Trustees, however, shall have the authority to decline or terminate the participation of a particular bargaining unit if (a) the bargaining parties fail to provide the Trustees with a copy of their collective bargaining agreement or if the language of the contribution provision in such agreement does not meet the requirements of the Trustees, provided that the Trustees, in their discretion, may accept a subscription agreement in lieu of, or to supplement, a collective bargaining agreement; (b) the negotiated contribution rate is lesser, or greater, than the contribution rate or rates allowable under the terms of the Retirement Benefit Plan, provided that the Trustees, in their discretion, may accept the different rate and establish different eligibility rules or benefit formulas for the bargaining unit employees affected; (c) to allow participation as requested would violate any established rule, policy, or procedure governing participation in the Trust Fund; or (d) there exist other facts and circumstances which, in the Trustees' discretion, justify a declination or termination of participation.

2.   *Labor Organization Employees*

Employees of a participating labor organization may participate in the Trust Fund, provided that the labor organization executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees.

The rate at which the labor organization makes contributions to the Trust Fund shall not exceed the highest negotiated rate in the geographical area encompassed by that labor organization.

3.   *Non-Bargaining Unit Employees of Participating Employers*

Non-bargaining unit employees of a participating employer may participate in the Trust Fund, provided that the employer executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees. The contribution rate for nonbargaining unit employees shall be a monthly rate equivalent to that which the participating employer is required to pay for its bargaining unit employees. Contributions must be paid on all employees falling within an appropriate group as follows:

Group A—Office clerical employees. All office clerical employees at a particular establishment must be considered as a group and the employer must make contributions for all office clerical employees within such group.

Group B—Managerial employees/business agents/officers. All managerial employees, business agents and officers at a particular establishment must be considered as a

— 11 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 31
2:20-cv-02082

group and the employer must make contributions for all    employees within such group. Further, no contributions shall be accepted for a managerial employ ee, business agent or officer  group unless the employer also contributes for the    remaining employees  at that establishment.

Group C—Foremen and superintendents of printing department.     All non-contract foremen and superintendents of the printing department at a particular establishment must be considered as a group and the employer must make contributions for all foremen and superintendents in such group.

Group D—Other non-bargaining groups. The Trustees may recognize and allow other groups of non-bargaining unit employees to participate, as they may determine.

4.    *Transferred Employees*

Individual participating employees who may be transferred from a bar   gaining unit position to a non-bar gaining unit position at a particular establishment may continue to participate in the Trust Fund, provided that the participating employer makes contributions for all such employees. The contribution rate for transferred employees shall be a month - ly rate equivalent to that which the participating employer is required to pay for its bar    - gaining unit employees.

5.    *Trust Fund Employees*

Employees of the Trust Fund (if any), or of a related trust fund may participate in the Trust Fund, provided that the  Trustees authorize such participation. The cost of such par - ticipation shall be chargeable to the Trust Fund or to the related trust fund.

6.    *Unauthorized Participation*

The only individuals who are eligible to participate in and receive benefits from the Trust Fund shall be those employees in the bargaining units and other groups described in Sections 1, 2, 3, 4, and 5 above. It is expected that participating employers will submit contributions only on behalf of such employees.  The receipt by the  Trust Fund of contri - butions which may be submitted on behalf of individuals who are not eligible to partici  - pate shall not stop the   Trustees from declining or terminating the participation of such individuals nor shall it constitute a waiver of any of the provisions of this Article or of the Retirement Benefit Plan.

7.    *Sole Proprietors and Partners Ineligible*

Sole proprietors and partners are not to be considered as participating employees and shall not be eligible to participate in and receive benefits from the  Trust Fund.

8.    *Participation of Non-Bargaining Unit Employees*

It is intended that the participation of groups described in Sections 2, 3, 4 and 5 above (and the resulting coverage under and benefits from this Retirement Benefit Plan) will be in accordance with the non-discrimination laws contained in the  Tax Reform Act of 1986 and the Technical and Miscellaneous Revenue Act of 1988 and any amendments or regu- lations issued subsequent thereto, to the extent such laws and regulations are applicable to this Trust Fund and the Retirement Benefit Plan.     Any omissions or oversights will be resolved in accordance with the applicable laws and regulations.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 32
2:20-cv-02082

# ARTICLE VI
## TRUSTEE RESPONSIBILITIES

1. *General Duty—Receipt of Contributions and Administration of Retirement Benefit Plan*

   It shall be the general duty of the Trustees to receive the employer contributions and any other income or assets which they may obtain and, with such, to administer the Retirement Benefit Plan.

   Additionally, the Trustees shall have the specific duties set forth in this Article and such other duties as are imposed upon them by Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, and other applicable laws.

2. *Compliance with the Internal Revenue Code*

   The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent allowed in the Internal Revenue Code, employer contributions are tax deductible and the Trust Fund is tax-exempt.

3. *Funding Standards*

   The Trustees, with the assistance of their enrolled actuary, shall establish and maintain a funding standard account, as required by Section 304(b)(l) of the Employee Retirement Income Security Act of 1974, for the purpose of determining that the Retirement Benefit Plan remains actuarially sound according to the funding standards imposed by such Act. The funding standard account shall be reviewed by the Trustees at least once each year and on occasions when the Trustees are considering amendments to the Retirement Benefit Plan which involve an actuarial cost.

   The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent such is reasonably within their control, the Plan does not accrue an uncorrected "accumulated funding deficiency", as defined in Section 304(a) of the Employee Retirement Income Security Act of 1974. If it should be determined that an "accumulated funding deficiency" has accrued or will accrue, such deficiency may be corrected by the participating employers and labor organizations, through an adjustment in the amount of contributions, or by the Trustees, through an amendment of the Retirement Benefit Plan adjusting the level of benefits.

   The foregoing provision shall not be interpreted as a guarantee that the Retirement Benefit Plan will never accrue an uncorrected "accumulated funding deficiency" or as an indemnification on the part of the Trustees as to any liability which may be imposed upon a participating employer with respect to such deficiency under the applicable provisions of such Act or the Internal Revenue Code.

4. *Basis of Payments to and from Trust Fund*

   The basis on which the employer contributions are made to the Trust Fund shall be as specified in the underlying collective bargaining agreement, subscription agreement or participation agreement. The basis on which benefits are paid out of the Trust Fund shall be as specified in the Retirement Benefit Plan.

— 13 —

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 33
2:20-cv-02082

5.   *Application of Trust Fund Assets*

    *As* required by Section 403(c)(l) of the Employee Retirement Income Security Act of 1974, the assets of the   Trust Fund shall never inure to the benefit of any participating employer and shall be held for the exclusive purposes of providing benefits to participat - ing employees and their beneficiaries and defraying reasonable administrative expenses.

6.   *Fiduciary Standards*

    As required by Section 404(a)(l)(A) and (B) of the Employee Retirement Income Security Act of 1974, the   Trustees shall dischar ge their duties and administer the   Trust Fund assets solely in the interest of the participating employees and their beneficiaries and for the exclusive purpose of (a) providing benefits to participating employees and their beneficiaries and (b) defraying reasonable expenses of benefit plan administration.

    In carrying out their duties the   Trustees shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

7.   *Deposits*

    The   Trustees shall deposit the contributions or any other monies which they may receive, in one or more banks or similar financial institutions supervised by the United States or a state, pending the allocation of such monies for the payment of current bene - fits and expenses, or for investment.

8.   *Investments*

    The   Trustees shall invest all contributions or other monies not required for the pay - ment of current benefits and expenses.   The   Trustees may invest and reinvest in bank accounts, savings and loan accounts, securities, mortgages, deeds of trust, notes, commer- cial paper, real estate, insurance contracts, and in such other property   , real, personal, or mixed, as they deem prudent provided that in the making of investments the Trustees shall diversify such investments as required by Section 404(a)(l)(C) of the Employee Retirement Income Security Act of 1974 so as to minimize the risk of lar ge losses, unless under the circumstances it is clearly prudent not to do so. Further , no investment shall be made which would constitute a "prohibited transaction" within the meaning of Section 406 of such Act, provided that the   Trustees shall have the authority to apply to the Secretary of Labor for a conditional or unconditional exemption from any of the "prohibited trans - action" rules, as they may deem necessary.

9.   *Specifically Permitted Investments*

    In the event the Trustees designate one or more banks or similar financial institutions supervised by the United States or a state to serve as custodian of the trust assets, or as a corporate co-trustee, or in another fiduciary capacity   , the monies belonging to the   Trust Fund may be invested in the accounts of such bank or institution, provided that such accounts bear a reasonable interest rate.

    Further, to the extent allowed by law, the monies of the  Trust Fund may be invested in (a) a common or collective trust fund or pooled investment fund maintained by a bank or trust company supervised by the United States or a state or (b) in a pooled investment fund of an insurance company, or (c) in a group trust sponsored by a qualified investment

— 14 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 34
2:20-cv-02082

manager as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, even though such bank, trust company, insurance company, or investment manager is a party-in-interest as that term is designated in Section 3(14) of the Employee Retirement Income Security Act of 1974, provided that the bank, trust company, insurance company, or investment manager receives not more than reasonable compensation for managing such an investment.

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments, including, but not limited to, REITS, private equity funds, infrastructure funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above.

10. *Title to Investments and Other Assets*

Title and voting rights to all investments or other assets of the Trust Fund shall be maintained in the name of the Trust Fund provided that for convenience in transferring securities, title and voting rights to such securities may be held in the name of the Trust Fund's custodian bank, or of its nominee.

Except as may be authorized by regulation of the Secretary of Labor the indicia of ownership of all investments and other assets of the Trust Fund shall not be maintained outside the jurisdiction of the district courts of the United States.

11. *Fidelity Bond*

The Trustees shall procure a fidelity bond in the amount required by Section 412 of the Employee Retirement Income Security Act of 1974 covering the Trustees, the administrative manager, and all other persons who receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of the Trust Fund. The cost of such bond shall be chargeable to the Trust Fund.

12. *Records*

The Trustees shall maintain records of their administration of the Trust Fund and the Retirement Benefit Plan, including records of all receipts and disbursements, all investments purchased or sold, all participating employee listings, all minutes of Trustee meetings, and all correspondence. No such record shall be destroyed except upon the specific action of the Trustees and destruction shall not be directed until a period of eight (8) years has elapsed from the date the record was created, unless some additional period is required by law.

13. *Annual Audit*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an independent qualified public accountant as that term is defined in Section 103(a)(3)(D) of the Employee Retirement Income Security Act of 1974 and shall authorize such accountant to conduct an annual financial examination of the Trust Fund, as required by Section 103(a)(3)(A) of such Act, and such other examinations as the Trustees may deem necessary. The cost of such examinations shall be chargeable to the Trust Fund.

A statement of the results of each annual examination shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 35
2:20-cv-02082

14. *Annual Actuarial Statement*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an enrolled actuary , as that term is defined in Section 103(a)(4)(C) of the Employee Retirement Income Security Act of 1974, and shall authorize such actuary to prepare an annual actuarial statement as to the Retirement Benefit Plan, as required by Section 103(d) of such Act. The cost of such statement shall be char geable to the Trust Fund.

The annual actuarial statement shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

The enrolled actuary shall also be authorized to conduct an annual actuarial valuation as required under Section 304(c)(7) of such Act.

15. *Summary Plan Description*

The Trustees shall furnish to the Department of Labor, upon request, any documents related to the employee benefit plan, including but not limited to the latest summary plan description, and any modifications or changes in the information contained in such description, as required by Section 104(a)(6) of the Employee Retirement Income Security Act of 1974.

The Trustees shall also furnish to participating employees and to each beneficiary receiving benefits copies of the summary plan description and copies of any modifications or changes in the information in such description, as required by Section 104(b)(l) of such Act.

16. *Annual Report*

The Trustees shall prepare and file with the Department of Labor an annual report as required by Sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 as amended. The Trustees shall also furnish a report to participating employers and the participating labor or ganizations within 30 days after the due date for filing of the annual report that contains the summary plan information set forth under Section 104 (d) of such Act. In no case shall a participating employer or participating labor or ganiza-tion be entitled to receive more than one copy of any such document described in Section 104(d) of the Act during any one 12-month period. The Trustees may impose a reasonable charge to cover copying, mailing, and other costs of furnishing copies of the required information.

17. *Statements of Accrued Pension Benefits*

As required by Section 105(a)(1)(B) of the Employee Retirement Income Security Act of 1974, the Trustees shall furnish a pension benefit statement at least every 3 years to each participating employee with a nonforfeitable accrued benefit and who is employed by a participating employer at the time the statement is to be furnished, and to a participating employee or beneficiary upon written request. The pension benefit statement shall indicate, on the basis of the latest information available, (a) the total benefits accrued and (b) the non-forfeitable pension benefits, if any, which have accrued, or the earliest date on which ben - efits will become nonforfeitable. Such statements may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participat -ing employee or beneficiary. Alternatively, the Trustees may comply with the requirements of Section 105 (a) (1) (B) of such Act by providing at least once a year to participating

— 16 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 36
2:20-cv-02082

employees notice of the availability of the pension benefit statement and the ways in which the participating employee may obtain such statement. Such notice may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee. In no case shall a participating employee or beneficiary be entitled to more than one pension benefit statement in any 12-month period.

In addition, the Trustees shall furnish to each participating employee who during the Plan Year separates from service covered by the Benefit Plan, who is entitled to a deferred vested benefit under the Benefit Plan as of the end of such Plan Year, and with respect to whom retirement benefits were not paid under the Benefit Plan during such Plan Year, a statement describing the nature, amount and form of the deferred vested benefit to which such participating employee is entitled. Such statement shall also include a notice to the participating employee of any benefits which are forfeitable if the participant dies before a certain date. The Trustees shall also file an annual registration statement with the Internal Revenue Service concerning participating employees to whom such statements have been issued, as required by Section 6057 of the Internal Revenue Code.

18. *Pension Funding Notice*

The Trustees shall provide an annual pension funding notice to the Pension Benefit Guaranty Corporation, to each participating employee and beneficiary, to the participating labor organization, and to each participating employer. The notice shall contain the specific information required for multiemployer plans as set forth under Section 101(f)(2) of the Employee Retirement Income Security Act of 1974 and shall be provided to the applicable parties not later than 120 days after the end of the Plan Year to which the notice relates. Such notice may be provided in written, electronic, or other appropriate form to the extent such form is reasonably accessible to persons to whom the notice is required to be provided.

19. *Income Tax Withholding and Reporting*

The Trustees (or their duly appointed custodian bank) shall annually provide each retired employee or beneficiary receiving benefits with notice of the right to elect against withholding of income tax from his pension benefits and the right to revoke such election as required by Section 3405 of the Internal Revenue Code.

The Trustees shall also furnish to each retired employee or beneficiary receiving benefits an annual statement of the benefits paid to him, as required by Section 6051 (a) of such Code.

20. *Documents to be Examined or Furnished*

The Trustees shall make copies of (a) this Trust Agreement, (b) the latest summary plan description, (c) the latest annual report, (d) the applicable collective bargaining agreement, and (e) any other contracts or instruments under which the employee pension benefit plan is established or operated available for examination by participating employees or their beneficiaries in the Trust Fund office as required by Section 104(b)(2) of the Employee Retirement Income Security Act of 1974.

The Trustees shall upon written request by any participating employee or beneficiary furnish to the participating employee or beneficiary a copy of (a) this Trust Agreement, (b) the latest updated summary plan description, (c) the latest annual report, (d) any terminal report, (e) the applicable collective bargaining agreement, and (f) any other contracts or instruments under which the employee pension benefit plan is established or operated,

— 17 —

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 37
2:20-cv-02082

as required by Section 104(b)(4) of such Act. Such copies shall be furnished within thirty (30) days of the request. The Trustees may impose a reasonable charge for such copies as may be allowed by regulation of the Secretary of Labor.

The Trustees shall also, upon written request by a participating employee or benefi-ciary, furnish to the participating employee or beneficiary a copy of a) any periodic actu-arial report (including any sensitivity testing received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, b) a copy of any quar-terly, semi-annual or other financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's pos-session for at least 30 days, and c) any application filed with the Secretary of the Treasury requesting an extension under Section 304 of the Act or Section 431 (d) of the Internal Revenue Code of 1986, as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) with regard to individually identifiable information and pro-prietary information. Such copies shall be furnished within 30 days of the request but only one copy of any report or application may be received during one 12 month period. The Trustees may impose a reasonable charge to cover copying, mailing and other costs of fur-nishing copies of the information as may be allowed by regulations of the Secretary of Labor. This provision also applies to the participating employers and labor organizations.

21.  *Procedure for Establishing Funding Policy*

As required by Section 402(b)(l) of the Employee Retirement Income Security Act of 1974, the Trustees shall meet periodically with the administrative manager, enrolled actu-ary, independent qualified public accountant, investment manager or managers (if any), and such other Trust Fund advisers as may be appropriate for the purpose of anticipating the short and long run financial needs of the Trust Fund and of establishing an appropri-ate funding policy and method for the Trust Fund.

The funding policy and method shall be considered by the Trustees, or by their invest-ment manager or managers (if any), in the management of trust fund investments.

22.  *Payments to Pension Benefit Guaranty Corporation*

The Trustees shall pay to the Pension Benefit Guaranty Corporation the plan termina-tion insurance premiums fixed by the Corporation, as required by Section 4002(a) of the Employee Retirement Income Security Act of 1974. Such premiums shall be char geable to the Trust Fund. Consistent with regulations issued by the Corporation, the Trustees shall have the authority to adopt a definition of a plan "participant" and to compute and pay pre-miums on the basis of that "definition".

23.  *Benefit Claim and Review Procedures*

The Trustees shall establish administrative procedures whereby a participating employee or beneficiary who makes a claim for benefits and that claim is denied, is noti-fied, in writing, of the reasons for such denial including specific references to the Retirement Benefit Plan provisions upon which the denial is based, a description of any additional information which is necessary to perfect the claim and why the information is necessary, and which afford such a participating employee or beneficiary a reasonable opportunity for a full and fair review, as required by Section 503 of the Employee Retirement Income Security Act of 1974. Such procedures shall include the Benefit Claim

— 18 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 38
2:20-cv-02082

and Review Procedures for a participating employee or beneficiary as set out in      Article XIII, Section 5 of the Retirement Benefit Plan

# ARTICLE VII
## ALLOCATION OR DELEGATION OF TRUSTEE RESPONSIBILITIES

1.   *Allocation of Responsibilities to Committees*

The Trustees may allocate to one or more committees of   Trustees all or part of the following responsibilities, with full power to act: (a) the responsibility for managing the Trust Fund investments (if not otherwise delegated to a qualified investment manager); (b) the responsibility for reviewing and determining benefit claims of participating employees and their beneficiaries; (c) the responsibility for conducting hearings and issuing determinations as provided for in Article XI, Section 3 hereof; (d) the responsibility for resolving questions or problems that may be encountered in connection with payroll auditing or employer withdrawal liability  activities; (e) the responsibility for resolving questions or problems that may be encountered in connection with the collection of delinquent employer accounts; (f) the responsibility for resolving questions or problems that may be encountered in connection with the day-to-day work of the administrative manager; (g) the responsibility for reviewing the performance of the qualified investment      managers (if any), and of the other persons retained by the  Trustees.

In the event the  Trustees elect to allocate any of the stated responsibilities they shall do so by the adoption of a motion or resolution calling for the appointment of a commit - tee of Trustees (consisting of equal numbers of EmployerTrustees and Labor Organization Trustees) and specifying the  particular responsibility that is being allocated.  With respect to the responsibility that is allocated, the committee shall have the powers of the full Board of Trustees. Any action to be taken by the committee shall be determined according to the voting formula contained in Article IV, Section 1 hereof. If the committee members deadlock on any matter submitted for their consideration such matter shall be referred to the full Board of Trustees for review and action.

Nothing contained herein shall in any way limit the authority of the   Trustees to create additional committees for the purpose of assisting with or expediting the af fairs of the Trust Fund, provided that any such committee shall be empowered only to make recom - mendations with respect to the matters referred to it.

2.   *Delegation of Investment Responsibilities*

The Trustees may delegate all or part of their responsibilities for the management of the Trust Fund investments to one or more qualified investment managers, as that term is defined in Section 3(38) of the Employee Retirement Income Security   Act of 1974, i.e., (a) an investment adviser registered as such under the Investment   Advisers Act of 1940, (b) a bank as defined in that      Act, or (c) an insurance company qualified to manage, acquire, or dispose of employee benefit plan assets under the laws of more than one state.

In the event the  Trustees elect to delegate investment responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated invest - ment manager (s).  The delegation shall be ef  fective when the investment manager   (s) accepts the delegation and acknowledges in writing his status as a fiduciary with respect to the Trust Fund.

— 19 —

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 39
2:20-cv-02082

3.    *Delegation of Other Responsibilities*

The Trustees may delegate all or part of their responsibilities with respect to the administration of the   Trust Fund or the Retirement Benefit Plan (except investment responsibilities) to their administrative manager or to any other person whom they may designate for such purpose.

In the event the Trustees elect to delegate a particular responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated person. The delegation shall be effective when the designated person accepts the delegation. If the delegation involves a responsibility other than one which is ministerial in nature, the des - ignated person shall also acknowledge in writing his status as a fiduciary with respect to the Trust Fund.

4.    *Review of Performance*

In the event the   Trustees elect to allocate or delegate   Trustee responsibilities they shall periodically review the performance of the persons to whom such responsibilities have been allocated or delegated.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 40
2:20-cv-02082

# ARTICLE VIII
# TRUSTEE POWERS

1.   *General Powers*

Except as may be expressly limited by the terms of this Trust Agreement, the Trustees shall have full and exclusive authority to control and administer the    Trust Fund and the Retirement Benefit Plan.

The authority of the Trustees encompasses not only the specific powers recited in the various paragraphs of this  Trust Agreement but also includes the general power to do all things and take all actions, including the expenditure of   Trust Fund monies, which they may deem necessary to carry out the purpose of this  Trust Agreement. The Trustees may implement their powers through the adoption of appropriate motions, resolutions, or administrative rules and regulations. Unless otherwise stated in this  Trust Agreement, the Trustees will serve as fiduciaries in the creation, the administration and design of the Benefit Plan hereunder and in the implementation of any action resulting from these functions or in the exercise of any other general or specific power set out in this              Trust Agreement.

2.   *Specific Powers Discretionary*

The recitation of specific powers in this  Trust Agreement shall not be interpreted as compelling the exercise of any such power    . The exercise of specific powers is discre    - tionary with the Trustees.

3.   *Benefit Plan Being Administered*

The employee pension benefit plan being administered through this  Trust Fund as of the effective date of this  Trust Agreement is described as the

**GCIU—Employer
Retirement Benefit Plan**

4.   *Amendments to the Benefit Plan*

The Trustees shall have the authority to amend the Retirement Benefit Plan, in whole or in part, as they may determine. Such amendments may involve the rules under which participating employees and beneficiaries become eligible for pension benefits, the nature of the pension benefits to be provided, including any related benefits, and the amount and duration of such benefits.

No amendment shall be made if the same is prohibited by the provisions of the Employee Retirement Income Security  Act of 1974 or the Internal Revenue Code and, if the subject matter is governed by the   Act, or the Code, the amendment shall conform to the requirements of the Act or the Code.

5.   *Means of Providing Benefits*

The Trustees may provide the benefits specified in the Retirement Benefit Plan, in whole or in part, directly from the Trust Fund or may contract with an insurance carrier or other legally authorized entity, to underwrite or provide such benefits.

— 21 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 41
2:20-cv-02082

6. *Facility of Payment*

The Trustees shall have the authority to adopt rules by the terms of which benefit payments owing to minors or incompetents may be paid instead to a person or institution providing care or other services to such minor or incompetent, even though a legal guardianship does not exist. Benefit payments made under any such rules shall fully discharge the Trust Fund's obligation to the minor or incompetent.

7. *Administrative Manager*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, an administrative manager to assist the Trustees in the administration of the Trust Fund and the Retirement Benefit Plan. Such administrative manager may be retained on a contract or salaried basis, as the Trustees may determine.

In the event the Trustees employ a salaried administrative manager they shall also have the authority to employ such additional administrative staff personnel as may be necessary.

The Trustees shall periodically review the performance of the administrative manager.

8. *Banking Services*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more banks or similar financial institutions supervised by the United States or a state, to perform depository or custodial services, or to serve as corporate trustee or co-trustee, on behalf of the Trust Fund.

The Trustees shall periodically review the performance of the banks which they have retained to provide banking services.

9. *Other Professional and Non-Professional Persons*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, actuaries, attorneys, employee benefit plan consultants, investment managers, investment performance analysts, payroll auditors, collection agents, and other professional or non-professional persons, as they may deem necessary. Unless limited by the provisions of the Employee Retirement Income Security Act of 1974, the retention of any such professional or non-professional help may be on a contract or salaried basis, as the Trustees may determine.

The Trustees shall periodically review the performance of the professional or nonprofessional persons they have retained.

10. *Obtaining of Necessary Premises, Equipment, and Supplies*

The Trustees shall have the authority to purchase or lease suitable premises and equipment and to purchase materials and supplies, at the expense of the Trust Fund, as they may deem necessary.

11. *Insurance*

The Trustees shall have the authority to purchase policies of insurance (liability, property damage, casualty, and errors and omissions) to protect the Trust Fund and to protect themselves, their administrative manager, and their employees (if any), with respect

— 22 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 42
2:20-cv-02082

to their activities on behalf of the  Trust Fund, as they may deem necessary . The costs of such insurance policies shall be chargeable to the Trust Fund.

Any policy of errors and omissions insurance shall contain a recourse clause as required by Section 410(b)(l) of the Employee Retirement Income Security  Act of 1974, provided that nothing herein shall prevent a  Trustee (or an employer , employer associa-tion, or labor organization acting on his behalf) or the administrative manager, or the Trust Fund employees (if any) from purchasing for themselves a waiver of the recourse clause or a separate policy insuring against such recourse.

12. *Borrowing Money*

The Trustees shall have the authority to borrow money for the  Trust Fund, with or without security, as they may deem necessary .

13. *Reserve Funds*

The Trustees shall have the authority to maintain reasonable reserve funds, for future contingencies, as they may deem necessary .

14. *Payment of Taxes*

The Trustees shall have the authority to pay, at the expense of the Trust Fund, all real and personal taxes, and other taxes and assessments of any kind, which may be lawfully levied or assessed against the Trust Fund.

15. *Refunds of Contributions Erroneously Paid*

The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating employer where the employer has paid such contributions in error, as may be allowed by Section 403(c) of the Employee Retirement Income Security Act of 1974.

16. *Penalties for False or Withheld Information*

The Trustees shall have the authority to adopt rules and regulations by the terms of which reasonable penalties or forfeitures may be imposed upon participating employees or ben -eficiaries who (a) falsify any information requested of them in the administration of the Trust Fund and the Retirement Benefit Plan, or (b) fail to provide requested information within a reasonable time.

17. *Correction of Errors*

It is recognized and acknowledged by all parties that the  Trustees will provide eligibility credits and benefits to participating employees and their beneficiaries based on Trust Fund records. It is also recognized and acknowledged that such records could be incorrect due to (a) employers reporting individuals who are not eligible for participation, (b) employers reporting incorrect names or incorrect social security numbers, (c) employ-ers reporting more or less than the hours or contributions required to be reported, (d) delin-quent employer reports, (e) employees or beneficiaries submitting incorrect or false bene-fit applications, (f) recording or computation errors by the administrative manager , (g) computer errors, or (h) other similar circumstances.  The Trustees shall have the authority to correct the Trust Fund records whenever errors are discovered and to terminate partici-pation, adjust eligibility credits or benefits, or seek the recovery of benefit overpayments,

— 23 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 43
2:20-cv-02082

as they may determine.

18. *Prosecution of Legal Action or Claims*

The Trustees shall have the authority to originate and maintain any legal actions, or claims involving potential legal actions, at the expense of the Trust Fund, as they may deem necessary. All such actions and claims shall be prosecuted in the name of the Trust Fund or in the name of an assignee.

19. *Defense of Legal Actions or Claims*

The Trustees shall have the authority to defend all legal actions, claims involving potential legal actions, and investigatory proceedings, initiated against the Trust Fund or against one or more of the Trustees, or former Trustees, or the administrative manager, or against one or more of the employees of the Trust Fund (if any) which relate to the administration of the Trust Fund or the Retirement Benefit Plan. Except as stated below, the defense of such actions, claims and proceedings shall be at the expense of the Trust Fund.

If the final court decree establishes personal liability on the part of specified Trustees, or the administrative manager, or the employees of the Trust Fund (if any) for breach of their fiduciary responsibilities, as permitted by Section 409(a) of the Employee Retirement Income Security Act of 1974, and orders that the specified persons are to bear the expenses of their own defense, the attorney fees and costs of the specified persons shall not be chargeable to the Trust Fund. If attorney fees and costs have already been charged to the Trust Fund, the specified persons shall be obligated to repay the Trust Fund for their pro rata share of such fees and costs.

20. *Compromise of Legal Actions or Claims*

The Trustees shall have the authority to compromise, settle, or release all legal actions, or claims involving potential legal actions, in favor of or against the Trust Fund on such terms and conditions as they may determine.

21. *Subscription and Participation Agreements*

The Trustees shall have the authority to create and distribute subscription and participation agreements, at the expense of the Trust Fund, and to insist upon the execution and filing of such agreements as a condition precedent to the acceptance of contributions.

22. *Participation in Non-Profit Educational Organizations*

The Trustees shall have the authority to participate in non-profit foundations, corporations, councils, committees, or other organizations which sponsor educational programs or provide educational materials pertaining to the administration of trust funds of this nature and of employee benefit plans. If the Trustees act to participate in any such non-profit organization, the membership or participation fees of the organization shall be chargeable to the Trust Fund.

The Trustees shall also have the authority to purchase educational materials and to provide for the attendance of the Trustees, or of their administrative manager, or of such of their employees (if any), as they may designate, at educational conferences and meetings. The costs of such materials and attendance shall be chargeable to the Trust Fund.

23. *Reciprocity*

The Trustees shall have the authority to enter into reciprocal agreements with other

— 24 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 44
2:20-cv-02082

employee pension benefit funds for the exchange of eligibility credits or monies, or for the payment of pro rata benefits, on behalf of employees who may terminate their participation in the Trust Fund and begin participation in a reciprocal trust fund, and vice-versa.

24. *Mergers*

The Trustees may accept mergers of other employee pension benefit trust funds, maintained by participating employers or jointly by participating employers and participating labor organizations, into this Trust Fund so that individual participants in such other trust funds can become participants in this Trust Fund. To that end, the Trustees shall have the authority to negotiate and consummate appropriate merger agreements which provide for the transfer of assets and liabilities from other employee pension benefit trust funds to this Trust Fund.

Any such merger agreement shall conform to these standards: (a) the value of the retirement benefits assumed by this Trust Fund (as determined on the basis of actuarial standards approved by the Trustees) with respect to the participants of the other trust fund who had retired prior to the date of the meger agreement shall not exceed the market value (determined on the date of transfer) of the assets transferred to this Trust Fund on behalf of such retired participants and (b) the value of the aggregate current service credited to the participants in the other trust fund who had not retired as of the date of the merger agreement shall not exceed one year of current service for each $1,300 (or other amount which may be fixed by the Trustees) of market value (determined on the date of transfer) of the remaining assets transferred to this Trust Fund on behalf of such participants, after allocation for retired participants.

Any such merger agreement shall also include such requirements as may be applicable under Section 208 of the Employee Retirement Income Security Act of 1974 and under the applicable provisions of the Internal Revenue Code.

25. *Eligible Rollover Plan Distributions*

The Trustees shall have the authority to administer direct trustee-to-trustee transfers of eligible rollover plan distributions to financial institutions selected by the participant (or spouse or former spouse). The Trustees shall also have the authority to implement any necessary procedures and policies which are required by the Unemployment Compensation Amendment Act of 1992 and any amendments or regulations issued relating thereto in order to comply with the Act and regulations.

26. *Interpretation and Application of Documents*

The Trustees shall have the authority to interpret and apply the provisions of this Trust Agreement, or of the Retirement Benefit Plan, or of their own motions, resolutions, and administrative rules and regulations, or of any contracts, instruments, or writings which they may have adopted or entered into.

27. Adoption and Implementation of a Funding Improvement Plan and Rehabilitation Plan

The Trustees shall have the authority to adopt and implement a funding improvement plan and a rehabilitation plan in accordance with the provisions of ERISA Section 305, should the enrolled actuary certify that the Retirement Benefit Plan is in endangered or critical status. In this regard, the Trustees shall provide the participating employers and

— 25 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 45
2:20-cv-02082

participating labor organizations with a schedule or schedules showing revised benefit and/or contribution structures which, if adopted, might reasonably be expected to allow the Retirement Benefit Plan to achieve applicable funding benchmarks (if the Retirement Benefit Plan is in endangered status) or to allow the Retirement Benefit Plan to emerge from critical status or to stave off insolvency.

If upon expiration of a collective bargaining agreement in effect at the time the Retirement Benefit Plan entered endangered or critical status, a participating employer and the participating labor organization are unable to agree on a new contract that includes benefit and/or contribution schedules necessary to allow the Retirement Benefit Plan to meet the applicable benchmarks, if the Retirement Benefit Plan is in endangered status, or to allow the Retirement Benefit Plan to emerge from critical status, or to stave off insolvency, the Trustees shall have the authority to implement the default schedule as described under ERISA Section 305(c)(1) (B)(i) (I) and Section 305 (e)(1)(B)(ii).

Nothing in this section should be construed as to limit the Trustees' authority and powers under the Trust Agreement or applicable provisions of ERISA.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 46
2:20-cv-02082

# ARTICLE IX
## CONTRIBUTIONS AND COLLECTIONS

1.   *Contribution Reporting Forms*

The Trustees shall create and make available, at the expense of theTrust Fund, contribution reporting forms for the use of participating employers in making their contributions.

2.   *Contributions Due*

Contributions shall be made on all hours worked or paid for, as required by the terms of the collective bargaining agreement. Hours worked include overtime hours. Hours paid for generally include vacation, sick, holiday, and probationary hours, whether specifically included in the collective bargaining agreement, or not.

3.   *Contribution Due Date*

All contributions shall be due by the fifteenth (15) day of the month following the month in which they accrue.

4.   *Delinquent Contributions*

A participating employer shall be considered to be delinquent in the payment of contributions if he (a) fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date, or (b) fails to submit contributions on behalf of all the employees for whom contributions are required under the applicable collective bargaining agreement, subscription agreement, or participation agreement, or (c) fails to properly compute the contributions according to the required contribution formula specified in the applicable collective bargaining agreement, subscription agreement, or participation agreement.

The Trustees shall undertake reasonable efforts to collect known delinquent contributions and related claims.

5.   *Audit of Employer Books and Records*

The Trustees shall have the authority to audit the payroll books and records of a participating employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or on a case by case basis, as the Trustees may determine.

Whenever a payroll audit is authorized, the participating employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include (a) all records which the employer may be required to maintain under Section 209(a)(l) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the employer's federal, state, and local payroll tax reports, and all other documents and reports which reflect the hours and wages or other compensation of the employees or from which such can be verified (or electronic versions thereof).

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 47
2:20-cv-02082

In the event the payroll audit discloses that the participating employer has not paid contributions, as required by the applicable collective bargaining agreement, subscription agreement, or special agreement, the employer shall be liable for the costs of the audit.

6.   *Liquidated Damages, Attorney Fees, Interest, and Other Charges*

It is recognized and acknowledged by all parties, including the participating employers, that the prompt and accurate payment of contributions is essential to the maintenance of an employee benefit trust fund and benefit plan and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the trust fund and plan which would result from the failure of a participating employer to pay the required contributions within the time provided.

Therefore, if an employer is delinquent in the payment of contributions by the tenth (10th) day following the contribution due date, or by such other date as the Board of Trustees may from time to time establish, the delinquent employer shall be liable, in addition, for liquidated damages of ten percent (10%) of the amount of the contributions which are owed, or twenty five dollars ($25), whichever is greater.

If the delinquent contributions or liquidated damages are not paid by the tenth (10th) day of the month following the month in which they were due, or by such other date as the Board of Trustees may from time to time establish, the account will be referred to legal counsel, or a collection agent, for collection. Upon such referral, the delinquent employer shall be liable for reasonable attorney fees and for reasonable costs incurred in the collection process, including court fees, audit fees, etc. In addition, delinquent contributions shall bear interest at the rate of ten percent (10%) per annum until paid, computed from the contribution due date.

7.   *Additional Liquidated Damages in Event of Court Judgment*

In the event it is necessary to pursue a collection to a court judgment, the delinquent employer shall be liable for additional liquidated damages of ten percent (10%) of the amount of the contributions which are owed, making a total of twenty percent (20%).   As provided in Section 515 of the Employee Retirement Income Security Act of 1974, as amended, the employer shall, if a judgment is entered, be obligated to the Trust Fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of twenty percent (20%), reasonable attorney's fees and costs, and such other legal or equitable relief as may be appropriate.

8.   *Waiver of Charges*

The Trustees shall have the authority to waive all or part of the payroll audit costs, liquidated damages, interest, attorney fees, or collection costs, for good cause shown.

9.   *Protection of Employees in Cases of Delinquency*

To protect participating employees and beneficiaries in situations where participating employees may be denied pension credits because their employer is delinquent in the payment of contributions, the Trustees shall have the authority to extend pension credits to such employees.

The extension of pension credits shall not, however, release the delinquent employer from the responsibility for payment of the contributions owed.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 48
2:20-cv-02082

10. *Coordination with Provisions in Collective Bargaining Agreements*

    In the event the underlying collective bargaining agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorney fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges.

    The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any) provided for in the applicable collective bargaining agreement.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 49
2:20-cv-02082

# ARTICLE X
# EMPLOYER WITHDRAWAL LIABILITY

1.   *Calculation and Collection of Employer Withdrawal Liability*

As provided in the Multi-Employer Pension Plan Amendments Act of 1980 (PL 96-364) (hereafter the Act), in the event a participating employer should withdraw from the Trust Fund, the Board of Trustees shall (a) determine the amount of the employer's withdrawal liability (if any), (b) notify the employer of the amount of the withdrawal liability and (c) collect the amount of withdrawal liability from the employer. In carrying out this responsibility the Board of Trustees shall apply the terms and provisions of the Act, and any regulations issued thereunder, provided, however, that the Board of Trustees may from time to time adopt alternate methods or formulae as permitted in the Act.

Sections 2, 3, and 4, set forth hereafter, have been adopted as alternates under the Act.

2.   *Determination of Amount of Unfunded Vested Benefits Allocable to Withdrawing Employer*

As allowable under 4211(a) of the Act, the Board of Trustees shall determine the amount of unfunded vested benefits allocable to a withdrawing employer in accordance with the formula set out in Section 4211(b) of the Act, and any regulations issued thereunder, with the following modifications: (a) the initial pool will be based on the December 31, 2006 unfunded vested benefit liability, reduced by the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, (b) the calculation of subsequent pools established for changes in unfunded vested benefits as defined in 4211(b) (2) (B) of the Act will continue to reflect the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, and (c) in any Plan year where the unfunded vested benefit liability at the end of the prior year is zero, the unfunded vested benefit liability allocation pools for prior years will be considered fully amortized and reset to zero.

In making such a determination, reasonable actuarial assumptions and methods shall be applied as allowable under Section 4213(a)(1) of the Act and as determined by the Fund's actuary.

3.   *Payment of Withdrawal Liability in Monthly Installments*

As allowable under Section 4219(c)(3) of the Act, the annual withdrawal liability payments owing to this Trust Fund by a withdrawing employer shall be payable in twelve equal monthly installments, due on the first (1st) day of each month, in advance.

4.   *Adoption of Administrative Rules and Regulations*

The Board of Trustees shall adopt administrative rules and regulations relating to the processing of employer withdrawal situations.

5.   *Notice of Potential Withdrawal Liability*

As provided in Section 101(1) of the Employee Retirement Income Security Act of 1974, the Board of Trustees shall, upon written request, furnish to any employer who has an obligation to contribute to the Fund (a) a notice of the estimated amount of what would

be the employer's withdrawal liability if the employer withdrew on the last day of the plan year preceding the date of the request, and (b) an explanation of how such estimated withdrawal liability was calculated, including (i) the actuarial assumptions and methods used to determine the value of the Retirement Benefit Plan' s liabilities and assets; (ii) the data regarding employer contributions, unfunded vested benefits and annual changes in the Retirement Benefit Plan's vested benefits; and (iii) changes in the application of any relevant limitations in the estimated withdrawal liability. Such notice shall be furnished to the requesting employer within 180 days after the request but in no case shall an employer be entitled to receive more than one such notice during any one 12-month period. The Board of Trustees shall impose a reasonable charge on each employer requesting such a notice.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 51
2:20-cv-02082

# ARTICLE XI
## BENEFIT CLAIM, HEARING AND ARBITRATION PROCEDURES

1. *Hearings Required*

The Trustees shall afford a hearing to any participating employer, employer association, or labor organization who is aggrieved by any decision or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal in person, or through a representative, or by written submission.

It shall be the obligation of any such person to exhaust the hearing procedures specified in this Article before instituting final and binding arbitration concerning any such decision or action.

2. *Requests for Hearings*

Any person seeking a hearing shall make a request therefore, in writing, within sixty (60) days after being apprised of, or learning of, the complained of decision or action. All such requests shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

3. *Conduct of Hearings*

Upon receipt of a request for a hearing, the Trustees shall fix a date and place for a hearing. At the hearing, the complaining person shall be entitled to present his position and any witnesses or other evidence in support thereof. The complaining person may be represented by an attorney or by any other representative of his choosing. In the alternative, the complaining person may choose to present his appeal by written submission.

The Trustees shall, within thirty (30) days following the hearing, issue a written decision affirming, modifying, or setting aside the former decision or action.

4. *Hearing Rules*

The Trustees shall have the authority to adopt rules governing the conduct of any such hearing.

5. *Arbitration - Mandatory*

If the complaining person is dissatisfied with the written decision of the Trustees, he shall have the right to appeal the matter to mandatory, final and binding arbitration in accordance with the labor arbitration rules or the employee benefit claim rules of the American Arbitration Association, provided that he submit a request for arbitration to the Trustees, in writing, within sixty (60) days of receipt of the written decision. If an appeal to arbitration is requested, the Trustees shall submit to the arbitrator a certified copy of the record upon which the Trustees' decision was made.

The question for the arbitrator shall be (1) whether the Trustees were in error upon an issue of law, (2) whether they acted arbitrarily or capriciously in the exercise of their discretion, or (3) whether their findings of fact were supported by substantial evidence. The decision of the arbitrator shall be final and binding upon the Trustees, upon the appealing party, and upon all other parties whose interests are affected thereby. The expenses of the arbitration shall be borne equally by the appealing party and by the Trust Fund, unless otherwise ordered by the arbitrator.

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 52
2:20-cv-02082

6. *Benefit Claim and Review Procedures for a Participating Employee or Beneficiary*

The Trustees shall provide benefit claim and review procedures for any participating employee or beneficiary who has made a claim for benefits and is aggrieved by any deci - sion or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal under the Benefit Claim and Review Procedures set out in Article XIII, Section 5 of the Retirement Benefit Plan.

7. *Sole and Exclusive Remedies*

These Benefit Claim, Hearing and Arbitration procedures are the sole and exclusive remedies for all complaining persons.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 53
2:20-cv-02082

# ARTICLE XII
# LIMITATIONS

1.   *Liabilities and Debts of Trust Fund*

No participating employer , employer association, or labor or   ganization, shall be responsible for any liabilities or debts of the Trust Fund. This provision, however, shall not relate to any liability that may be imposed upon a participating employer under Section 4971 of the Internal Revenue Code or    Title IV  of the Employee Retirement Income Security Act of 1974, as amended by the  Multi-Employer Pension Plan Amendment Act of 1990.

2.   *Liabilities and Debts of Participating Parties*

No participating employer, employer association, or labor organization shall, by reason of their participation in the Trust Fund, become responsible for the liabilities or debts of any other participating employer, employer association, or labor organization.

3.   *Personal Liabilities of Trustees and Fiduciaries*

No Trustee or other fiduciary shall incur any personal liability in connection with the administration of the Trust Fund or the Retirement Benefit Plan, except for such liability that may be established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

Except as may be required by applicable provisions of such  Act, no Trustee or other fiduciary shall be held personally liable for any breach of fiduciary responsibilities in connection with the administration of the  Trust Fund or the Retirement Benefit Plan where it is established (a) that the responsibilities at issue were lawfully allocated or delegated to other Trustees or fiduciaries or (b) that in carrying out the responsibilities at issue the Trustee or other fiduciary reasonably relied upon the advice given by the administrative manager or by one or more of the professional persons employed by the  Trustees.

No  Trustee or other fiduciary shall be personally liable for a breach of fiduciary responsibilities if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

4.   *Judgments Against Trust Fund*

Any money judgment against the   Trust Fund shall be enforceable only against the Trust Fund entity and shall not be enforceable against any  Trustee or other person, unless liability against the  Trustee or other person, in his individual capacity , is established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

5.   *Participating Parties' Rights*

Except as specifically provided for in this    Trust Agreement or in the Retirement Benefit Plan, no participating employer    , employer association, labor or    ganization, employee, or beneficiary shall have any right, title, or interest in or to the   Trust Fund, or in or to the contributions, or in or to the benefits provided.

No participating employee shall be entitled to receive any part of the contributions in lieu of the benefits provided through the Retirement Benefit Plan, nor shall a participating employee who does not qualify for benefits, or his employer , have any claim to the con -

— 34 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 54
2:20-cv-02082

tributions which may have been paid on his behalf.

6.     *Cessation of Participation*

In the event a participating employer, employer association, or labor organization, or groups thereof, should cease their participation in the Trust Fund, there shall be no division or allocation of any of the monies or assets of the Trust Fund, except as may be specified in the Retirement Benefit Plan or required by law.

7.     *Protection of Trust Fund, Contributions, and Benefits*

No part of the Trust Fund (including the contributions) or the benefits payable under the Retirement Benefit Plan, shall be subject in any manner, by a participating employee or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

Further, no part of the Trust Fund (including the contributions), or the benefits payable under the Retirement Benefit Plan, shall be liable for the debts of a participating employee or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee or beneficiary, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

8.     *Reliance upon Written Documents*

The Trustees may act upon any written letter, report, certificate, instrument, or other document submitted to them by any participating employer, employer association, labor organization, employee, or beneficiary, or by any other person, where such document appears to be genuine and to be signed by the proper person or persons and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in any such document.

9.     *Agents of Trust Fund*

Unless authorized in a motion or resolution of the Trustees, no participating employer, employer association, or labor organization, nor any individuals employed thereby, shall have any authority to act or function for or on behalf of the Trust Fund or as agent thereof.

Likewise, unless authorized in a motion or resolution of the Trustees, no individual Trustee or other fiduciary shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

— 35 —

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 55
2:20-cv-02082

# ARTICLE XIII
# MISCELLANEOUS

1.   *Trust Fund Offices*

The Trust Fund shall maintain a principal office and suboffices, where necessary, in such locations as the Trustees may determine.

2.   *Applicable Laws and Regulations*

This Trust Agreement and the Retirement Benefit Plan shall be interpreted and administered in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, the Internal Revenue Code, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended. Any omissions or oversights will be resolved in accordnce with the laws and regulations.

References herein to particular sections of the above mentioned statutes shall include any regulations pertinent to such sections and shall encompass any subsequent amendments to such sections or regulations.

3.   *Notices*

Any written notice permitted or required by this Trust Agreement shall be personally delivered to the person for whom it is intended or sent to such person, at his residence or business address, by first class mail. Any such notice may also be delivered by email, facsimile transmission, or other electronic means available as may be allowed by law.

4.   *Severability*

If any provision of this Trust Agreement, or of the Retirement Benefit Plan is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement or the Retirement Benefit Plan.

5.   *Title — Words*

The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe, any term or provision hereof. Whenever any words are used herein in the masculine gender they shall be construed as though they were used in the feminine gender and words in singular form shall be construed as though they were used in the plural form, in all cases where they would so apply.

6.   *Information to be Furnished and Distributed*

To aid the Trustees in the administration of the Trust Fund, the participating employers, employer associations and labor or ganizations shall furnish the Trustees with such information as they may determine including (a) copies of collective bar gaining agreements, (b) contribution rates, (c) the identity of employees covered by collective bar gaining agreements, subscription agreements or participation agreements, and their social security numbers, (d) reports on compensated hours for all employees who have worked in the bargaining unit or as a nonbar gaining unit employee whether or not a contribution has been paid, (e) reports on all hours or shifts or wages which constitute the basis of the contribution made to the Retirement Benefit Plan as provided in the collective bar gaining agreement, subscription agreement or participation agreement, and (f) reports on actual contributions owed broken down by each employee.

— 36 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 56
2:20-cv-02082

# ARTICLE XIV
## AMENDMENTS AND TERMINATION

1.   *Amendments*

This Trust Agreement may be amended by action of the    Trustees, except that the Trustees shall make no amendment to  Article III without the una nimous written consent of the Trustees and the remaining signatory parties (or their successors).

In the event that the Trustees should propose an amendment to Article III, they shall deliver copies thereof to the  remaining signatory parties (or their successors). If any sig - natory party (or successor thereto) fails, within thirty (30) days, to respond to a written request for consent to any such amendment, that signatory party will be deemed to have waived its right to act upon such amendment.

2.   *Termination*

This Trust Agreement may be terminated, at anytime, by unanimous action     of the Trustees and the remaining signatory parties (or their successors).

3.   *Allocation upon Termination*

If the Plan is terminated, all assets remaining in the  Trust Fund after the payment of all expenses incurred in terminating or administering the Plan will be allocated to the ben- efit of participating employees, retired employees, and surviving spouses, according to the following order of priority:

(a)   First, the remaining assets shall be allocated equally to (1) benefits in pay status three years prior to termination at the lowest benefit level under the plan during the five years prior to termination, and   *(2)* benefits which would have been in pay status three years prior to termination had the employee been retired (and had his benefits commenced then, at the lowest benefit level under the plan during the five years prior to termination.)

(b)   Second, the assets remaining after satisfying the benefits described in section (a) above shall be allocated equally to all other benefits guaranteed under     Title IV  of the Employee Retirement Income Security Act of 1974, (irrespective of the limitations on the amount of monthly benefits and regardless of the number of plans in which the employee participated).

(c)   Third, the then remaining assets shall be allocated equally to all other non-for - feitable (vested) benefits under the plan.

(d)   Fourth, the then remaining assets shall be allocated equally to all other benefits under the plan.

If the assets of the  Trust Fund applicable to any of the above categories (a) and (b) are insufficient to provide fully the amount of the benefits in each category   , the benefits otherwise payable shall be reduced proportionately.

If the assets of the   Trust Fund applicable to category (c) are insuf ficient to provide fully the amount of the benefits in that category , the assets shall be allocated to the bene - fits of individuals which are described in that category on the basis of benefits of individ - uals which would have been described in category (c) under the Plan as in ef  fect at the beginning of the 5-year period ending on the date of plan termination.

— 37 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 57
2:20-cv-02082

If the assets available for allocation under the preceding paragraph are sufficient to satisfy in full the benefits described in that paragraph, then for purposes of that paragraph, benefits of individuals described in that paragraph shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such 5-year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in the preceding paragraph and any assets remaining shall be allocated under that paragraph on the basis of the Plan as amended by the next succeeding plan amendment effective during such period.

The amount allocated under any of the priority categories listed above with respect to any benefit shall be adjusted for any allocation of assets with respect to that benefit under a prior category.

The amount allocated to each benefit shall be used to provide monthly retirement benefit payments through continuance of the Trust Fund, or through a new Trust Fund, or for the purchase of insurance annuity contracts; provided that, if the Trustees find that it is not practical or desirable under the circumstances to do any of the foregoing, they may provide for some other means of disposing of the allocations of the Trust Fund, including making payments in cash to the persons for whom such allocations have been made.

In no event shall any of the remaining monies or assets be paid to or be recoverable by any participating employer, employer association, or labor organization.

— 38 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 58
2:20-cv-02082

## SIGNATORY PARTIES *as of March 25, 1976*

| Labor Organization Signatory Parties | Employer Signatory Parties |
|---|---|

**Labor Organization Signatory Parties**

International Printing & Graphic
Communications Union
By                                      Sol Fishko
Title                                    President
Date                          March 25, 1976

Printing Specialties and Paper Products
Unions, IP & GCU
By                                      Sol Fishko
Title                       President, IP & GCU
Date                          March 29, 1976

Seattle Web Pressman Local No. 26
 IP & GCU
By                            George G. Peterson
Title                      2nd V.P. #26 Seattle
Date                          March 25, 1976

Los Angeles Commercial Pressmen
Local No. 78, IP & GCU
By                               Frank Calderone
Title                                  President
Date                          March 25, 1976

**Employer Signatory Parties**

Seattle Post-Intelligencer (Division of
Hearst Publishing Company, Inc.)
By                            Gerald W. Hedman
Title                   Director of Personnel &
                              Labor Relations
Date                          March 25, 1976

Seattle Times Company
By                            Harold Fuhrman
Title        Vice President & General Mgr.
Date                          March 25, 1976

Los Angeles Paper Box and Board Mills
By                          William H. Kewell, Jr.
Title                                  President
Date                          March 25, 1976

Bay Area Paper Box Employers
By                            Edward H. Moore
Title                                  Secretary
Date                             June 7, 1976

Printing Industries Association
(Union Employers Section - Los Angeles)
By                                 Jerry Maras
Title                            Representative
Date                          March 25, 1976

## SIGNATORY PARTIES *as of July 1, 1984*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 404-M (successor to Los     Angeles Commercial Pressman No. 78, IP & GCU) |
| Graphic Communications Union No. 777 (successor to Printing Specialties and Paper Products Union, IP & GCU) | Seattle Times Company |
| | Bay Area Paper Box Employers |
| Seattle Newspaper Pressmen Local No. 26, GCIU | Printing Industries   Association (Union Employers Section—Los Angeles) |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 59
2:20-cv-02082

**Note:** On September 9, 1988, the three remaining employer signatory parties, the Seattle Times, the Bay Area Paper Box Employers, and the Printing Industries Association (Union Employers Section) - Los  Angeles, agreed, in writing, to irrevocably and unconditionally transfer and assign to the incumbent employer trustees and their successors all of their rights and powers under this Trust Agreement and to forever resign their positions as employer signatory parties.

**SIGNATORY PARTIES** *as of September 1, 1990*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los     Angeles Commercial Pressmen No. 78, IP & GCU) |

**SIGNATORY PARTIES** *as of September 1, 1999*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los     Angeles Commercial Pressmen No, 78, IP & GCU) |

**SIGNATORY PARTIES** *as of September 1, 2012*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los     Angeles Commercial Pressmen No, 78, IP & GCU) |

— 40 —

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 60
2:20-cv-02082

### LIST OF TRUSTEES *as of January 1, 1976*

| **Employer Trustees** | **Labor Organization Trustees** |
|---|---|
| Harold Fuhrman | Sol Fishko |
| Charles Woessner | Robert O'Neil |
| Joseph Conley | Jack McCormick |
| Jerry Maras | Don McCaughan |
| Frank Hurlburt | George Peterson |
| William Kewell, Jr. | Frank Calderone |
| | Wade Moore |

| **Alternate Employer Trustees** | John Millan |
|---|---|
| Gerald Hedman | Floyd F. Lisinski |
| Walter Taylor | |
| O.H. Rieth | **Alternate Labor Organization Trustees** |
| Lad Sabo | George Barnett |
| | George Gates |
| | Cy Quinn |

### LIST OF TRUSTEES *as of September 1, 1990*

| **Employer Trustees** | **Labor Organization Trustees** |
|---|---|
| Joseph Conley | James Western |
| Harold Fuhrman | George Barnett |
| Jerry Maras | Wade Moore |
| O.H. Rieth | Floyd Lisinski |
| Donald Scheiber | William Roberts |
| David Stanger | James Norton |
| | Gary Dunmire |
| | Robert Bartlett |
| | William Clark |

### LIST OF TRUSTEES *as of September 1, 1999*

| **Employer Trustees** | **Labor Organization Trustees** |
|---|---|
| Joseph Conley | Frank P. Young |
| Harold Fuhrman | William Clark |
| Hugh Gaylord | John A. Giannone |
| Jerry Maras | Stephen E. Northup |
| Thomas E. Phillips | James J. Norton |
| Nate Accardi | Edward A. Treacy |
| Jim Janiga | John D. Bachler |
| | **Alternate Labor Organization Trustees** |
| | George Osgood |
| | Ryan Sherard |
| | Paul E. Golden |

— 41 —

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 61
2:20-cv-02082

# Notes

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 62
2:20-cv-02082

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 63
2:20-cv-02082



GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 64

2:20-cv-02082

GCIU-Employer Retirement Fund

AMENDMENT NO. 1
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on August 20, 2013, did adopt the following amendment to Article IV, Section 2, "Constitution of a Quorum," of the Trust Agreement governing the GCIU-Employer Retirement Fund.  This Amendment is effective August 20, 2013.

Article IV, "Trust Fund Administration," Section 2, "Constitution of a Quorum," is hereby deleted and replaced with the following:

"2.   Constitution of a Quorum

To constitute a quorum at any meeting of the Trustees there must be present at least 50% of the Employer Trustees, or duly designated alternates, and 50% of the Labor Organization Trustees, or duly designated alternates."

Dated this 20th day of August 2013.

_____          _____
          Chairman                           Secretary

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 65
2:20-cv-02082

GCIU-Employer Retirement Fund

AMENDMENT NO. 2
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on February 18, 2015, did adopt the following amendment to Article VI, Section 9, "Specifically Permitted Investments," of the Trust Agreement governing the GCIU-Employer Retirement Fund. This Amendment is effective February 18, 2015.

Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," is hereby revised to read as follows:

"9.   Specifically Permitted Investments

* * *

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments and investment vehicles, including, but not limited to, mutual funds, REITS, private equity funds, infrastructure funds, private debt funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above."

Dated this __10th__ day of April 2015.


_____          _____
Chairman                                  Secretary

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 66
2:20-cv-02082

GCIU-Employer Retirement Fund

AMENDMENT NO. 3
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)


This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund ("Fund"), at a meeting on November 17, 2015, did adopt the following Amendment to Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," of the Trust Agreement governing the GCIU-Employer Retirement Fund for compliance with the Multiemployer Pension Reform Act of 2014. This Amendment is effective January 1, 2015.

Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," is amended to delete the third paragraph in its entirety and replace it with the following:

**"20. Documents to Be Examined or Furnished**

\* \* \*

The Trustees shall also, upon written request by a participating employee or beneficiary, labor organization, or participating employer furnish to the participating employee or beneficiary, labor organization, or participating employer a copy of a) the current plan document (including any amendments thereto), b) the latest summary plan description of the plan, c) the current trust agreement (including any amendments thereto, d) the applicable collective bargaining agreement and/or participation agreement for the current Plan Year or any of the five immediately preceding Plan Years, e) the annual report for any Plan Year, f) the Trust Fund funding notice for any Plan Year, g) any periodic actuarial report (including any sensitivity testing) received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, h) any

1

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 67
2:20-cv-02082

quarterly, semi-annual, or annual financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, i) audited financial statements for the Trust Fund for any Plan Year, j) any application filed with the Secretary of the Treasury requesting an extension under Section 304(d) of the Act or Section 431(d) of the Internal Revenue Code of 1986 and the determination of such Secretary pursuant to such application, and k) in the case where the Trust Fund was in critical or endangered status under Section 305 of the Act for a Plan Year, the latest funding improvement or rehabilitation plan, and the contribution schedules applicable with respect to such funding improvement or rehabilitation plan (other than a contribution schedule applicable to a specific participating employer, if any), as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) of the Act with regard to individually identifiable information and proprietary information.

In accordance with Section 101(k) of the Act, such copies shall be furnished within 30 days of the request. In no case shall a participating employee or beneficiary, labor organization, or participating employer be entitled to receive more than one copy of any document in the paragraph above during any one 12-month period, or, in the case of any document described in items (e), (f), (g), (h), or (i) of the paragraph above, a copy of any document that as of the date on which the request is received by the Trust Fund, has been in the Trust Fund's possession for 6 years or more. The Trustees may impose a reasonable charge to cover copies, mailing, and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor."

* * *

Executed this 17th day of November 2015.

_Clay A. Terry_
Chairman

_Hugh Sybil_
Secretary

2

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 68
2:20-cv-02082

FINAL
11/13/18

GCIU-Employer Retirement Fund

AMENDMENT NO. 4
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the current Labor Organization Trustees of the GCIU-Employer Retirement Fund did adopt the following Amendments to Article II, "Definitions," Section 12, "Signatory parties"; Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees"; Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity"; and Article XIV, "Amendments and Termination," Section 1, "Amendments," and Section 2, "Termination," of the Trust Agreement governing the GCIU-Employer Retirement Fund. This Amendment is effective November 13, 2018.

1. Under Article II, "Definitions," Section 12, "Signatory parties," is hereby deleted in its entirety and the remaining Sections renumbered accordingly.

2. Under Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees," is deleted in its entirety and replaced with the following:

"Article III
THE TRUSTEES

* * *

8. Appointment of Successor Labor Organization Trustees

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be nominated by the President of the GCC-Conference of the IBT (or his named representative) and then approved/appointed by a majority of the current Labor Organization Trustees at the time of the nomination(s).

1

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 69
2:20-cv-02082

The GCC-Conference of the IBT shall be entitled to one Labor Organization Trustee. In addition, only one Labor Organization Trustee shall be permitted from the same local union and/or its affiliated District Council at any time."

3. Under Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity," the second and third paragraphs are deleted in their entirety and replaced with the following:

"Article III
THE TRUSTEES

* * *

12. Termination of Appointment by Appointing Entity

* * *

The appointment of a Labor Organization Trustee may be terminated, at any time, by a majority action of the current Labor Organization Trustees for the reasons set forth in Article III, Sections 13, 14, and 15.

The termination of a Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or Labor Organization Trustees, as applicable. Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's Administrative Office."

4. Under Article XIV, "Amendments and Termination," Section 1, "Amendments," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

1. Amendments

This Trust Agreement may be amended at any time by action of the Trustees."

2

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 1 to COMPLAINT - 70
2:20-cv-02082

5.   Under Article XIV, "Amendments and Termination," Section 2, "Termination," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

* * *

2.   Termination

This Trust Agreement may be terminated, at any time, by unanimous action of the Trustees."

* * *

6.   All other ancillary references to the "remaining Signatory parties" and/or "Signatory party(ies) are hereby deleted and an appropriate notation will be reflected on page 40 of this Agreement.


Executed this 13th day of November 2018 by the Labor Organization Trustees.


_____          _____
Ralph M. Meers                           John D. Bachler
as Alternate Trustee for                 Labor Organization Trustee
Edward A. Treacy
Labor Organization Trustee


_____
George Tedeschi
Labor Organization Trustee


3

# EXHIBIT 2

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 72
2:20-cv-02082



Mr. Michael Powell
Eagle Graphics, Inc.
149 Anderson Avenue
Rochester, New York 14607

Re:      GCIU – Employer Retirement Fund
         Employer Number - 901900

Dear Mr. Powell:

The testing made by this office of your records to determine the propriety of contributions to the above Fund is complete.

Prior to submitting the enclosed report to the Trustees, we are forwarding a draft to you, and would welcome any questions or comments you may have. Please direct any such questions to Michael Purdy or me.

Please note the improper payments are subject to plan rules and must follow the plan refund policies and procedures.

If we do not hear from you within the next two weeks, we will assume you are in agreement with our findings and the report will be submitted to the Trust Administration office for processing. Thank you for your help and cooperation during our testing.

Yours very truly,

Darrel Tillmannshofer
DRT:skw
Enclosures
cc:      Michelle Stuhrman
         Jesse Swain
         Garth Fisher
         Frank Miles
         Valentina Mindirgasova

5000 Executive Parkway, Suite 400 San Ramon, California 94583 925-277-9100 Main 925-277-9552 Fax

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 73
2:20-cv-02082

GCIU – Employer Retirement Fund

**Employer Name:**  Eagle Graphics, Inc.

**Employer #:**  901900

**Local #:**  503M

**Address:**  149 Anderson Avenue, Rochester, NY 14607            **Phone:** (585) 244-5006

**Contact:**  Michael Powell, Owner

**Testing Period Covered:**  July 1, 2011 through May 31, 2019

**Range of Employees Reported:**  0 - 6

The Company reported to the Fund for work months May 2017 through August 2017, and work months November 2017 through January 2018. However, employees performed covered work during the entire testing period, as set forth above. Discrepancies caused as a result of this situation have been quantified as Type 1 below.

The Company reported Owner, Michael Powell ███████████ to the Fund for the months indicated in the preceding paragraph. However, we were unable to determine whether Mr. Powell performed collectively bargained work or otherwise qualified as a "transferred employee" and the Company does not have a signed agreement for non-collectively bargained participation in the Fund. Discrepancies caused by this situation are listed as Type 3 below.

The following types of discrepancies were noted:

1.      Employee was compensated for more shifts during the month than the number of shifts reported to the Fund.

2.      Employee was compensated for fewer shifts during the month than the number of shifts reported to the Fund.

3.      Owner was improperly reported to the Fund.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 74
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

| Year | Base Contribution Principal Due | Interest Due | Surcharge or Rehab % | Surcharge or Rehab Amount Due | Total Due | Improper Payments Base | Surcharge or Rehab | Total |
|------|------|------|------|------|------|------|------|------|
| 2011 | $ 6,475.15 | $ 5,162.13 | 15% | $ 971.27 | $ 12,608.55 | $ - | $ - | $ - |
| 2012 | 12,458.15 | 8,991.29 | 25% | 3,114.54 | 24,563.98 | - | - | - |
| 2013 | 14,108.30 | 8,740.35 | 25% | 3,527.08 | 26,375.73 | - | - | - |
| 2014 | 14,822.40 | 7,741.96 | 25% | 3,705.60 | 26,269.96 | - | - | - |
| 2015 | 13,345.95 | 5,631.66 | 25% | 3,336.49 | 22,314.10 | - | - | - |
| 2016 | 13,654.75 | 4,417.75 | 25% | 3,413.69 | 21,486.19 | - | - | - |
| 2017 | 6,301.45 | 1,481.33 | 25% | 1,575.36 | 9,358.14 | 1,351.00 | 337.75 | 1,688.75 |
| 2018 | 11,290.50 | 1,324.74 | 25% | 2,822.63 | 15,437.87 | 221.95 | 55.49 | 277.44 |
| 2019 | 5,104.85 | 260.30 | 25% | 1,276.21 | 6,641.36 | - | - | - |
| Total | $ 97,561.50 | $ 43,751.51 | | $ 23,742.87 | 165,055.88 | $ 1,572.95 | $ 393.24 | $ 1,966.19 |

Audit Cost [1]  6,539.50

Total Due  $ 171,595.38

[1] The error factor during the testing period is greater than 5%

Please note any improper payments are subject to plan rules regarding the plan refund policies and procedures.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 75
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| **Crandall-Grommel, T.** | | | | | | | | | |
| | 1 | Oct-15 | 20.00 | - | 20.00 | 9.65 | $ 193.00 | $ 75.77 | $ - |
| | 1 | Nov-15 | 14.00 | - | 14.00 | 9.65 | 135.10 | 51.93 | - |
| | 1 | Dec-15 | 18.00 | - | 18.00 | 9.65 | 173.70 | 65.29 | - |
| | 1 | Jan-16 | 21.00 | - | 21.00 | 9.65 | 202.65 | 74.45 | - |
| | 1 | Feb-16 | 18.00 | - | 18.00 | 9.65 | 173.70 | 62.44 | - |
| | 1 | Mar-16 | 16.00 | - | 16.00 | 9.65 | 154.40 | 54.19 | - |
| | 1 | Apr-16 | 18.00 | - | 18.00 | 9.65 | 173.70 | 59.53 | - |
| | 1 | May-16 | 16.00 | - | 16.00 | 9.65 | 154.40 | 51.61 | - |
| | 1 | Jun-16 | 12.00 | - | 12.00 | 9.65 | 115.80 | 37.75 | - |
| | | | 153.00 | - | 153.00 | | 1,476.45 | 532.96 | - |
| **Febo, Z.** | | | | | | | | | |
| | 1 | Jun-13 | 2.00 | - | 2.00 | 9.65 | 19.30 | 12.09 | - |
| | 1 | Jul-13 | 18.00 | - | 18.00 | 9.65 | 173.70 | 107.31 | - |
| | 1 | Aug-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 147.00 | - |
| | 1 | Sep-13 | 4.00 | - | 4.00 | 9.65 | 38.60 | 23.20 | - |
| | | | 49.00 | - | 49.00 | | 472.85 | 289.60 | - |
| **Monette, Z.** | | | | | | | | | |
| | 1 | Aug-15 | 7.00 | - | 7.00 | 9.65 | 67.55 | 27.65 | - |
| | 1 | Aug-16 | 6.00 | - | 6.00 | 9.65 | 57.90 | 17.89 | - |
| | 1 | Jan-17 | 2.00 | - | 2.00 | 9.65 | 19.30 | 5.16 | - |
| | 1 | Mar-17 | 2.00 | - | 2.00 | 9.65 | 19.30 | 4.84 | - |
| | 1 | May-17 | 2.00 | - | 2.00 | 9.65 | 19.30 | 4.52 | - |
| | 1 | Jun-17 | 3.00 | - | 3.00 | 9.65 | 28.95 | 6.54 | - |
| | 1 | Jul-17 | 1.00 | - | 1.00 | 9.65 | 9.65 | 2.10 | - |
| | 1 | Aug-17 | 2.00 | - | 2.00 | 9.65 | 19.30 | 4.03 | - |
| | 1 | Sep-17 | 1.00 | - | 1.00 | 9.65 | 9.65 | 1.94 | - |
| | 1 | Oct-17 | 4.00 | - | 4.00 | 9.65 | 38.60 | 7.42 | - |
| | 1 | Nov-17 | 3.00 | - | 3.00 | 9.65 | 28.95 | 5.33 | - |
| | 1 | Dec-17 | 1.00 | - | 1.00 | 9.65 | 9.65 | 1.69 | - |
| | 1 | Apr-18 | 1.00 | - | 1.00 | 9.65 | 9.65 | 1.38 | - |
| | | | 35.00 | - | 35.00 | | 337.75 | 90.49 | - |

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 76
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Mumpton, G. | | | | | | | | | |
| | - | Jul-11 | 25.00 | - | 25.00 $ | 9.65 $ | 241.25 $ | 197.36 $ | - |
| | - | Aug-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 156.25 | - |
| | - | Sep-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 193.33 | - |
| | - | Oct-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 153.03 | - |
| | - | Nov-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 151.44 | - |
| | - | Dec-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 187.25 | - |
| | - | Jan-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 148.16 | - |
| | - | Feb-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 146.63 | - |
| | - | Mar-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 181.23 | - |
| | - | Apr-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 143.40 | - |
| | - | May-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 141.76 | - |
| | - | Jun-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 175.22 | - |
| | - | Jul-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 138.54 | - |
| | - | Aug-12 | 26.00 | - | 26.00 | 9.65 | 250.90 | 177.97 | - |
| | - | Sep-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 135.31 | - |
| | - | Oct-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 133.67 | - |
| | - | Nov-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 165.11 | - |
| | - | Dec-12 | 21.00 | - | 21.00 | 9.65 | 202.65 | 136.97 | - |
| | - | Jan-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 128.81 | - |
| | - | Feb-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 127.33 | - |
| | - | Mar-13 | 24.00 | - | 24.00 | 9.65 | 231.60 | 150.83 | - |
| | - | Apr-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 124.10 | - |
| | - | May-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 153.08 | - |
| | - | Jun-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 120.88 | - |
| | - | Jul-13 | 21.00 | - | 21.00 | 9.65 | 202.65 | 125.20 | - |
| | - | Aug-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 147.00 | - |
| | - | Sep-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 116.01 | - |
| | - | Oct-13 | 21.00 | - | 21.00 | 9.65 | 202.65 | 120.09 | - |
| | - | Nov-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 140.98 | - |
| | - | Dec-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 111.15 | - |
| | - | Jan-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 136.88 | - |
| | - | Feb-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 108.03 | - |
| | - | Mar-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 106.39 | - |
| | - | Apr-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 104.80 | - |
| | - | May-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 128.95 | - |
| | - | Jun-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 101.58 | - |
| | - | Jul-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 99.94 | - |
| | - | Aug-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 122.87 | - |
| | - | Sep-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 96.71 | - |

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 77
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.

Employer #901900

July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Mumpton, G. (cont.) | - | Oct-14 | 25.00 | - | 25.00 | $ 9.65 | $ 241.25 | $ 118.84 | $ - |
| | - | Nov-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 93.49 | - |
| | - | Dec-14 | 21.00 | - | 21.00 | 9.65 | 202.65 | 96.44 | - |
| | - | Jan-15 | 26.00 | - | 26.00 | 9.65 | 250.90 | 117.27 | - |
| | - | Feb-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 88.73 | - |
| | - | Mar-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 87.09 | - |
| | - | Apr-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 85.50 | - |
| | - | May-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 104.83 | - |
| | - | Jun-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 82.28 | - |
| | - | Jul-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 100.80 | - |
| | - | Aug-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 79.00 | - |
| | - | Sep-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 77.41 | - |
| | - | Oct-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 94.72 | - |
| | - | Nov-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 74.19 | - |
| | - | Dec-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 72.55 | - |
| | - | Jan-16 | 22.00 | - | 22.00 | 9.65 | 212.30 | 78.00 | - |
| | - | Feb-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 69.37 | - |
| | - | Mar-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 67.74 | - |
| | - | Apr-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 82.69 | - |
| | - | May-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 64.51 | - |
| | - | Jun-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 62.92 | - |
| | - | Jul-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 76.61 | - |
| | - | Aug-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 59.64 | - |
| | - | Sep-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 72.57 | - |
| | - | Oct-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 56.42 | - |
| | - | Nov-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 54.83 | - |
| | - | Dec-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 66.49 | - |
| | - | Jan-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 51.55 | - |
| | - | Feb-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 50.07 | - |
| | - | Mar-17 | 25.00 | - | 25.00 | 9.65 | 241.25 | 60.54 | - |
| | - | Apr-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 46.85 | - |
| | - | Sep-17 | 21.00 | - | 21.00 | 9.65 | 202.65 | 40.70 | - |
| | - | Oct-17 | 22.00 | - | 22.00 | 9.65 | 212.30 | 40.83 | - |
| | - | Jan-18 | 25.00 | 23.00 | 2.00 | 9.65 | 19.30 | 3.23 | - |
| | - | Feb-18 | 17.00 | - | 17.00 | 9.65 | 164.05 | 26.16 | - |
| | - | Mar-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 36.42 | - |
| | - | Apr-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 27.55 | - |
| | - | May-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 25.91 | - |
| | - | Jun-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 30.40 | - |
| | - | Jul-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 22.68 | - |
| | - | Aug-18 | 24.00 | - | 24.00 | 9.65 | 231.60 | 25.25 | - |

EXHIBIT 2 to COMPLAINT - 78
2:20-cv-02082

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| MUMPTON, G. (cont.) | | | | | | | | | |
| | 1 | Sep-18 | 21.00 | - | $ 21.00 | 9.65 | $ 202.65 | $ 20.43 | $ - |
| | 1 | Oct-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 17.82 | - |
| | 1 | Nov-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 20.29 | - |
| | 1 | Dec-18 | 22.00 | - | 22.00 | 9.65 | 212.30 | 16.05 | - |
| | 1 | Jan-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 12.95 | - |
| | 1 | Feb-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 11.47 | - |
| | 1 | Mar-19 | 25.00 | - | 25.00 | 9.65 | 241.25 | 12.29 | - |
| | 1 | Apr-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 8.25 | - |
| | 1 | May-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 6.61 | - |
| | | | 1,939.00 | 23.00 | 1,916.00 | | 18,489.40 | 8,233.47 | - |
| PAGAN, M. | | | | | | | | | |
| | 1 | Jul-13 | 18.00 | - | 18.00 | 9.65 | 173.70 | 107.31 | - |
| | 1 | Aug-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 147.00 | - |
| | 1 | Sep-13 | 19.00 | - | 19.00 | 9.65 | 183.35 | 110.21 | - |
| | 1 | Oct-13 | 19.00 | - | 19.00 | 9.65 | 183.35 | 108.65 | - |
| | 1 | Nov-13 | 22.00 | - | 22.00 | 9.65 | 212.30 | 124.06 | - |
| | 1 | Dec-13 | 19.00 | - | 19.00 | 9.65 | 183.35 | 105.59 | - |
| | 1 | Jan-14 | 22.00 | - | 22.00 | 9.65 | 212.30 | 120.46 | - |
| | 1 | Feb-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 102.63 | - |
| | 1 | Mar-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 101.07 | - |
| | 1 | Apr-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 99.56 | - |
| | 1 | May-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 128.95 | - |
| | 1 | Jun-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 96.50 | - |
| | 1 | Jul-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 99.94 | - |
| | 1 | Aug-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 122.87 | - |
| | 1 | Sep-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 91.88 | - |
| | 1 | Oct-14 | 14.00 | - | 14.00 | 9.65 | 135.10 | 66.55 | - |
| | 1 | Nov-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 93.49 | - |
| | 1 | Dec-14 | 18.00 | - | 18.00 | 9.65 | 173.70 | 82.66 | - |
| | 1 | Jan-15 | 23.00 | - | 23.00 | 9.65 | 221.95 | 103.74 | - |
| | 1 | Feb-15 | 5.00 | - | 5.00 | 9.65 | 48.25 | 22.18 | - |
| | | | 389.00 | - | 389.00 | | 3,753.85 | 2,035.30 | - |
| POWELL, J. | | | | | | | | | |
| | 1 | Jul-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 197.36 | - |
| | 1 | Aug-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 156.25 | - |
| | 1 | Sep-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 193.33 | - |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 79
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Powell, J. (cont.) | - | Oct-11 | 20.00 | - | $  20.00 | 9.65 | $  193.00 | $  153.03 | $  - |
|  | - | Nov-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 151.44 | - |
|  | - | Dec-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 187.25 | - |
|  | - | Jan-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 148.16 | - |
|  | - | Feb-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 146.63 | - |
|  | - | Mar-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 181.23 | - |
|  | - | Apr-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 143.40 | - |
|  | - | May-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 141.76 | - |
|  | - | Jun-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 175.22 | - |
|  | - | Jul-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 138.54 | - |
|  | - | Aug-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 171.12 | - |
|  | - | Sep-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 135.31 | - |
|  | - | Oct-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 133.67 | - |
|  | - | Nov-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 165.11 | - |
|  | - | Dec-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 130.45 | - |
|  | - | Jan-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 128.81 | - |
|  | - | Feb-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 127.33 | - |
|  | - | Mar-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 157.11 | - |
|  | - | Apr-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 124.10 | - |
|  | - | May-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 153.08 | - |
|  | - | Jun-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 120.88 | - |
|  | - | Jul-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 119.24 | - |
|  | - | Aug-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 147.00 | - |
|  | - | Sep-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 116.01 | - |
|  | - | Oct-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 114.37 | - |
|  | - | Nov-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 140.98 | - |
|  | - | Dec-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 111.15 | - |
|  | - | Jan-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 136.88 | - |
|  | - | Feb-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 108.03 | - |
|  | - | Mar-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 106.39 | - |
|  | - | Apr-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 104.80 | - |
|  | - | May-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 128.95 | - |
|  | - | Jun-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 101.58 | - |
|  | - | Jul-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 99.94 | - |
|  | - | Aug-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 122.87 | - |
|  | - | Sep-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 96.71 | - |
|  | - | Oct-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 118.84 | - |
|  | - | Nov-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 93.49 | - |
|  | - | Dec-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 91.85 | - |
|  | - | Jan-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 112.76 | - |
|  | - | Feb-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 88.73 | - |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 80
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.

Employer #901900

July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Powell, J. (cont.) | - | Mar-15 | 20.00 | - | $ 20.00 | 9.65 | $ 193.00 | $ 87.09 | $ - |
| | - | Apr-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 88.50 | - |
| | - | May-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 104.83 | - |
| | - | Jun-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 82.28 | - |
| | - | Jul-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 100.80 | - |
| | - | Aug-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 79.00 | - |
| | - | Sep-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 77.41 | - |
| | - | Oct-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 94.72 | - |
| | - | Nov-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 74.19 | - |
| | - | Dec-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 72.55 | - |
| | - | Jan-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 88.63 | - |
| | - | Feb-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 69.37 | - |
| | - | Mar-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 67.74 | - |
| | - | Apr-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 82.69 | - |
| | - | May-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 64.51 | - |
| | - | Jun-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 62.92 | - |
| | - | Jul-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 76.61 | - |
| | - | Aug-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 59.64 | - |
| | - | Sep-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 72.57 | - |
| | - | Oct-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 56.42 | - |
| | - | Nov-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 54.83 | - |
| | - | Dec-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 66.49 | - |
| | - | Jan-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 51.55 | - |
| | - | Feb-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 50.07 | - |
| | - | Mar-17 | 25.00 | - | 25.00 | 9.65 | 241.25 | 60.54 | - |
| | - | Apr-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 46.85 | - |
| | - | Sep-17 | 21.00 | - | 21.00 | 9.65 | 202.65 | 40.70 | - |
| | - | Oct-17 | 22.00 | - | 22.00 | 9.65 | 212.30 | 40.83 | - |
| | - | Feb-18 | 17.00 | - | 17.00 | 9.65 | 164.05 | 26.16 | - |
| | - | Mar-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 36.42 | - |
| | - | Apr-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 27.55 | - |
| | - | May-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 25.91 | - |
| | - | Jun-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 30.40 | - |
| | - | Jul-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 22.68 | - |
| | - | Aug-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 26.31 | - |
| | - | Sep-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 19.46 | - |
| | - | Oct-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 17.82 | - |
| | - | Nov-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 20.29 | - |
| | - | Dec-18 | 15.00 | - | 15.00 | 9.65 | 144.75 | 10.95 | - |
| | - | Jan-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 12.95 | - |
| | - | Feb-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 11.47 | - |

EXHIBIT 2 to COMPLAINT - 81
2:20-cv-02082

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Powell, J. (cont.) | | | | | | | | | |
| | 1 | Mar-19 | 25.00 | - | 25.00 | 9.65 | $ 241.25 | $ 12.29 | $ - |
| | 1 | Apr-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 8.25 | - |
| | 1 | May-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 6.61 | - |
| | | | 1,905.00 | - | 1,905.00 | | 18,383.25 | 8,207.99 | - |
| Powell, M. | | | | | | | | | |
| | 3 | May-17 | - | 23.00 | (23.00) | 9.65 | - | - | 221.95 |
| | 3 | Jun-17 | - | 22.00 | (22.00) | 9.65 | - | - | 212.30 |
| | 3 | Jul-17 | - | 21.00 | (21.00) | 9.65 | - | - | 202.65 |
| | 3 | Aug-17 | - | 23.00 | (23.00) | 9.65 | - | - | 221.95 |
| | 3 | Nov-17 | - | 22.00 | (22.00) | 9.65 | - | - | 212.30 |
| | 3 | Dec-17 | - | 21.00 | (21.00) | 9.65 | - | - | 202.65 |
| | 3 | Jan-18 | - | 23.00 | (23.00) | 9.65 | - | - | 221.95 |
| | | | - | 155.00 | (155.00) | | - | - | 1,495.75 |
| Reynolds, W. | | | | | | | | | |
| | 1 | Jul-11 | 23.00 | - | 23.00 | 9.65 | 221.95 | 181.57 | |
| | 1 | Aug-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 156.25 | |
| | 1 | Sep-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 193.33 | |
| | 1 | Oct-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 153.03 | |
| | 1 | Nov-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 151.44 | |
| | 1 | Dec-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 187.25 | |
| | 1 | Jan-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 148.16 | |
| | 1 | Feb-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 146.63 | |
| | 1 | Mar-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 181.23 | |
| | 1 | Apr-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 143.40 | |
| | 1 | May-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 141.76 | |
| | 1 | Jun-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 175.22 | |
| | 1 | Jul-12 | 18.00 | - | 18.00 | 9.65 | 173.70 | 124.68 | |
| | 1 | Aug-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 171.12 | |
| | 1 | Sep-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 135.31 | |
| | 1 | Oct-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 133.67 | |
| | 1 | Nov-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 165.11 | |
| | 1 | Dec-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 130.45 | |
| | 1 | Jan-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 128.81 | |
| | 1 | Feb-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 127.33 | |
| | 1 | Mar-13 | 24.00 | - | 24.00 | 9.65 | 231.60 | 150.83 | |
| | 1 | Apr-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 124.10 | |
| | 1 | May-13 | 24.00 | - | 24.00 | 9.65 | 231.60 | 146.95 | |

EXHIBIT 2 to COMPLAINT - 82
2:20-cv-02082

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Reynolds, W. (cont.) | - | Jun-13 | 18.00 | - | 18.00 | $ 9.65 | $ 173.70 | $ 108.79 | $ - |
| | - | Jul-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 119.24 | - |
| | - | Aug-13 | 26.00 | - | 26.00 | 9.65 | 250.90 | 152.88 | - |
| | - | Sep-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 116.01 | - |
| | - | Oct-13 | 15.00 | - | 15.00 | 9.65 | 144.75 | 85.78 | - |
| | - | Nov-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 140.98 | - |
| | - | Dec-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 111.15 | - |
| | - | Jan-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 136.88 | - |
| | - | Feb-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 108.03 | - |
| | - | Mar-14 | 21.00 | - | 21.00 | 9.65 | 202.65 | 111.71 | - |
| | - | Apr-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 104.80 | - |
| | - | May-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 128.95 | - |
| | - | Jun-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 101.58 | - |
| | - | Jul-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 99.94 | - |
| | - | Aug-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 122.87 | - |
| | - | Sep-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 91.88 | - |
| | - | Oct-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 118.84 | - |
| | - | Nov-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 93.49 | - |
| | - | Dec-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 91.85 | - |
| | - | Jan-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 112.76 | - |
| | - | Feb-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 88.73 | - |
| | - | Mar-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 87.09 | - |
| | - | Apr-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 85.50 | - |
| | - | May-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 104.83 | - |
| | - | Jun-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 82.28 | - |
| | - | Jul-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 100.80 | - |
| | - | Aug-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 79.00 | - |
| | - | Sep-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 77.41 | - |
| | - | Oct-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 75.77 | - |
| | - | Nov-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 74.19 | - |
| | - | Dec-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 72.55 | - |
| | - | Jan-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 88.63 | - |
| | - | Feb-16 | 19.00 | - | 19.00 | 9.65 | 183.35 | 65.91 | - |
| | - | Mar-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 67.74 | - |
| | - | Apr-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 82.69 | - |
| | - | May-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 64.51 | - |
| | - | Jun-16 | 17.00 | - | 17.00 | 9.65 | 164.05 | 53.48 | - |
| | - | Jul-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 76.61 | - |
| | - | Aug-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 59.64 | - |
| | - | Sep-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 58.06 | - |
| | - | Oct-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 56.42 | - |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 83
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Reynolds, W. (cont.) | | | | | | | | | |
| | 1 | Nov-16 | 19.00 | - | 19.00 | 9.65 | $ 183.35 | $ 52.09 | $ - |
| | 1 | Dec-16 | 26.00 | - | 26.00 | 9.65 | 250.90 | 69.15 | - |
| | 1 | Jan-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 51.55 | - |
| | 1 | Feb-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 50.07 | - |
| | 1 | Mar-17 | 23.00 | - | 23.00 | 9.65 | 221.95 | 55.70 | - |
| | 1 | Apr-17 | 19.00 | - | 19.00 | 9.65 | 183.35 | 44.51 | - |
| | 2 | Jul-17 | 18.00 | 21.00 | (3.00) | 9.65 | - | - | 28.95 |
| | 1 | Sep-17 | 21.00 | - | 21.00 | 9.65 | 202.65 | 40.70 | - |
| | 1 | Oct-17 | 12.00 | - | 12.00 | 9.65 | 115.80 | 22.27 | - |
| | 1 | Feb-18 | 17.00 | - | 17.00 | 9.65 | 164.05 | 26.16 | - |
| | 1 | Mar-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 36.42 | - |
| | 1 | Apr-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 27.55 | - |
| | 1 | May-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 25.91 | - |
| | 1 | Jun-18 | 24.00 | - | 24.00 | 9.65 | 231.60 | 29.19 | - |
| | 1 | Jul-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 22.68 | - |
| | 1 | Aug-18 | 21.00 | - | 21.00 | 9.65 | 202.65 | 22.10 | - |
| | 1 | Sep-18 | 21.00 | - | 21.00 | 9.65 | 202.65 | 20.43 | - |
| | 1 | Oct-18 | 17.00 | - | 17.00 | 9.65 | 164.05 | 15.15 | - |
| | 1 | Nov-18 | 26.00 | - | 26.00 | 9.65 | 250.90 | 21.10 | - |
| | 1 | Dec-18 | 18.00 | - | 18.00 | 9.65 | 173.70 | 13.13 | - |
| | 1 | Jan-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 12.95 | - |
| | 1 | Feb-19 | 22.00 | - | 22.00 | 9.65 | 212.30 | 12.62 | - |
| | 1 | Mar-19 | 25.00 | - | 25.00 | 9.65 | 241.25 | 12.29 | - |
| | 1 | Apr-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 8.25 | - |
| | 1 | May-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 6.61 | - |
| | | | 1,883.00 | 21.00 | 1,862.00 | | 17,997.25 | 8,056.46 | 28.95 |
| Sarrantonio, J. | | | | | | | | | |
| | 1 | Jun-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 197.36 | - |
| | 1 | Aug-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 156.25 | - |
| | 1 | Sep-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 193.33 | - |
| | 1 | Oct-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 153.03 | - |
| | 1 | Nov-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 151.44 | - |
| | 1 | Dec-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 187.25 | - |
| | 1 | Jan-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 148.16 | - |
| | 1 | Feb-12 | 19.00 | - | 19.00 | 9.65 | 183.35 | 139.30 | - |
| | 1 | Mar-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 181.23 | - |
| | 1 | Apr-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 143.40 | - |
| | 1 | May-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 141.76 | - |
| | 1 | Jun-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 175.22 | - |
| | 1 | Jul-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 138.54 | - |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 84
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Sarrantonio, J. (cont.) | - | Aug-12 | 25.00 | - | $ 25.00 | 9.65 | $ 241.25 | $ 171.12 | $ - |
| | - | Sep-12 | 15.00 | - | 15.00 | 9.65 | 144.75 | 101.48 | - |
| | - | Oct-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 133.67 | - |
| | - | Nov-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 165.11 | - |
| | - | Dec-12 | 18.00 | - | 18.00 | 9.65 | 173.70 | 117.40 | - |
| | - | Jan-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 128.81 | - |
| | - | Feb-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 127.33 | - |
| | - | Mar-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 157.11 | - |
| | - | Apr-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 124.10 | - |
| | - | May-13 | 26.00 | - | 26.00 | 9.65 | 250.90 | 159.20 | - |
| | - | Jun-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 120.88 | - |
| | - | Jul-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 119.24 | - |
| | - | Aug-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 147.00 | - |
| | - | Sep-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 116.01 | - |
| | - | Oct-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 114.37 | - |
| | - | Nov-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 140.98 | - |
| | - | Dec-13 | 18.00 | - | 18.00 | 9.65 | 173.70 | 100.03 | - |
| | - | Jan-14 | 23.00 | - | 23.00 | 9.65 | 221.95 | 125.93 | - |
| | - | Feb-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 108.03 | - |
| | - | Mar-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 106.39 | - |
| | - | Apr-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 99.56 | - |
| | - | May-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 128.95 | - |
| | - | Jun-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 101.58 | - |
| | - | Jul-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 99.94 | - |
| | - | Aug-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 122.87 | - |
| | - | Sep-14 | 19.00 | - | 19.00 | 9.65 | 183.35 | 91.88 | - |
| | - | Oct-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 118.84 | - |
| | - | Nov-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 93.49 | - |
| | - | Dec-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 91.85 | - |
| | - | Jan-15 | 24.00 | - | 24.00 | 9.65 | 231.60 | 108.25 | - |
| | - | Feb-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 88.73 | - |
| | - | Mar-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 87.09 | - |
| | - | Apr-15 | 21.00 | - | 21.00 | 9.65 | 202.65 | 89.78 | - |
| | - | May-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 104.83 | - |
| | - | Jun-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 82.28 | - |
| | - | Jul-15 | 24.00 | - | 24.00 | 9.65 | 231.60 | 96.76 | - |
| | - | Aug-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 79.00 | - |
| | - | Sep-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 77.41 | - |
| | - | Oct-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 94.72 | - |
| | - | Nov-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 74.19 | - |
| | - | Dec-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 72.55 | - |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 85
2:20-cv-02082

# GCIU - EMPLOYER RETIREMENT FUND

EAGLE GRAPHICS, INC.
EMPLOYER #901900
JULY 1, 2011 THROUGH MAY 31, 2019

## SUMMARY OF DISCREPANCIES

| EMPLOYEE SOCIAL SECURITY NUMBER | DISCREPANCY TYPE | WORK MONTH | SHIFTS REPORTABLE | SHIFTS REPORTED | DIFFERENCE | RATE | PRINCIPAL DUE | INTEREST | IMPROPER PAYMENT |
|---|---|---|---|---|---|---|---|---|---|
| SARRANTONIO, J. (CONT.) | 1 | JAN-16 | 24.00 | - | 24.00 | 9.65 | $ 231.60 | $ 85.09 | $ - |
| | 1 | FEB-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 69.37 | - |
| | 1 | MAR-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 67.74 | - |
| | 1 | APR-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 82.69 | - |
| | 1 | MAY-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 64.51 | - |
| | 1 | JUN-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 62.92 | - |
| | 1 | JUL-16 | 24.00 | - | 24.00 | 9.65 | 231.60 | 73.54 | - |
| | 1 | AUG-16 | 19.00 | - | 19.00 | 9.65 | 183.35 | 56.66 | - |
| | 1 | SEP-16 | 22.00 | - | 22.00 | 9.65 | 212.30 | 63.86 | - |
| | 1 | OCT-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 56.42 | - |
| | 1 | NOV-16 | 18.00 | - | 18.00 | 9.65 | 173.70 | 49.35 | - |
| | 1 | DEC-16 | 24.00 | - | 24.00 | 9.65 | 231.60 | 63.83 | - |
| | 1 | JAN-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 51.55 | - |
| | 1 | FEB-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 50.07 | - |
| | 1 | MAR-17 | 25.00 | - | 25.00 | 9.65 | 241.25 | 60.54 | - |
| | 1 | APR-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 46.85 | - |
| | 1 | SEP-17 | 21.00 | - | 21.00 | 9.65 | 202.65 | 40.70 | - |
| | 1 | OCT-17 | 22.00 | - | 22.00 | 9.65 | 212.30 | 40.83 | - |
| | 1 | FEB-18 | 17.00 | - | 17.00 | 9.65 | 164.05 | 26.16 | - |
| | 1 | MAR-18 | 24.00 | - | 24.00 | 9.65 | 231.60 | 34.96 | - |
| | 1 | APR-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 27.55 | - |
| | 1 | MAY-18 | 19.00 | - | 19.00 | 9.65 | 183.35 | 24.61 | - |
| | 1 | JUN-18 | 24.00 | - | 24.00 | 9.65 | 231.60 | 29.19 | - |
| | 1 | JUL-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 22.68 | - |
| | 1 | AUG-18 | 22.00 | - | 22.00 | 9.65 | 212.30 | 23.15 | - |
| | 1 | SEP-18 | 15.00 | - | 15.00 | 9.65 | 144.75 | 14.59 | - |
| | 1 | OCT-18 | 19.00 | - | 19.00 | 9.65 | 183.35 | 16.93 | - |
| | 1 | NOV-18 | 27.00 | - | 27.00 | 9.65 | 260.55 | 21.91 | - |
| | 1 | DEC-18 | 18.00 | - | 18.00 | 9.65 | 173.70 | 13.13 | - |
| | 1 | JAN-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 12.95 | - |
| | 1 | FEB-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 11.47 | - |
| | 1 | MAR-19 | 25.00 | - | 25.00 | 9.65 | 241.25 | 12.29 | - |
| | 1 | APR-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 8.25 | - |
| | 1 | MAY-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 6.61 | - |
| | | | 1,875.00 | - | 1,875.00 | | 18,093.75 | 8,087.96 | - |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 86
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.
Employer #901900
July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Vongphachanh, K. | | | | | | | | | |
| ▉▉▉▉▉ | - | Jul-11 | 26.00 | - | 26.00 | 9.65 | 250.90 | 205.26 | - |
| | - | Aug-11 | 19.00 | - | 19.00 | 9.65 | 183.35 | 148.44 | - |
| | - | Sep-11 | 23.00 | - | 23.00 | 9.65 | 221.95 | 177.86 | - |
| | - | Oct-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 153.03 | - |
| | - | Nov-11 | 20.00 | - | 20.00 | 9.65 | 193.00 | 151.44 | - |
| | - | Dec-11 | 25.00 | - | 25.00 | 9.65 | 241.25 | 187.25 | - |
| | - | Jan-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 148.16 | - |
| | - | Feb-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 146.63 | - |
| | - | Mar-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 181.23 | - |
| | - | Apr-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 143.40 | - |
| | - | May-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 141.76 | - |
| | - | Jun-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 175.22 | - |
| | - | Jul-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 138.54 | - |
| | - | Aug-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 171.12 | - |
| | - | Sep-12 | 18.00 | - | 18.00 | 9.65 | 173.70 | 121.78 | - |
| | - | Oct-12 | 20.00 | - | 20.00 | 9.65 | 193.00 | 133.67 | - |
| | - | Nov-12 | 25.00 | - | 25.00 | 9.65 | 241.25 | 165.11 | - |
| | - | Dec-12 | 21.00 | - | 21.00 | 9.65 | 202.65 | 136.97 | - |
| | - | Jan-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 128.81 | - |
| | - | Feb-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 127.33 | - |
| | - | Mar-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 157.11 | - |
| | - | Apr-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 124.10 | - |
| | - | May-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 153.08 | - |
| | - | Jun-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 120.88 | - |
| | - | Jul-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 119.24 | - |
| | - | Aug-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 147.00 | - |
| | - | Sep-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 116.01 | - |
| | - | Oct-13 | 20.00 | - | 20.00 | 9.65 | 193.00 | 114.37 | - |
| | - | Nov-13 | 25.00 | - | 25.00 | 9.65 | 241.25 | 140.98 | - |
| | - | Dec-13 | 19.00 | - | 19.00 | 9.65 | 183.35 | 105.59 | - |
| | - | Jan-14 | 24.00 | - | 24.00 | 9.65 | 231.60 | 131.41 | - |
| | - | Feb-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 108.03 | - |
| | - | Mar-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 106.39 | - |
| | - | Apr-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 104.80 | - |
| | - | May-14 | 26.00 | - | 26.00 | 9.65 | 250.90 | 134.11 | - |
| | - | Jun-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 101.58 | - |
| | - | Jul-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 99.94 | - |
| | - | Aug-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 122.87 | - |
| | - | Sep-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 96.71 | - |
| | - | Oct-14 | 25.00 | - | 25.00 | 9.65 | 241.25 | 118.84 | - |

EXHIBIT 2 to COMPLAINT - 87
2:20-cv-02082

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.

Employer #901900

July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Vongphachanh, K. (cont.) | 1 | Nov-14 | 20.00 | - | 20.00 | 9.65 | $ 193.00 | $ 93.49 | $ - |
| | 1 | Dec-14 | 20.00 | - | 20.00 | 9.65 | 193.00 | 91.85 | - |
| | 1 | Jan-15 | 26.00 | - | 26.00 | 9.65 | 250.90 | 117.27 | - |
| | 1 | Feb-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 88.73 | - |
| | 1 | Mar-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 87.09 | - |
| | 1 | Apr-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 85.50 | - |
| | 1 | May-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 104.83 | - |
| | 1 | Jun-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 82.28 | - |
| | 1 | Jul-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 100.80 | - |
| | 1 | Aug-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 79.00 | - |
| | 1 | Sep-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 77.41 | - |
| | 1 | Oct-15 | 25.00 | - | 25.00 | 9.65 | 241.25 | 94.72 | - |
| | 1 | Nov-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 74.19 | - |
| | 1 | Dec-15 | 20.00 | - | 20.00 | 9.65 | 193.00 | 72.55 | - |
| | 1 | Jan-16 | 27.00 | - | 27.00 | 9.65 | 260.55 | 95.73 | - |
| | 1 | Feb-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 69.37 | - |
| | 1 | Mar-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 67.74 | - |
| | 1 | Apr-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 82.69 | - |
| | 1 | May-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 64.51 | - |
| | 1 | Jun-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 62.92 | - |
| | 1 | Jul-16 | 25.00 | - | 25.00 | 9.65 | 241.25 | 76.61 | - |
| | 1 | Aug-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 59.64 | - |
| | 1 | Sep-16 | 24.00 | - | 24.00 | 9.65 | 231.60 | 69.67 | - |
| | 1 | Oct-16 | 20.00 | - | 20.00 | 9.65 | 193.00 | 56.42 | - |
| | 1 | Nov-16 | 22.00 | - | 22.00 | 9.65 | 212.30 | 60.32 | - |
| | 1 | Dec-16 | 26.00 | - | 26.00 | 9.65 | 250.90 | 69.15 | - |
| | 1 | Jan-17 | 22.00 | - | 22.00 | 9.65 | 212.30 | 56.71 | - |
| | 1 | Feb-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 50.07 | - |
| | 1 | Mar-17 | 25.00 | - | 25.00 | 9.65 | 241.25 | 60.54 | - |
| | 1 | Apr-17 | 20.00 | - | 20.00 | 9.65 | 193.00 | 46.85 | - |
| | 1 | Sep-17 | 22.00 | - | 22.00 | 9.65 | 212.30 | 42.63 | - |
| | 1 | Oct-17 | 24.00 | - | 24.00 | 9.65 | 231.60 | 44.54 | - |
| | 2 | Dec-17 | 16.00 | 21.00 | (5.00) | 9.65 | - | - | 48.25 |
| | 1 | Feb-18 | 17.00 | - | 17.00 | 9.65 | 164.05 | 26.16 | - |
| | 1 | Mar-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 36.42 | - |
| | 1 | Apr-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 27.55 | - |
| | 1 | May-18 | 21.00 | - | 21.00 | 9.65 | 202.65 | 27.21 | - |
| | 1 | Jun-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 30.40 | - |
| | 1 | Jul-18 | 21.00 | - | 21.00 | 9.65 | 202.65 | 23.82 | - |
| | 1 | Aug-18 | 25.00 | - | 25.00 | 9.65 | 241.25 | 26.31 | - |
| | 1 | Sep-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 19.46 | - |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 2 to COMPLAINT - 88
2:20-cv-02082

# GCIU - Employer Retirement Fund

Eagle Graphics, Inc.

Employer #901900

July 1, 2011 through May 31, 2019

## Summary of Discrepancies

| Employee Social Security Number | Discrepancy Type | Work Month | Shifts Reportable | Shifts Reported | Difference | Rate | Principal Due | Interest | Improper Payment |
|---|---|---|---|---|---|---|---|---|---|
| Vongphachanh, K. (cont.) | 1 | Oct-18 | 21.00 | - | 21.00 | 9.65 | $ 202.65 | $ 18.71 | $ - |
| | 1 | Nov-18 | 27.00 | - | 27.00 | 9.65 | 260.55 | 21.91 | - |
| | 1 | Dec-18 | 20.00 | - | 20.00 | 9.65 | 193.00 | 14.59 | - |
| | 1 | Jan-19 | 22.00 | - | 22.00 | 9.65 | 212.30 | 14.25 | - |
| | 1 | Feb-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 11.47 | - |
| | 1 | Mar-19 | 25.00 | - | 25.00 | 9.65 | 241.25 | 12.29 | - |
| | 1 | Apr-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 8.25 | - |
| | 1 | May-19 | 20.00 | - | 20.00 | 9.65 | 193.00 | 6.61 | - |
| | | | 1,939.00 | 21.00 | 1,918.00 | | 18,556.95 | 8,217.28 | 48.25 |
| | | Total | | | | | $ 977,561.50 | $ - | $ 1,572.95 |

EXHIBIT 2 to COMPLAINT - 89
2:20-cv-02082

# EXHIBIT 3

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 90
2:20-cv-02082

90/9

RECEIVED AUG - 1 2011

page 5

# AGREEMENT

# BETWEEN

# EAGLE GRAPHICS

# AND

# Graphic Communications Conference of the International Brotherhood of Teamsters Local 503M,

## May 1, 2009

## TO

## April 30, 2012

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 91
2:20-cv-02082

## TABLE OF CONTENTS

Section 1.  Jurisdiction and Union Security............................................ 2

Section 2.  Termination.................................................................2

Section 3.  Grievances and Arbitration..............................................3

Section 4.  Hours of Work.............................................................3

Section 5.  Overtime.....................................................................4

Section 6.  Holidays....................................................................5

Section 7.  Employer Retirement Fund................................................5

Section 8.  Health Insurance...........................................................6

Section 9.  Discipline and Work Force...............................................6

Section 10. Sanitary Regulations....................................................7

Section 11. Military Service...........................................................7

Section 12. Vacations..................................................................7

Section 13. Struck Work...............................................................8

Section 14. Conflicting Law...........................................................8

Section 15. No Strike Lock-out........................................................8

Section 16. Complete Agreement......................................................9

Section 17. Wages-Night...............................................................9

Section 18. Apprentices................................................................9

Section 19. Bereavement Pay..........................................................10

Section 20. Jury Duty..................................................................10

Section 21. New Equipment............................................................10

WageSheet.............................................................................11

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 92
2:20-cv-02082

This agreement is entered into this 10th day of December 2009, between Eagle Graphics of Rochester, New York hereinafter called the Employer, the party of the first part, and Graphic Communications Conference of the International Brotherhood of Teamsters Local 503M, hereinafter called the Union, party of the second part, for the period May 1, 2009 through April 30, 2012.

Section 1.  JURISDICTION AND UNION SECURITY

It is understood that this contract applies to the union pressroom operated by the Employer, and that the jurisdiction of this contract extends over all printing presses employed, in said pressroom, including, but not limited to gravure, offset and letter press printing presses and associated devices (all work in connection with offset and dyecril platemaking, including camera operation, all processing of film, stripping, layout, opaquing and platemaking.) It shall be a condition of employment that all employees of the employer covered by this contract who are members of the Union in good standing on the effective or execution date of this agreement, whichever is later, shall remain members in good standing during the life of this contract.

Those employees who are not members of the Union in good standing on the effective or execution date of this contract, whichever is later, shall on or before the thirty-first day following the effective or execution date of this contact, whichever is later, become and remain members in good standing in the union for the life of this agreement.  It shall also be a condition of employment that new employees covered by this agreement and hired after its execution or effective date, whichever is later, shall on or before the thirty-first day following the beginning of employment become and remain members in good standing in the Union for the life of this contract.

Section 2.  TERMINATION

If either party to this contract desires to amend any or all of its provisions to take effect at its expiration, notice in writing must be given to the party at least sixty (60) days prior to the expiration date of the desire to amend; such notice shall open this contract to both parties and shall be followed with an exchange of proposals at least forty-five (45) days prior to its expiration.  Negotiations shall be entered into immediately thereafter and shall proceed with all due diligence.  Pending consummation of the terms of a new contract shall remain in effect.  If notice is not given as above at lease sixty (60) days prior to May 1, 2012, this contract shall run from year to year and can only be changed by written notice by one of the parties prior to May 1 of any succeeding year.  If agreement by conciliation proves impossible, differences shall be arbitrated as elsewhere provided.

2

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 93
2:20-cv-02082

Section 3.  GRIEVANCES AND ARBITRATION

A standing committee comprised of three representing the party of the first part and a like committee of three representing the party of the second part shall be appointed; the committee representing the party of the second part shall be selected by the union.  In case of vacancy, absence or refusal of any such representatives to act, another shall be appointed in his place.  To this committee shall be referred all disputes which may arise as to the scale of prices hereto attached, the construction to be placed upon any clause of the agreement, including disputes regarding discharged members or alleged violation thereof, which cannot be settled otherwise, and such joint committee shall meet within five days after any dispute shall have referred to it for decision by the executive officers of either party to this agreement.  Should the joint committee be unable to agree by majority vote within ten days after first meeting, then it shall refer the matter to a Board of Arbitration, the representatives of each party to this agreement to select three arbiters, and the six to agree on the seventh member of the board.  If the seventh member of the Board is not agreed upon within five (5) days, wither party hereto may make application to the Supreme Court of Monroe county of the State of New York or American Arbitration Association on five (5) days notice to the other party for the appointment of said court of a seventh member of the Arbitration Board.  The decision of this Board shall be final and binding upon both parties when signed by four members of the Board; provided that local union laws, not affecting wages, hours or working conditions, and the General Laws of the Graphic Communications International Union signatory hereto shall not be subjected to arbitration.

Pending a final settlement on discharge cases, a discharged member may be barred from the pressroom by the foreman.  If reinstated by the Joint Standing Committee or the Arbitration Board, compensation for lost time may be determined by the joint board or the arbiter.  The parties to this contract expect the arbitrator to render a decision within ten (10) day if possible. In order for an employee to obtain compensation for lost time if reinstated, the party of the second part or their representatives shall give notice to the party of the first part in writing within 48 hours that he considers his discharge unfair or discriminatory and demands a hearing before the Joint Standing Committee; provided, in no case shall reimbursement be in a sum greater than the working time actually lost multiplied by straight time rates therefore as provided in the contract. Expenses of arbitration shall be borne by parties involved in the dispute.

Section 4:  HOURS OF WORK

Employees ordered to report for work, or beginning work, shall receive pay for shift, except when discharged for cause or when excused at the employee's own request. This clause shall not apply when fire, flood, explosion, earthquake, main power failure or other emergencies beyond the control of the employer make it impractical to start or continue work on any day in any department.

3

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 94
2:20-cv-02082

(a) The standard work week for lithographic employees shall consist of five days of eight (8) hours each, and shall begin on the first shift reporting Monday morning.

(b) Employees performing operations classified as offset will have a standard work week of five days of eight (8) hours each.

(c) The standard days work for lithographic employees shall consist of eight (8) consecutive hours, exclusive of lunch between 7 a.m. and 6 p.m. or eight (8) hours for offset employees as provided in (b).

(d) The standard night's work shall consist of eight (8) hours, exclusive of lunch, between 3 p.m and 7 a.m. for letterpress employees; or eight (8) hours of offset employees as provided in (b).

(e) A lunch period of a least thirty (30) minutes and not more than one hour shall be allowed for each shift, such time not to be included in the number of hours specified for a day or night's work.

(f) Nothing in this section shall be considered a guarantee of minimum or maximum hours of work per week.

(g) Vacancies which occur in any operation which is operated on a shift basis shall be filled by employees in accordance with their seniority ratings as follows: Should a vacancy occur on the day shift, the worker on the night shift having the highest seniority, who desires to make the transfer, shall be assigned to the job, provided such worker is competent to perform the duties of the vacant situation. Competency shall be determined by management, but should the worker or the union feel the decision is unfair, the matter shall be referred to the Joint Committee for settlement under the procedures set forth in Section 3 of this contract.

Each employee desiring to be transferred from the night shift to the day shift shall notify his foreman of such desire, and the foreman shall keep a list of the employees desiring to make such a transfer. After the transfer has been offered to all on the list vacancies may be filled from any source. The provisions of this section shall not apply to temporary employment or transfers made necessary by the absence of regular employees of the day shift.

Section 5. OVERTIME

In computing overtime, the tenth of the hour shall be the unit. Employees who have competed their regular shift and left the premises and who are called back shall be guaranteed a minimum of two (2) hours work at the applicable rate. For all hours of work beyond 40 hours shall be paid at time and one-half, Monday through Friday. Work performed on Saturday or Sunday shall be paid at time and one-half. An employee called upon to perform work in advance of his regular working hours shall be paid one and one-half (1 1/2) times his straight time rate for such work and such premium rates shall also be paid for any work performed during the regular lunch period of any employee except in extenuating circumstances.

4

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 95
2:20-cv-02082

Section 6.  HOLIDAYS

The following holidays shall be compensated for at the straight time rate of pay, although not worked: Christmas, New Year's eve, New Year's Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving, day after Thanksgiving; provided however that only employees who work the entire regularly scheduled work day immediately preceding and immediately following the holiday shall receive such holiday compensation, unless absent due to a legitimate illness, accident, leave of absence, or layoff, which commenced not more than five working days before the holiday.

In the event that any employee is called upon to perform work on any such holiday, he shall receive in addition to such compensation, his time and one-half rate of pay for such hours. No work shall be performed on the day before Christmas and each shift shall receive a full day's pay at regular shift rate.  In the event of production emergency that necessitates working that day, another day shall be taken as time off and paid for by the employer at regular shift rate not earlier than ten days before or ten days after December 24th.

Section 7.  EMPLOYER RETIREMENT FUND

The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Trust Agreement and Retirement Benefit Plan, dated October 1, 1955, as amended, establishing the GCIU Employer Retirement Fund, the same as though they were signatory parties thereto.

The Employer shall contribute monthly upon ratification to the GCIU Retirement Fund the sum of eight dollars and sixty five cents ($8.65) per straight time shift's pay earned for each employee covered by this contract.  (As of  1/1/07 $9.15; as of 1/1/08 $9.65).  Said contributions shall be made in the manner prescribed by the Retirement Fund.

The Company and the Union shall meet and review the recent changes to the GCIU Retirement Fund and review the options concerning the Fund. The Company and the Union shall meet and negotiate any changes by March 30, 2010.

5

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 96
2:20-cv-02082

Section 8.  HEALTH INSURANCE

The employer agrees to install group health insurance for all employees covered by this agreement in accordance with and subject to the following:

    (a)  The insurance shall be MVP EPO 41
    (b)  The employer shall pay 100% of a single, two person, family no spouse or family plan, whichever plan the employee desires.
    (c)  Dental insurance to be paid by bargaining unit member.
    (d)  The Company shall pay 100% of a single plan for any employee hired after 6/1/06. After 12 months of employment the company shall pay 100% of a single, two person, family no spouse or family plan, whichever plan the employee desires.
    (e)  The current health care shall remain the same. Should the Company wish to change the plan or provider, the Company must ask and get the approval from the Union before doing so.

Section 9.  DISCIPLINE AND WORK FORCE

The foreman has the right to employ help and may discharge (1) for incompetence, (2) for neglect of duty, (3) for violation of office rules which shall be kept conspicuously posted and which shall in no way abridge the civil rights of employees or their rights under accepted International Union Laws, and (4) to decrease the force, such decrease to be accomplished by discharging first the person or persons on the job where the decrease is to take effect last employed either as a regular employee or as an extra employee, as the exigencies of the matter may require, and (5) for other just cause.  Should there be an increase in the force, only persons previously displaced to decrease the force shall be reinstated in reverse order in which they were discharged to their former jobs before other help may be employed, provided such recall or reinstatement occurs within six (6) months of the date they were displaced.  Upon written demand, the Foreman shall give the reasons for discharge in writing within five (5) regularly scheduled work days.  Persons considered capable as substitutes by the Foreman shall be deemed competent to fill regular situations, and the substitute oldest in continuous service shall have prior right in the filling of the first vacancy in a job which he is capable of performing.

When it becomes necessary to decrease or increase the force, it shall be determined upon what class of work the reduction or increase is required.  The employee with lowest priority standing in the office engaged upon the class of work indicated shall be discharge may claim any other work in the office he is competent to do which is being performed by an employee with lower priority standing; provided an employee claiming other work may be discharged if incompetent on the work which he claims.

6

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 97
2:20-cv-02082

Section 10.  SANITARY REGULATIONS

The party of the first part agrees to furnish a clean, healthful sufficiently ventilated, properly heated and lighted place for the performance of work in all departments and all machines or apparatus operated herein or in the rooms adjacent thereto from which dust gases, or other impurities are produced or generated, shall be equipped in such a manner as to protect the health of employees in accordance with laws of the State of New York.

Section 11.  MILITARY SERVICE

In cases where regular employees enlist for active service in the regular army or navy in time of war, or enlist for active service in the army or navy of any country that may be allied with the United States in a war for a common cause or members of the National Guard or Canadian militia who may be ordered to war, or those who may actively engage in war, work for the American Red Cross or any recognized organization of similar character, their situations shall be restored to them.  These provisions shall also apply to any employees drafted for training under the provisions of the Selective Service Act of 1948, as amended.

Section 12.  VACATIONS

Extra employees shall be paid 1/20th of a shift in addition to a shift's pay for each shift worked.

Regular employees with less than one year of continuous employment shall be granted one day vacation for every 20 shifts worked, but no more than 10 days vacation.

Employees shall be granted vacations with pay in accordance with the following schedule:
    Regular employees with one year and up to and including six years' continuous employment with the company shall be given two weeks vacation.
    Regular employees with more than six years continuous service with the company shall be given 18 days vacation.
    Effective November 1, 1969, regular employees with more than 20 years of continuous service with the company shall be given four (4) weeks vacation.
    Employees entitled to three or four weeks vacations hereunder may have the third and or fourth week of such vacation assigned by the Employer at such time as the Employer determines will not unduly interfere with production and said third and/or fourth week of vacation need not be consecutive with the first two weeks of vacation; and further in the event that production requirements necessitate, the Employer may give vacation pay in lieu of time off for such third an/or fourth week of vacation. The fourth week of vacation may be taken in days at the discretion of the Employer.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 98
2:20-cv-02082

Full equity in earned vacation credits is the property of the employee and shall be paid to him or her immediately in case of termination of employment or in case of death to his or her estate. Vacation is to be computed on the basis of the 12 month period preceding April 1st of each year. Vacation pay shall be computed as follows:

    (a) Employees who have worked on both the day and night shifts during the calendar year prior to the time of vacation shall be paid at the shift rate at which they were paid during the major portion of said calendar year prior to the time of vacation.

    (b) An employee whose regular rate of pay has changed during the calendar year prior to the time of vacation shall receive vacation pay at the rate in effect during the major portion of the calendar year prior to the vacation.

Section 13.  STRUCK WORK

in so far as possible under applicable provisions of law, the Employer agrees that it will not require the employees to work on any work not then in process received from an employer whose employees are represented by the Union if the said employees of such employer are on strike, provided that no employee covered by this agreement shall refuse to execute such struck work until after 24 hours notice has been given to the Employer by the Union that such struck work was received from an employer whose employees represented by the Union, are on strike.

Section 14.  CONFLICTING LAW

In the event that any provisions of this agreement shall conflict with any federal or state law now existing, or hereafter enacted, or any final decision thereunder, or if any provisions of the previous contract, excluded from this contract solely because of the restrictions of the law, is determined either by legislative enactment or by decision of the court of highest recourse to be legal or permissible then the parties shall immediately enter into discussions with a view to the elimination, restoration or modification of such provision.

Section 15.  NO STRIKE-LOCKOUT

During the life of this agreement, or any extensions or renewal thereof, the Union and its members shall be entitled to protection against lockouts or any other concerted action to discriminate against members of the union an the employers shall be protected against walk-outs, strikes boycotts or any action by members of the union which shall tend to delay production, and against any other form of concerted interference by members of the union with the normal and regular operation of any of the employers departments of labor.

Section 16.  COMPLETE AGREEMENT

This agreement covers all matters in respect to rates of pay, hours of employment, or other conditions of employment concerning which collective bargaining is desired, and the Union hereby waives for the term of this agreement any collective bargaining in respect to matters not covered by this agreement.

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 99
2:20-cv-02082

Section 17. WAGES NIGHT

The following minimum wages and complement of men shall be observed. All journeymen shall receive $13.00 per week over day rate for the night shift and all journeymen working the lobster or third shift shall receive $18.00 a week over the day rates.

Section 18. APPRENTICES

It is agreed that the apprentice rules and regulations as registered and approved by the GCC/IBT shall be part of the contract.

    a.   That the registered offset apprentices take the complete courses offered by the GCC/IBT.

    b.   In addition, the apprentice may at the option of the employer take additional instructions at a local trade school approved by the GCC/IBT. The tuition of such additional training shall be borne by the employer. The employer shall request the apprentice to take such additional training as approved the Board of Director of Local 503-M.

The scale for apprentice strippers, cameramen and platemakers shall be as follows:

    First six months 60% of journeyman's scale
    Second six months 70% of journeyman's scale
    Third six months 75% of journeyman's scale
    Fourth six months 80% of journeyman's scale
    Fifth six months 85% of journeyman's scale
    Sixth six months 90% of journeyman's scale
    Seventh six months 95% of journeyman's scale
    Thereafter, full scale.

It is agreed that the Apprentice Rules and Regulations as registered and approved by the New York State Apprenticeship Council shall become a part of this contract.

In offices employing five (5) journeymen or major fraction thereof, 1 apprentice pressmen and for each additional five (5) journeymen, or major fraction thereof, 1 additional apprentice may be employed. In offices employing five (5) regular assistants or major fraction thereof, one additional apprentice may be employed.

9

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 100
2:20-cv-02082

The scale for apprentice cylinder or offset assistants shall be as follows:

> First six months 60% of press. assts' scale
> Second six months 65% of press. assts' scale
> Third six months 70% of press. assts' scale
> Fourth six months 80% of press. assts' scale
> Fifth six months 90% of press. assts' scale
> Thereafter, full scale.

All apprentice pressmen shall be given an opportunity to learn all phases of the trade and at completion of apprenticeship must pass examination by Apprentice Committee before being advanced to journeymen pressman.

In the event of the installation of new equipment not covered by this agreement, the complement of men required or other conditions shall be settled by mutual agreement before operation, In case of failure to agree, such questions shall be settled by reference to the Joint Standing Committee of the employer and the union.

Section 19.  BEREAVEMENT PAY

An employee shall be granted a maximum of three (3) day's bereavement leave without loss of regular pay on the occasion of the death of his mother, father, brother, sister, spouse, child, mother-in-law, Father-in-law, or any relative who resides with the employee provided the employee actually attends the funeral.

The leave will commence with the day of death or the day immediately following.

Section 20.  JURY DUTY

An employee required to be absent from work to serve on a jury shall receive the difference between his jury pay and his daily base rate for each day of jury service provided, however, that on the first regular working day after he has received notice to appear for jury duty he has shown said notice to his employer and given his employer an opportunity to present to the judge evidence of any existing production emergence to the end that jury duty might be postponed to a more convenient time.  The employer agrees to pay said difference up to ten regular working days.  If employee is excused from jury duty by noon on any day on which he serves, he will return to work for the remainder of the day shift or forfeit for that day the pay difference provided herein.

Section 21. NEW EQUIPMENT

Should the Company install new equipment that changes the production process, current employees shall be trained on, and run, that new equipment.

10

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 101
2:20-cv-02082

## WAGE RATES

|                      | 11/30/2009 | 5/1/10 | 5/1/11 |
| -------------------- | ---------- | ------ | ------ |
| 1st Pressman         | 21.02      | 21.65  | 22.29  |
| Electronic Pre-Press | 21.02      | 21.65  | 22.29  |
| Platemakers          | 21.02      | 21.65  | 22.29  |
| Strippers            | 21.02      | 21.65  | 22.29  |
| Black & White Camera | 21.02      | 21.65  | 22.29  |
| Color Cameraman      | 21.02      | 21.65  | 22.29  |
| Electronic desktop   | 21.02      | 21.65  | 22.29  |
| Bindery              | 21.02      | 21.65  | 22.29  |

## GENERAL WORKER

|            |       |       |       |
| ---------- | ----- | ----- | ----- |
| Start      | 9.55  | 9.83  | 10.12 |
| 3 months   | 9.99  | 10.30 | 10.61 |
| 6 months   | 10.42 | 10.73 | 11.05 |
| 1 year     | 10.85 | 11.17 | 11.50 |
| 1 ½ years  | 11.29 | 11.62 | 11.96 |
| 2 years    | 11.74 | 12.09 | 12.45 |

11

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 102
2:20-cv-02082

DURATION OF CONTRACT

This contract shall be effective on the 1st day of May 1, 2009 and shall terminate on the 30th day of April 2012.

IN WITNESS WHEREOF we have affixed our hands this _____ day
Of _____, 2010.

Company EAGLE GRAPHICS _____

By _____

APPROVED BY: Graphic Communications Conference of the International Brotherhood of Teamsters Local 503-M,

CONFERENCE  PRESIDENT

_____

LOCAL PRESIDENT _____

LOCAL TREASURER _____

Date _____

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 103
2:20-cv-02082

# AGREEMENT

# BETWEEN

# EAGLE GRAPHICS

# AND

# Graphic Communications Conference of the International Brotherhood of Teamsters Local 503M,

# May 1, 2012

# TO

# December 31, 2013

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 104
2:20-cv-02082

TABLE OF CONTENTS

Section 1.  Jurisdiction and Union Security.................................... 2

Section 2.  Termination.................................................................2

Section 3.  Grievances and Arbitration.......................................3

Section 4.  Hours of Work..........................................................3

Section 5.  Overtime....................................................................4

Section 6.  Holidays.....................................................................5

Section 7.  Employer Retirement Fund.......................................5

Section 8.  Health Insurance........................................................6

Section 9.  Discipline and Work Force.......................................6

Section 10. Sanitary Regulations................................................ 7

Section 11. Military Service.........................................................7

Section 12. Vacations...................................................................7

Section 13. Struck Work..............................................................8

Section 14. Conflicting Law........................................................8

Section 15. No Strike Lock-out....................................................8

Section 16. Complete Agreement.................................................9

Section 17. Wages-Night..............................................................9

Section 18. Apprentices................................................................9

Section 19. Bereavement Pay......................................................10

Section 20. Jury Duty..................................................................10

Section 21. New Equipment........................................................10

WageSheet...................................................................................11

This agreement is entered into this 1st day of May 2013, between Eagle Graphics of Rochester, New York hereinafter called the Employer, the party of the first part, and Graphic Communications Conference of the International Brotherhood of Teamsters Local 503M, hereinafter called the Union, party of the second part, for the period May 1, 2012 through December 31, 2013

## Section 1. JURISDICTION AND UNION SECURITY

It is understood that this contract applies to the union pressroom operated by the Employer, and that the jurisdiction of this contract extends over all printing presses employed, in said pressroom, including, but not limited to gravure, offset and letter press printing presses and associated devices (all work in connection with offset and dyecril platemaking, including camera operation, all processing of film, stripping, layout, opaquing and platemaking.) It shall be a condition of employment that all employees of the employer covered by this contract who are members of the Union in good standing on the effective or execution date of this agreement, whichever is later, shall remain members in good standing during the life of this contract.

Those employees who are not members of the Union in good standing on the effective or execution date of this contract, whichever is later, shall on or before the thirty-first day following the effective or execution date of this contact, whichever is later, become and remain members in good standing in the union for the life of this agreement. It shall also be a condition of employment that new employees covered by this agreement and hired after its execution or effective date, whichever is later, shall on or before the thirty-first day following the beginning of employment become and remain members in good standing in the Union for the life of this contract.

## Section 2. TERMINATION

If either party to this contract desires to amend any or all of its provisions to take effect at its expiration, notice in writing must be given to the party at least sixty (60) days prior to the expiration date of the desire to amend; such notice shall open this contract to both parties and shall be followed with an exchange of proposals at least forty-five (45) days prior to its expiration. Negotiations shall be entered into immediately thereafter and shall proceed with all due diligence. Pending consummation of the terms of a new contract shall remain in effect. If notice is not given as above at lease sixty (60) days prior to May 1, 2012, this contract shall run from year to year and can only be changed by written notice by one of the parties prior to May 1 of any succeeding year. If agreement by conciliation proves impossible, differences shall be arbitrated as elsewhere provided.

2

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 106
2:20-cv-02082

Section 3. GRIEVANCES AND ARBITRATION

A standing committee comprised of three representing the party of the first part and a like committee of three representing the party of the second part shall be appointed; the committee representing the party of the second part shall be selected by the union.  In case of vacancy, absence or refusal of any such representatives to act, another shall be appointed in his place.  To this committee shall be referred all disputes which may arise as to the scale of prices hereto attached, the construction to be placed upon any clause of the agreement, including disputes regarding discharged members or alleged violation thereof, which cannot be settled otherwise, and such joint committee shall meet within five days after any dispute shall have referred to it for decision by the executive officers of either party to this agreement.  Should the joint committee be unable to agree by majority vote within ten days after first meeting, then it shall refer the matter to a Board of Arbitration, the representatives of each party to this agreement to select three arbiters, and the six to agree on the seventh member of the board.  If the seventh member of the Board is not agreed upon within five (5) days, wither party hereto may make application to the Supreme Court of Monroe county of the State of New York or American Arbitration Association on five (5) days notice to the other party for the appointment of said court of a seventh member of the Arbitration Board.  The decision of this Board shall be final and binding upon both parties when signed by four members of the Board; provided that local union laws, not affecting wages, hours or working conditions and the General Laws of the Graphic Communications International Union signatory hereto shall not be subjected to arbitration.

Pending a final settlement on discharge cases, a discharged member may be barred from the pressroom by the foreman.  If reinstated by the Joint Standing Committee or the Arbitration Board, compensation for lost time may be determined by the joint board or the arbiter.  The parties to this contract expect the arbitrator to render a decision within ten (10) day if possible. In order for an employee to obtain compensation for lost time if reinstated, the party of the second part or their representatives shall give notice to the party of the first part in writing within 48 hours that he considers his discharge unfair or discriminatory and demands a hearing before the Joint Standing Committee; provided, in no case shall reimbursement be in a sum greater than the working time actually lost multiplied by straight time rates therefore as provided in the contract. Expenses of arbitration shall be borne by parties involved in the dispute.

Section 4: HOURS OF WORK

Employees ordered to report for work, or beginning work, shall receive pay for shift, except when discharged for cause or when excused at the employee's own request. This clause shall not apply when fire, flood, explosion, earthquake, main power failure or other emergencies beyond the control of the employer make it impractical to start or continue work on any day in any department.

3

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 107
2:20-cv-02082

(a) The standard work week for lithographic employees shall consist of five days of eight (8) hours each, and shall begin on the first shift reporting Monday morning.

(b) Employees performing operations classified as offset will have a standard work week of five days of eight (8) hours each.

(c) The standard days work for lithographic employees shall consist of eight (8) consecutive hours, exclusive of lunch between 7 a.m. and 6 p.m. or eight (8) hours for offset employees as provided in (b).

(d) The standard night's work shall consist of eight (8) hours, exclusive of lunch, between 3 p.m and 7 a.m. for letterpress employees; or eight (8) hours of offset employees as provided in (b).

(e) A lunch period of a least thirty (30) minutes and not more than one hour shall be allowed for each shift, such time not to be included in the number of hours specified for a day or night's work.

(f) Nothing in this section shall be considered a guarantee of minimum or maximum hours of work per week.

(g) Vacancies which occur in any operation which is operated on a shift basis shall be filled by employees in accordance with their seniority ratings as follows: Should a vacancy occur on the day shift, the worker on the night shift having the highest seniority, who desires to make the transfer, shall be assigned to the job, provided such worker is competent to perform the duties of the vacant situation. Competency shall be determined by management, but should the worker or the union feel the decision is unfair, the matter shall be referred to the Joint Committee for settlement under the procedures set forth in Section 3 of this contract.

Each employee desiring to be transferred from the night shift to the day shift shall notify his foreman of such desire, and the foreman shall keep a list of the employees desiring to make such a transfer. After the transfer has been offered to all on the list vacancies may be filled from any source. The provisions of this section shall not apply to temporary employment or transfers made necessary by the absence of regular employees of the day shift.

Section 5. OVERTIME

In computing overtime, the tenth of the hour shall be the unit. Employees who have competed their regular shift and left the premises and who are called back shall be guaranteed a minimum of two (2) hours work at the applicable rate. For all hours of work beyond 40 hours shall be paid at time and one-half, Monday through Friday. Work performed on Saturday or Sunday shall be paid at time and one-half. An employee called upon to perform work in advance of his regular working hours shall be paid one and one-half (1 1/2) times his straight time rate for such work and such premium rates shall also be paid for any work performed during the regular lunch period of any employee except in extenuating circumstances.

4

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 108
2:20-cv-02082

Section 6.  HOLIDAYS

The following holidays shall be compensated for at the straight time rate of pay, although not worked: Christmas, New Year's eve, New Year's Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving, day after Thanksgiving; provided however that only employees who work the entire regularly scheduled work day immediately preceding and immediately following the holiday shall receive such holiday compensation, unless absent due to a legitimate illness, accident, leave of absence, or layoff, which commenced not more than five working days before the holiday.

In the event that any employee is called upon to perform work on any such holiday, he shall receive in addition to such compensation, his time and one-half rate of pay for such hours. No work shall be performed on the day before Christmas and each shift shall receive a full day's pay at regular shift rate.  In the event of production emergency that necessitates working that day, another day shall be taken as time off and paid for by the employer at regular shift rate not earlier than ten days before or ten days after December 24th.

Section 7.  EMPLOYER RETIREMENT FUND

The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Trust Agreement and Retirement Benefit Plan, dated October 1, 1955, as amended, establishing the GCIU Employer Retirement Fund, the same as though they were signatory parties thereto.

The Employer shall contribute monthly upon ratification to the GCIU Retirement Fund the sum of eight dollars and sixty five cents ($8.65) per straight time shift's pay earned for each employee covered by this contract. (As of 1/1/07 $9.15; as of 1/1/08 $9.65).  Said contributions shall be made in the manner prescribed by the Retirement Fund.

The Company and the Union shall meet and review the recent changes to the GCIU Retirement Fund and review the options concerning the Fund. The Company and the Union shall meet and negotiate any changes by March 30, 2010.

5

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 109
2:20-cv-02082

## Section 8.  HEALTH INSURANCE

The employer agrees to install group health insurance for all employees covered by this agreement in accordance with and subject to the following:

(a) The insurance plan shall be Simply Blue 2600
(b) The employer shall pay 100% of the premium for a single, two person, family no spouse or family plan, whichever plan the employee needs.
(c) The employer shall establish an HRA that will pay 100% of all co-pays, prescriptions and/or deductibles.
(d) Dental insurance to be paid by bargaining unit member.
(e) The Company shall pay 100% of the premium for a single plan for any bargaining unit employee hired after 1/1/13. After 12 months of employment the company shall pay 100% of a single, two person, family no spouse or family plan, whichever plan the employee needs.
(f) The current health care shall remain the same. Should the Company wish to change the plan or provider, the Company must ask and get the approval from the Union before doing so.

## Section 9.  DISCIPLINE AND WORK FORCE

The foreman has the right to employ help and may discharge (1) for incompetence, (2) for neglect of duty, (3) for violation of office rules which shall be kept conspicuously posted and which shall in no way abridge the civil rights of employees or their rights under accepted International Union Laws, and (4) to decrease the force, such decrease to be accomplished by discharging first the person or persons on the job where the decrease is to take effect last employed either as a regular employee or as an extra employee, as the exigencies of the matter may require, and (5) for other just cause.  Should there be an increase in the force, only persons previously displaced to decrease the force shall be reinstated in reverse order in which they were discharged to their former jobs before other help may be employed, provided such recall or reinstatement occurs within six (6) months of the date they were displaced.  Upon written demand, the Foreman shall give the reasons for discharge in writing within five (5) regularly scheduled work days.  Persons considered capable as substitutes by the Foreman shall be deemed competent to fill regular situations, and the substitute oldest in continuous service shall have prior right in the filling of the first vacancy in a job which he is capable of performing.

When it becomes necessary to decrease or increase the force, it shall be determined upon what class of work the reduction or increase is required.  The employee with lowest priority standing in the office engaged upon the class of work indicated shall be discharge may claim any other work in the office he is competent to do which is being performed by an employee with lower priority standing; provided an employee claiming other work may be discharged if incompetent on the work which he claims.

6

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 110
2:20-cv-02082

## Section 10.  SANITARY REGULATIONS

The party of the first part agrees to furnish a clean, healthful sufficiently ventilated, properly heated and lighted place for the performance of work in all departments and all machines or apparatus operated herein or in the rooms adjacent thereto from which dust gases, or other impurities are produced or generated, shall be equipped in such a manner as to protect the health of employees in accordance with laws of the State of New York.

## Section 11.  MILITARY SERVICE

In cases where regular employees enlist for active service in the regular army or navy in time of war, or enlist for active service in the army or navy of any country that may be allied with the United States in a war for a common cause or members of the National Guard or Canadian militia who may be ordered to war, or those who may actively engage in war, work for the American Red Cross or any recognized organization of similar character, their situations shall be restored to them.  These provisions shall also apply to any employees drafted for training under the provisions of the Selective Service Act of 1948, as amended.

## Section 12.  VACATIONS

Extra employees shall be paid 1/20th of a shift in addition to a shift's pay for each shift worked.

Regular employees with less than one year of continuous employment shall be granted one day vacation for every 20 shifts worked, but no more than 10 days vacation.

Employees shall be granted vacations with pay in accordance with the following schedule:
Regular employees with one year and up to and including six years' continuous employment with the company shall be given two weeks vacation.
Regular employees with more than six years continuous service with the company shall be given 18 days vacation.
Effective November 1, 1969, regular employees with more than 20 years of continuous service with the company shall be given four (4) weeks vacation.
Employees entitled to three or four weeks vacations hereunder may have the third and or fourth week of such vacation assigned by the Employer at such time as the Employer determines will not unduly interfere with production and said third and/or fourth week of vacation need not be consecutive with the first two weeks of vacation; and further in the event that production requirements necessitate, the Employer may give vacation pay in lieu of time off for such third an/or fourth week of vacation. The fourth week of vacation may be taken in days at the discretion of the Employer.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 111
2:20-cv-02082

Full equity in earned vacation credits is the property of the employee and shall be paid to him or her immediately in case of termination of employment or in case of death to his or her estate. Vacation is to be computed on the basis of the 12 month period preceding April 1st of each year. Vacation pay shall be computed as follows:

(a) Employees who have worked on both the day and night shifts during the calendar year prior to the time of vacation shall be paid at the shift rate at which they were paid during the major portion of said calendar year prior to the time of vacation.

(b) An employee whose regular rate of pay has changed during the calendar year prior to the time of vacation shall receive vacation pay at the rate in effect during the major portion of the calendar year prior to the vacation.

## Section 13. STRUCK WORK

in so far as possible under applicable provisions of law, the Employer agrees that it will not require the employees to work on any work not then in process received from an employer whose employees are represented by the Union if the said employees of such employer are on strike, provided that no employee covered by this agreement shall refuse to execute such struck work until after 24 hours notice has been given to the Employer by the Union that such struck work was received from an employer whose employees represented by the Union, are on strike.

## Section 14. CONFLICTING LAW

In the event that any provisions of this agreement shall conflict with any federal or state law now existing, or hereafter enacted, or any final decision thereunder, or if any provisions of the previous contract, excluded from this contract solely because of the restrictions of the law, is determined either by legislative enactment or by decision of the court of highest recourse to be legal or permissible then the parties shall immediately enter into discussions with a view to the elimination, restoration or modification of such provision.

## Section 15. NO STRIKE-LOCKOUT

During the life of this agreement, or any extensions or renewal thereof, the Union and its members shall be entitled to protection against lockouts or any other concerted action to discriminate against members of the union an the employers shall be protected against walk-outs, strikes boycotts or any action by members of the union which shall tend to delay production, and against any other form of concerted interference by members of the union with the normal and regular operation of any of the employers departments of labor.

## Section 16. COMPLETE AGREEMENT

This agreement covers all matters in respect to rates of pay, hours of employment, or other conditions of employment concerning which collective bargaining is desired, and the Union hereby waives for the term of this agreement any collective bargaining in respect to matters not covered by this agreement.

8

GCIU-Employer Retirement Fund, et al. v. Eagle Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 112
2:20-cv-02082

## Section 17.  WAGES NIGHT

The following minimum wages and complement of men shall be observed.  All journeymen shall receive $13.00 per week over day rate for the night shift and all journeymen working the lobster or third shift shall receive $18.00 a week over the day rates.

## Section 18.  APPRENTICES

It is agreed that the apprentice rules and regulations as registered and approved by the GCC/IBT shall be part of the contract.

  a.  That the registered offset apprentices take the complete courses offered by the GCC/IBT.
  b.  In addition, the apprentice may at the option of the employer take additional instructions at a local trade school approved by the GCC/IBT.  The tuition of such additional training shall be borne by the employer.  The employer shall request the apprentice to take such additional training as approved the Board of Director of Local 503-M.

The scale for apprentice strippers, cameramen and platemakers shall be as follows:

First six months 60% of journeyman's scale
Second six months 70% of journeyman's scale
Third six months 75% of journeyman's scale
Fourth six months 80% of journeyman's scale
Fifth six months 85% of journeyman's scale
Sixth six months 90% of journeyman's scale
Seventh six months 95% of journeyman's scale
Thereafter, full scale.

It is agreed that the Apprentice Rules and Regulations as registered and approved by the New York State Apprenticeship Council shall become a part of this contract.

In offices employing five (5) journeymen or major fraction thereof, 1 apprentice pressmen and for each additional five (5) journeymen, or major fraction thereof, 1 additional apprentice may be employed.  In offices employing five (5) regular assistants or major fraction thereof, one additional apprentice may be employed.

9

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 113
2:20-cv-02082

The scale for apprentice cylinder or offset assistants shall be as follows:

First six months 60% of press. assts' scale
Second six months 65% of press. assts' scale
Third six months 70% of press. assts' scale
Fourth six months 80% of press. assts' scale
Fifth six months 90% of press. assts' scale
Thereafter, full scale.

All apprentice pressmen shall be given an opportunity to learn all phases of the trade and at completion of apprenticeship must pass examination by Apprentice Committee before being advanced to journeymen pressman.

In the event of the installation of new equipment not covered by this agreement, the complement of men required or other conditions shall be settled by mutual agreement before operation, In case of failure to agree, such questions shall be settled by reference to the Joint Standing Committee of the employer and the union.

Section 19.  BEREAVEMENT PAY

An employee shall be granted a maximum of three (3) day's bereavement leave without loss of regular pay on the occasion of the death of his mother, father, brother, sister, spouse, child, mother-in-law, Father-in-law, or any relative who resides with the employee provided the employee actually attends the funeral.

The leave will commence with the day of death or the day immediately following.

Section 20.  JURY DUTY

An employee required to be absent from work to serve on a jury shall receive the difference between his jury pay and his daily base rate for each day of jury service provided, however, that on the first regular working day after he has received notice to appear for jury duty he has shown said notice to his employer and given his employer an opportunity to present to the judge evidence of any existing production emergence to the end that jury duty might be postponed to a more convenient time.  The employer agrees to pay said difference up to ten regular working days.  If employee is excused from jury duty by noon on any day on which he serves, he will return to work for the remainder of the day shift or forfeit for that day the pay difference provided herein.

Section 21. NEW EQUIPMENT

Should the Company install new equipment that changes the production process, current employees shall be trained on, and run, that new equipment.

10

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 114
2:20-cv-02082

WAGE RATES

**5/1/12**

| | |
|---|---|
| Pressman | 22.74 |
| Electronic Pre-Press | 22.74 |
| Bindery | 22.74 |

GENERAL WORKER

| | |
|---|---|
| Start | 10.32 |
| 3 months | 10.82 |
| 6 months | 11.27 |
| 1 year | 11.73 |
| 1 ½ years | 12.20 |
| 2 years | 12.70 |

Employees earning over scale shall remain making that over scale rate for the life of this contract.

11

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 115
2:20-cv-02082

## DURATION OF CONTRACT

.This contract shall be effective on the 1st day of May 1, 2012 and shall terminate on the 31st day of December 2013.

IN WITNESS WHEREOF we have affixed our hands this __day of_____, 2013.


By_____

Company EAGLE GRAPHICS


LOCAL PRESIDENT_____

LOCAL TREASURER_____

Date_____

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 116
2:20-cv-02082

JUL-29-2016 01:15P FROM:GCC/IE    LOCAL503M    1-585-424-3677    15624635993    P.2/15

RECEIVED JUL 29 2016

9019
page 5

# AGREEMENT

# BETWEEN

## EAGLE GRAPHICS

## AND

## Graphic Communications Conference of the International Brotherhood of Teamsters Local 503M,

## January 1, 2014

## TO

## December 31, 2018

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 117
2:20-cv-02082

## TABLE OF CONTENTS

Section 1.  Jurisdiction and Union Security.................................................... 2

Section 2.  Termination.........................................................................2

Section 3.  Grievances and Arbitration.........................................................3

Section 4.  Hours of Work......................................................................3

Section 5.  Overtime...........................................................................4

Section 6.  Holidays...........................................................................5

Section 7.  Employer Retirement Fund...........................................................5

Section 8.  Health Insurance...................................................................6

Section 9.  Discipline and Work Force..........................................................6

Section 10. Sanitary Regulations...............................................................7

Section 11. Military Service...................................................................7

Section 12. Vacations..........................................................................7

Section 13. Struck Work........................................................................8

Section 14. Conflicting Law....................................................................8

Section 15. No Strike Lock-out.................................................................8

Section 16. Complete Agreement.................................................................9

Section 17. Wages-Night........................................................................9

Section 18. Apprentices........................................................................9

Section 19. Bereavement Pay...................................................................10

Section 20. Jury Duty.........................................................................10

Section 21. New Equipment.....................................................................10

WageSheet.....................................................................................11

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 118
2:20-cv-02082

This agreement is entered into this 26th day of February 2016, between Eagle Graphics of Rochester, New York hereinafter called the Employer, the party of the first part, and Graphic Communications Conference of the International Brotherhood of Teamsters Local 503M, hereinafter called the Union, party of the second part, for the period January 1, 2014 through December 31, 2018

## Section 1. JURISDICTION AND UNION SECURITY

It is understood that this contract applies to the union pressroom operated by the Employer, and that the jurisdiction of this contract extends over all printing presses employed, in said pressroom, including, but not limited to gravure, offset and letter press printing presses and associated devices (all work in connection with offset and dyecril platemaking, including camera operation, all processing of film, stripping, layout, opaquing and platemaking.) It shall be a condition of employment that all employees of the employer covered by this contract who are members of the Union in good standing on the effective or execution date of this agreement, whichever is later, shall remain members in good standing during the life of this contract.

Those employees who are not members of the Union in good standing on the effective or execution date of this contract, whichever is later, shall on or before the thirty-first day following the effective or execution date of this contact, whichever is later, become and remain members in good standing in the union for the life of this agreement. It shall also be a condition of employment that new employees covered by this agreement and hired after its execution or effective date, whichever is later, shall on or before the thirty-first day following the beginning of employment become and remain members in good standing in the Union for the life of this contract.

## Section 2. TERMINATION

If either party to this contract desires to amend any or all of its provisions to take effect at its expiration, notice in writing must be given to the party at least sixty (60) days prior to the expiration date of the desire to amend; such notice shall open this contract to both parties and shall be followed with an exchange of proposals at least forty-five (45) days prior to its expiration. Negotiations shall be entered into immediately thereafter and shall proceed with all due diligence. Pending consummation of the terms of a new contract shall remain in effect. If notice is not given as above at lease sixty (60) days prior to December 31, 2018 this contract shall run from year to year and can only be changed by written notice by one of the parties prior to May 1 of any succeeding year. If agreement by conciliation proves impossible, differences shall be arbitrated as elsewhere provided.

2

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 119
2:20-cv-02082

Section 3. GRIEVANCES AND ARBITRATION

A standing committee comprised of three representing the party of the first part and a like committee of three representing the party of the second part shall be appointed; the committee representing the party of the second part shall be selected by the union. In case of vacancy, absence or refusal of any such representatives to act, another shall be appointed in his place. To this committee shall be referred all disputes which may arise as to the scale of prices hereto attached, the construction to be placed upon any clause of the agreement, including disputes regarding discharged members or alleged violation thereof, which cannot be settled otherwise, and such joint committee shall meet within five days after any dispute shall have referred to it for decision by the executive officers of either party to this agreement. Should the joint committee be unable to agree by majority vote within ten days after first meeting, then it shall refer the matter to a Board of Arbitration, the representatives of each party to this agreement to select three arbiters, and the six to agree on the seventh member of the board. If the seventh member of the Board is not agreed upon within five (5) days, wither party hereto may make application to the Supreme Court of Monroe county of the State of New York or American Arbitration Association on five (5) days notice to the other party for the appointment of said court of a seventh member of the Arbitration Board. The decision of this Board shall be final and binding upon both parties when signed by four members of the Board; provided that local union laws, not affecting wages, hours or working conditions and the General Laws of the Graphic Communications International Union signatory hereto shall not be subjected to arbitration.

Pending a final settlement on discharge cases, a discharged member may be barred from the pressroom by the foreman. If reinstated by the Joint Standing Committee or the Arbitration Board, compensation for lost time may be determined by the joint board or the arbiter. The parties to this contract expect the arbitrator to render a decision within ten (10) day if possible. In order for an employee to obtain compensation for lost time if reinstated, the party of the second part or their representatives shall give notice to the party of the first part in writing within 48 hours that he considers his discharge unfair or discriminatory and demands a hearing before the Joint Standing Committee; provided, in no case shall reimbursement be in a sum greater than the working time actually lost multiplied by straight time rates therefore as provided in the contract. Expenses of arbitration shall be borne by parties involved in the dispute.

Section 4: HOURS OF WORK

Employees ordered to report for work, or beginning work, shall receive pay for shift, except when discharged for cause or when excused at the employee's own request. This clause shall not apply when fire, flood, explosion, earthquake, main power failure or other emergencies beyond the control of the employer make it impractical to start or continue work on any day in any department.

3

JUL-29-2016 01:17P FROM:GCC/IL  _OCAL503M   1-585-424-3677         15624635993       P.6/15

(a) The standard work week for lithographic employees shall consist of five days of eight (8) hours each, and shall begin on the first shift reporting Monday morning.

(b) Employees performing operations classified as offset will have a standard work week of five days of eight (8) hours each.

(c) The standard days work for lithographic employees shall consist of eight (8) consecutive hours, exclusive of lunch between 7 a.m. and 6 p.m. or eight (8) hours for offset employees as provided in (b).

(d) The standard night's work shall consist of eight (8) hours, exclusive of lunch, between 3 p.m and 7 a.m. for letterpress employees; or eight (8) hours of offset employees as provided in (b).

(e) A lunch period of a least thirty (30) minutes and not more than one hour shall be allowed for each shift, such time not to be included in the number of hours specified for a day or night's work.

(f) Nothing in this section shall be considered a guarantee of minimum or maximum hours of work per week.

(g) Vacancies which occur in any operation which is operated on a shift basis shall be filled by employees in accordance with their seniority ratings as follows: Should a vacancy occur on the day shift, the worker on the night shift having the highest seniority, who desires to make the transfer, shall be assigned to the job, provided such worker is competent to perform the duties of the vacant situation. Competency shall be determined by management, but should the worker or the union feel the decision is unfair, the matter shall be referred to the Joint Committee for settlement under the procedures set forth in Section 3 of this contract.

Each employee desiring to be transferred from the night shift to the day shift shall notify his foreman of such desire, and the foreman shall keep a list of the employees desiring to make such a transfer. After the transfer has been offered to all on the list vacancies may be filled from any source. The provisions of this section shall not apply to temporary employment or transfers made necessary by the absence of regular employees of the day shift.

## Section 5. OVERTIME

In computing overtime, the tenth of the hour shall be the unit. Employees who have competed their regular shift and left the premises and who are called back shall be guaranteed a minimum of two (2) hours work at the applicable rate. For all hours of work beyond 40 hours shall be paid at time and one-half, Monday through Friday. Work performed on Saturday or Sunday shall be paid at time and one-half. An employee called upon to perform work in advance of his regular working hours shall be paid one and one-half (1 1/2) times his straight time rate for such work and such premium rates shall also be paid for any work performed during the regular lunch period of any employee except in extenuating circumstances.

4

JUL-29-2016 01:18P FROM:GCC/I   _OCAL503M   1-585-424-3677   15624635993   P.7/15

## Section 6.  HOLIDAYS

The following holidays shall be compensated for at 8 hours of an employees the straight time rate of pay, although not worked:

New Year's Eve, New Year's, Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving, day after Thanksgiving, Christmas Eve and Christmas Day.

When the holiday falls on a Saturday the preceding Friday shall be given in substitute for the holiday. When the holiday falls on a Sunday the following Monday shall be given in substitute for the holiday.

The employee must work the entire regularly scheduled work day immediately preceding and immediately following the holiday to receive such holiday compensation, unless absent due to a legitimate illness, accident, leave of absence, vacation, or layoff, which commenced not more than five working days before the holiday.

In the event that any employee is called upon to perform work on any such holiday, he shall receive in addition to such compensation, his time and one-half rate of pay for such hours.

## Section 7.  EMPLOYER RETIREMENT FUND

The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Trust Agreement and Retirement Benefit Plan, dated October 1, 1955, as amended, establishing the GCIU Employer Retirement Fund, the same as though they were signatory parties thereto.

The Employer shall contribute monthly upon ratification to the GCIU Retirement Fund the sum of eight dollars and sixty five cents ($8.65) per straight time shift's pay earned for each employee covered by this contract.  (As of 1/1/07 $9.15; as of 1/1/08 $9.65).  Said contributions shall be made in the manner prescribed by the Retirement Fund.

5

Section 8. HEALTH INSURANCE

The employer agrees to install group health insurance for all employees covered by this agreement in accordance with and subject to the following:

(a) The insurance plan effective 1/1/2016 shall be Simply Blue Silver 1.
(b) The employer shall pay 100% of the premium for a single, two person, family no spouse or family plan, whichever plan the employee needs.
(c) The employer shall establish an HRA that will pay 100% of all co-pays, prescriptions and/or deductibles.
(d) Dental insurance to be paid by bargaining unit member.
(e) The Company shall pay 100% of the premium for a single plan for any bargaining unit employee hired after 1/1/13. After 12 months of employment the company shall pay 100% of a single, two person, family no spouse or family plan, whichever plan the employee needs.
(f) The current health care shall remain the same. Should the Company wish to change the plan or provider, the Company must ask and get the approval from the Union before doing so.
(g) Should premiums increase by more than 10% over the 2016 rates for the year 2017 the company may request an open to discuss health insurance plans and benefits modifications. Should premiums increase by more than 10% over the 2017 rates for the year 2018 the company may request an open to discuss health insurance plans and benefits modifications. Request must be made in writing by December 1 2016 for the 2017 year and December 1 2017 for the 2018 year. Changes must be ratified by a majority of bargaining unit employees.

Section 9. DISCIPLINE AND WORK FORCE

The foreman has the right to employ help and may discharge (1) for incompetence, (2) for neglect of duty, (3) for violation of office rules which shall be kept conspicuously posted and which shall in no way abridge the civil rights of employees or their rights under accepted International Union Laws, and (4) to decrease the force, such decrease to be accomplished by discharging first the person or persons on the job where the decrease is to take effect last employed either as a regular employee or as an extra employee, as the exigencies of the matter may require, and (5) for other just cause. Should there be an increase in the force, only persons previously displaced to decrease the force shall be reinstated in reverse order in which they were discharged to their former jobs before other help may be employed, provided such recall or reinstatement occurs within six (6) months of the date they were displaced. Upon written demand, the Foreman shall give the reasons for discharge in writing within five (5) regularly scheduled work days. Persons considered capable as substitutes by the Foreman shall be deemed competent to fill regular situations, and the substitute oldest in continuous service shall have prior right in the filling of the first vacancy in a job which he is capable of performing.

When it becomes necessary to decrease or increase the force, it shall be determined upon what class of work the reduction or increase is required. The employee with lowest priority standing in the office engaged upon the class of work indicated shall be discharge may claim any other work in the office he is competent to do which is being performed by an employee with lower priority standing; provided an employee claiming other work may be discharged if incompetent on the work which he claims.

## Section 10. SANITARY REGULATIONS

The party of the first part agrees to furnish a clean, healthful sufficiently ventilated, properly heated and lighted place for the performance of work in all departments and all machines or apparatus operated herein or in the rooms adjacent thereto from which dust gases, or other impurities are produced or generated, shall be equipped in such a manner as to protect the health of employees in accordance with laws of the State of New York.

## Section 11. MILITARY SERVICE

In cases where regular employees enlist for active service in the regular army or navy in time of war, or enlist for active service in the army or navy of any country that may be allied with the United States in a war for a common cause or members of the National Guard or Canadian militia who may be ordered to war, or those who may actively engage in war, work for the American Red Cross or any recognized organization of similar character, their situations shall be restored to them. These provisions shall also apply to any employees drafted for training under the provisions of the Selective Service Act of 1948, as amended.

## Section 12. VACATIONS

Extra employees shall be paid 1/20th of a shift in addition to a shift's pay for each shift worked.

Regular employees with less than one year of continuous employment shall be granted one day vacation for every 20 shifts worked, but no more than 10 days vacation.

Employees shall be granted vacations with pay in accordance with the following schedule:
    Regular employees with one year and up to and including six years' continuous employment with the company shall be given two weeks vacation.
    Regular employees with more than six years continuous service with the company shall be given 18 days vacation.
    Effective November 1, 1969, regular employees with more than 20 years of continuous service with the company shall be given four (4) weeks vacation.
    Employees entitled to three or four weeks vacations hereunder may have the third and or fourth week of such vacation assigned by the Employer at such time as the Employer determines will not unduly interfere with production and said third and/or fourth week of vacation need not be consecutive with the first two weeks of vacation; and further in the event that production requirements necessitate, the Employer may give vacation pay in lieu of time off for such third

7

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 124
2:20-cv-02082

JUL-29-2016 01:20P FROM:GCC'1    LOCAL503M    1-585-424-3677    .15624635993    P.10/15

an/or fourth week of vacation. The fourth week of vacation may be taken in days at the discretion of the Employer.

Full equity in earned vacation credits is the property of the employee and shall be paid to him or her immediately in case of termination of employment or in case of death to his or her estate. Vacation is to be computed on the basis of the 12 month period preceding April 1st of each year. Vacation pay shall be computed as follows:

> (a) Employees who have worked on both the day and night shifts during the calendar year prior to the time of vacation shall be paid at the shift rate at which they were paid during the major portion of said calendar year prior to the time of vacation.
>
> (b) An employee whose regular rate of pay has changed during the calendar year prior to the time of vacation shall receive vacation pay at the rate in effect during the major portion of the calendar year prior to the vacation.

## Section 13. STRUCK WORK

in so far as possible under applicable provisions of law, the Employer agrees that it will not require the employees to work on any work not then in process received from an employer whose employees are represented by the Union if the said employees of such employer are on strike, provided that no employee covered by this agreement shall refuse to execute such struck work until after 24 hours notice has been given to the Employer by the Union that such struck work was received from an employer whose employees represented by the Union, are on strike.

## Section 14. CONFLICTING LAW

In the event that any provisions of this agreement shall conflict with any federal or state law now existing, or hereafter enacted, or any final decision thereunder, or if any provisions of the previous contract, excluded from this contract solely because of the restrictions of the law, is determined either by legislative enactment or by decision of the court of highest recourse to be legal or permissible then the parties shall immediately enter into discussions with a view to the elimination, restoration or modification of such provision.

## Section 15. NO STRIKE-LOCKOUT

During the life of this agreement, or any extensions or renewal thereof, the Union and its members shall be entitled to protection against lockouts or any other concerted action to discriminate against members of the union an the employers shall be protected against walk-outs, strikes boycotts or any action by members of the union which shall tend to delay production, and against any other form of concerted interference by members of the union with the normal and regular operation of any of the employers departments of labor.

8

JUL-29-2016 01:20P FROM:GCC/1.   LOCAL503M   1-585-424-3677   .⌐:15624635993   P.11/15

Section 16.  COMPLETE AGREEMENT

This agreement covers all matters in respect to rates of pay, hours of employment, or other conditions of employment concerning which collective bargaining is desired, and the Union hereby waives for the term of this agreement any collective bargaining in respect to matters not covered by this agreement.

Section 17.  WAGES  NIGHT

The following minimum wages and complement of men shall be observed.  All journeymen shall receive $13.00 per week over day rate for the night shift and all journeymen working the lobster or third shift shall receive $18.00 a week over the day rates.

Section 18.  APPRENTICES

It is agreed that the apprentice rules and regulations as registered and approved by the GCC/IBT shall be part of the contract.

    a.  That the registered offset apprentices take the complete courses offered by the GCC/IBT.

    b.  In addition, the apprentice may at the option of the employer take additional instructions at a local trade school approved by the GCC/IBT.  The tuition of such additional training shall be borne by the employer.  The employer shall request the apprentice to take such additional training as approved the Board of Director of Local 503-M.

The scale for apprentice strippers, cameramen and platemakers shall be as follows:

        First six months 60% of journeyman's scale
        Second six months 70% of journeyman's scale
        Third six months 75% of journeyman's scale
        Fourth six months 80% of journeyman's scale
        Fifth six months 85% of journeyman's scale
        Sixth six months 90% of journeyman's scale
        Seventh six months 95% of journeyman's scale
        Thereafter, full scale.

It is agreed that the Apprentice Rules and Regulations as registered and approved by the New York State Apprenticeship Council shall become a part of this contract.

In offices employing five (5) journeymen or major fraction thereof, 1 apprentice pressmen and for each additional five (5) journeymen, or major fraction thereof, 1 additional apprentice may be employed.  In offices employing five (5) regular assistants or major fraction thereof, one additional apprentice may be employed.

9

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 126
2:20-cv-02082

JUL-29-2016 01:21P FROM:GCC/I   LOCAL503M   1-585-424-3677        15624635993      P.12/15

The scale for apprentice cylinder or offset assistants shall be as follows:

> First six months 60% of press. assts' scale
> Second six months 65% of press. assts' scale
> Third six months 70% of press. assts' scale
> Fourth six months 80% of press. assts' scale
> Fifth six months 90% of press. assts' scale
> Thereafter, full scale.

All apprentice pressmen shall be given an opportunity to learn all phases of the trade and at completion of apprenticeship must pass examination by Apprentice Committee before being advanced to journeymen pressman.

In the event of the installation of new equipment not covered by this agreement, the complement of men required or other conditions shall be settled by mutual agreement before operation, In case of failure to agree, such questions shall be settled by reference to the Joint Standing Committee of the employer and the union.

## Section 19.  BEREAVEMENT PAY

An employee shall be granted a maximum of three (3) day's bereavement leave without loss of regular pay on the occasion of the death of his mother, father, brother, sister, spouse, child, mother-in-law, Father-in-law, or any relative who resides with the employee provided the employee actually attends the funeral.

The leave will commence with the day of death or the day immediately following.

## Section 20.  JURY DUTY

An employee required to be absent from work to serve on a jury shall receive the difference between his jury pay and his daily base rate for each day of jury service provided, however, that on the first regular working day after he has received notice to appear for jury duty he has shown said notice to his employer and given his employer an opportunity to present to the judge evidence of any existing production emergence to the end that jury duty might be postponed to a more convenient time.  The employer agrees to pay said difference up to ten regular working days.  If employee is excused from jury duty by noon on any day on which he serves, he will return to work for the remainder of the day shift or forfeit for that day the pay difference provided herein.

## Section 21. NEW EQUIPMENT

Should the Company install new equipment that changes the production process, current employees shall be trained on, and run, that new equipment.

10

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 127
2:20-cv-02082

JUL-29-2016 01:22P FROM:GCC'1.   LOCAL503M   1-585-424-3677        :15624635993        P.13/15

# WAGE RATES

Rate Increase will be as follows:

2/22/16—7%
3/01/17 --- 2%
3/01/18--- 3%

|  | 2/22/16 | 3/1/17 | 3/1/18 |
|---|---|---|---|
| Pressman | 24.33 | 24.82 | 25.56 |
| Electronic Pre-Press | 24.33 | 24.82 | 25.56 |
| Bindery | 24.33 | 24.82 | 25.56 |
| **GENERAL WORKER** | | | |
| Start | 11.04 | 11.26 | 11.60 |
| 3 months | 11.55 | 11.78 | 12.14 |
| 6 months | 12.06 | 12.30 | 12.67 |
| 1 year | 12.56 | 12.82 | 13.21 |
| 1 ½ years | 13.07 | 13.34 | 13.74 |
| 2 years | 13.58 | 13.86 | 14.28 |

Employees earning over scale shall remain making that over scale rate for the life of this contract plus any rate increases.

11

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 128
2:20-cv-02082

## DURATION OF CONTRACT

This contract shall be effective on the 1st day of January, 2014 and shall terminate on the 31st day of December 2018.

IN WITNESS WHEREOF we have affixed our hands this _26th_ day of _FEbiuARY_ , 2016.

By _Michael W Powell_
Company EAGLE GRAPHICS

LOCAL PRESIDENT _Michael Steffens_

LOCAL TREASURER _Thomas M Miller_

Date _2/24/16_

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 129
2:20-cv-02082

JUL-29-2016 01:22P FROM:GCC/1    LOCAL503M    1-585-424-3677    .15624635993    P.15/15

## EAGLE GRAPHICS EMPLOYEES



| NAME | INITIATION DATE |
| --- | --- |
| Gail Mumpton | 6/1/2010 |
| Jason Powell | 10/1/2003 |
| Michael Powell | 7/1/2003 |
| William Reynolds | 1/1/2001 |
| Joe Sarrantonio | 9/1/2011 |
| Khamouane Vongphachanh | 1/1/2001 |

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 3 to COMPLAINT - 130
2:20-cv-02082

# EXHIBIT 4

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 4 to COMPLAINT - 131
2:20-cv-02082

# KRAW LAW GROUP
## A PROFESSIONAL CORPORATION

ESCONDIDO OFFICE
tel 760.747.1100
fax 760.747.1188

VALENTINA S. MINDIRGASOVA
Attorney At Law
vmindirgasova@kraw.com

November 13, 2019

<u>VIA U.S. Mail and E-mail (mike@eaglegraphicsinc.com)</u>

Eagle Graphics
ATTN: Michael Powell
149 Anderson Ave
Rochester, NY 14607

   Re: GCIU-Employer Retirement Fund – Delinquent Contributions

Dear Mr. Powell:

   As you know, this office represents the GCIU–Employer Retirement Fund (the "Fund").

   As you are aware, Eagle Graphics entered into Repayment Plan Agreement ("Agreement") in August 2017 with the Fund. Pursuant to that Agreement, Eagle Graphics was required to comply with the Fund's payroll audit to determine the retroactive contributions that Eagle Graphics would owe going back to July 1, 2011, and to make ongoing contribution payments.

   The Fund's Auditor, Lindquist LLP, has now completed a payroll audit of Eagle Graphics for the period of July 1, 2011 through May 31, 2019. The total amount due for that period was $165,055.88, including interest, plus $6,539.50 in audit costs, for a total of $171,595.38. It is our understanding that the Fund's auditor has already provided you with a copy of the payroll audit report.

   We note that the recent payment of $6,224.26 received for February 2018 through May 2018 contributions was accounted for in the payroll audit report. We also note that pursuant to the above referenced Agreement, on August 30, 2017 Eagle Graphics made a payment to the Fund in the amount of $74,465.15. By crediting that payment to the oldest debt, the remaining total owed by Eagle Graphics is $87,753.00. The calculation that reconciles the credit is enclosed. However, pursuant to Article IX, Section 6 of the Fund's Trust Agreement, liquidated damages of 10% are also due on these delinquent contributions. Accordingly, the total amount due for the audit period is **$99,883.44** ($87,753.00 + 10% of $121,304.37).

   The Fund's Administrative Office has advised us that in addition to the above amount owed, Eagle Graphics owes **contributions for June 2019 through October 2019, plus 10% interest per annum on the delinquent amount, and 10% in liquidated damages on the delinquent amount**.

   The Fund's Board of Trustees has a fiduciary duty to collect all money owed to it.  As such, please provide us with a check payable to the Fund to resolve the delinquencies as set forth above. With respect to June 2019 through October 2019 contributions, please also provide

605 Ellis Street, Suite 200, Mountain View, CA 94043  |  tel 650.314.7800  |  fax 650.314.7899  |  www.kraw.com
Escondido Office  |  1017 East Grand Avenue, Escondido, CA 92025  |  tel  760.747.1100  |  fax 760.747.1188

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 4 TO COMPLAINT - 132
2:20-cv-02082

reporting forms that include both the shifts and hours allocated to each employee being reported. If you do not comply within **two weeks** of this letter, the Fund will pursue legal action against Eagle Graphics to collect the amounts owed.

I solicit your prompt attention to this matter and thank you for your anticipated cooperation. If you have any questions, please contact me directly.

Sincerely,

VALENTINA S. MINDIRGASOVA

Enclosure

cc: Garth Fisher, Fund Administrator

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 4 to COMPLAINT - 133
2:20-cv-02082

## GCIU - EMPLOYER RETIREMENT FUND
### EAGLE GRAPHICS, INC.
### EMPLOYER #901900
### JULY 1, 2011 THROUGH MAY 31, 2019
### [FOR SETTLEMENT PURPOSES]

| YEAR | BASE CONTRIBUTION | | | SURCHARGE OR REHAB | | | | | IMPROPER PAYMENTS | | |
| | PRINCIPAL DUE | INTEREST DUE | SURCHARGE OR REHAB % | AMOUNT DUE | TOTAL DUE | PAYMENT AUGUST 30, 2017 | TOTAL DUE | | BASE | SURCHARGE OR REHAB | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2011 | $ 6,475.15 | $ 3,780.12 | 15% | $ 971.27 | $ 11,226.54 | 11,226.54 | $ - | $ - | $ - | $ - |
| 2012 | 12,458.15 | 6,332.47 | 25% | 3,114.54 | 21,905.16 | 21,905.16 | - | - | - | - |
| 2013 | 14,108.30 | 5,729.32 | 25% | 3,527.08 | 23,364.70 | 23,364.70 | - | - | - | - |
| 2014 | 14,822.40 | 5,416.59 | 25% | 3,705.60 | 23,944.59 | 17,968.75 | 5,975.84 | - | - | - |
| 2015 | 13,345.95 | 5,631.66 | 25% | 3,336.49 | 22,314.10 | - | 22,314.10 | - | - | - |
| 2016 | 13,654.75 | 4,417.75 | 25% | 3,413.69 | 21,486.19 | - | 21,486.19 | - | - | - |
| 2017 | 6,301.45 | 1,481.33 | 25% | 1,575.36 | 9,358.14 | - | 9,358.14 | 1,351.00 | 337.75 | 1,688.75 |
| 2018 | 11,290.50 | 1,324.74 | 25% | 2,822.63 | 15,437.87 | - | 15,437.87 | 221.95 | 55.49 | 277.44 |
| 2019 | 5,104.85 | 260.30 | 25% | 1,276.21 | 6,641.36 | - | 6,641.36 | - | - | - |
| TOTAL | $ 97,561.50 | $ 34,374.28 | | $ 23,742.87 | $ 155,678.65 | $ 74,465.15 | $ 81,213.50 | $ 1,572.95 | $ 393.24 | $ 1,966.19 |

|  |  |
|---|---|
| AUDIT COST [1] | 6,539.50 |
| TOTAL DUE | $ 87,753.00 |

[1] THE ERROR FACTOR DURING THE TESTING PERIOD IS GREATER THAN 5%

PLEASE NOTE ANY IMPROPER PAYMENTS ARE SUBJECT TO PLAN RULES
REGARDING THE PLAN REFUND POLICIES AND PROCEDURES.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 4 to COMPLAINT - 134
2:20-cv-02082

**GCIU - EMPLOYER RETIREMENT FUND**
EAGLE GRAPHICS, INC.
EMPLOYER #901900
JULY 1, 2011 THROUGH MAY 31, 2019
[FOR SETTLEMENT PURPOSES]

| Year | Base Contribution | | | Surcharge or Rehab | | Payment August 30, 2017 | Total Due | Improper Payments | | |
| | Principal Due | Interest Due | Surcharge or Rehab % | Amount Due | Total Due | | | Base | Surcharge or Rehab | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 2011 | $ 6,475.15 | $ 3,780.12 | 15% | $ 971.27 | $ 11,226.54 | $ 11,226.54 | $ - | $ - | $ - | $ - |
| 2012 | 12,458.15 | 6,332.47 | 25% | 3,114.54 | 21,905.16 | 21,905.16 | - | - | - | - |
| 2013 | 14,108.30 | 5,729.32 | 25% | 3,527.08 | 23,364.70 | 23,364.70 | - | - | - | - |
| 2014 | 14,822.40 | 5,416.59 | 25% | 3,705.60 | 23,944.59 | 17,968.75 | 5,975.84 | - | - | - |
| 2015 | 13,345.95 | 5,631.66 | 25% | 3,336.49 | 22,314.10 | - | 22,314.10 | - | - | - |
| 2016 | 13,654.75 | 4,417.75 | 25% | 3,413.69 | 21,486.19 | - | 21,486.19 | - | - | - |
| 2017 | 6,301.45 | 1,481.33 | 25% | 1,575.36 | 9,358.14 | - | 9,358.14 | 1,351.00 | 337.75 | 1,688.75 |
| 2018 | 11,290.50 | 1,324.74 | 25% | 2,822.63 | 15,437.87 | - | 15,437.87 | 221.95 | 55.49 | 277.44 |
| 2019 | 5,104.85 | 260.30 | 25% | 1,276.21 | 6,641.36 | - | 6,641.36 | - | - | - |
| TOTAL | $ 97,561.50 | $ 34,374.28 | | $ 23,742.87 | $ 155,678.65 | $ 74,465.15 | $ 81,213.50 | $ 1,572.95 | $ 393.24 | $ 1,966.19 |

|  |  |
|---|---|
| AUDIT COST [1] | 6,539.50 |
| TOTAL DUE | $ 87,753.00 |

[1] THE ERROR FACTOR DURING THE TESTING PERIOD IS GREATER THAN 5%

PLEASE NOTE ANY IMPROPER PAYMENTS ARE SUBJECT TO PLAN RULES
REGARDING THE PLAN REFUND POLICIES AND PROCEDURES.

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 4 to COMPLAINT - 135
2:20-cv-02082

# EXHIBIT 5

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 5 to COMPLAINT - 136
2:20-cv-02082

**Contribution Increases if Rehabilitation Plan is Adopted on or after January 1, 2011**

If the bargaining parties do not adopt the rehabilitation plan prior to January 1, 2011, the required contribution increases will be determined prior to the year of adoption.  However, the increases will be no less than the required contribution increases if the plan was adopted prior to 2011, plus the following additional temporary contribution amounts.  The additional contributions are intended to offset for the difference between the surcharge contribution and the additional contributions for employers who adopt the rehabilitation plan before 2011.

| Adoption Year | Additional Contribution |
|---|---|
| 2011 | 1% per month of adoption after 2010, payable for a period of 12 months.  For example, adoption effective July 1, 2011 will require an additional contribution of 6% for a period of 12 months. |
| 2012 | 12%, plus 2% per month of adoption after 2011, payable for a period of 12 months.  For example, adoption effective July 1, 2012 will require an additional contribution of 24% for a period of 12 months. |
| 2013+ | 50%, plus 2% per month of adoption after 2012, payable for a period of 12 months.  For example, adoption effective July 1, 2013 will require an additional contribution of 62% for a period of 12 months. |

**Minimum Base Shift Rate**

As noted above, the base contribution cannot be reduced for future bargaining agreements.  In addition, effective for agreements adopted on or after January 1, 2010, the Plan will require a minimum base contribution rate of $2.00 per shift, or its equivalent.  Contribution increases will be calculated using this base rate.

**Minimum Total Annual Contribution by Employer**

For each participating employer, the rehabilitation plan also requires a minimum total annual contribution.  Effective for each calendar year on or after the adoption of the rehabilitation plan by the bargaining parties, the required minimum total annual contribution (including the base contribution and the rehabilitation plan contribution increases) for each employer (determined on a controlled group basis) will be no less than the total annual contribution for that employer from September 1, 2008 through August 31, 2009.  No benefits will accrue for any additional contributions required under this provision.

If an employer is required to make an additional contribution to meet this minimum contribution, it will be eligible for a contribution credit (up to the amount of the additional minimum contribution it made) in any of the three succeeding years following a year in which the minimum was payable, if total contributions exceed the minimum.

> *Example 3*: An employer's total contribution for the period from September 1, 2008 through August 31, 2009 is $50,000, based on 10,000 shifts and a contribution rate of $5.00 per shift.

GCIU-Employer Retirement
Fund, et al. v. Eagle
GCIU-ERF Rehabilitation Plan (Sep-09) - 12
Graphics, Inc.
Doc 1

EXHIBIT 5 to COMPLAINT - 137
2:20-cv-02082

The bargaining parties adopted the rehabilitation plan in 2010.  In 2012, the required contribution is $6.25 per shift, including a base rate of $5.00 and an additional contribution of $1.25, based on the required 25% increase.  The employer reports 7,500 shifts in 2012, with contributions equal to $46,875.   An additional contribution of $3,125 is required for this employer, because $46,875 is $3,125 less than the minimum contribution of $50,000.  This additional contribution will be calculated and communicated following the 2012 year.

In 2013, the same employer contributes $75,000.  Because this total amount is greater than the $50,000 minimum by more than $3,125, the employer will receive a credit of $3,125.  This credit will be determined after the 2013 year.

GCIU-Employer Retirement
Fund_r_tah_c_Eagle
GCIU-ERF Rehabilitation Plan (Sep-09) - 13
Graphics, Inc.
Doc 1

EXHIBIT 5 to COMPLAINT - 138
2:20-cv-02082

Amendment No. 1 to the
Rehabilitation Plan for the
GCIU-Employer Retirement Fund
(Effective November 1, 2009)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at its meeting on May 16, 2012, did adopt the following amendments to its Rehabilitation Plan to correct scrivener's errors and clarify certain provisions of the document. This Amendment is effective November 1, 2009.

1.   On page 12, the section entitled "Contribution Increases if Rehabilitation Plan is Adopted on or after January 1, 2011," the section of the chart showing the additional contributions required for employers who adopt the rehabilitation plan in 2013+ is amended to remove the references to "50%" and "62%" and replace them with "36%" and "48%," respectively.

2.   On page 12, under the section entitled "Minimum Total Annual Contribution by Employer," the second sentence of paragraph 1 is deleted in its entirety and replaced with the following:

"Minimum Total Annual Contribution by Employer

...Effective for each calendar year on or after the adoption of the rehabilitation plan by the bargaining parties, the required minimum total annual contribution (including the base contribution and the rehabilitation plan contribution increases) for each employer (determined on a contract-by-contract basis) will be no less than the total annual contribution for that employer from September 1, 2008 through August 31, 2009."

* * *

3.   On page 12, under the section entitled "Minimum Total Annual Contribution by Employer," the following is added as the fourth and fifth sentences of paragraph 1.

"Minimum Total Annual Contribution by Employer

...Where an employer adopted (or the Fund automatically updated) the rehabilitation plan mid-year, the minimum annual contribution requirement will be calculated on a pro rata basis for that calendar year.  The same is true in

1

GCIU-Employer Retirement
Fund, et al. v. Eagle
Graphics, Inc.

EXHIBIT 5 to COMPLAINT - 139
2:20-cv-02082

situations where an employer ceases making contributions
to the Plan mid-year due to a closure and/or withdrawal."

* * *

Executed this 16th day of May 2012.

_____                    _____
Chairman                                   Secretary

2