Kerry K. Fennelly (SBN 232621)
kfennelly@kraw.com
Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund and
Board of Trustees of the
GCIU-Employer Retirement Fund

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND, <br><br> Plaintiffs, <br> v. <br><br> EAGLE GRAPHICS, INC., a New York corporation, <br><br> Defendant. | CASE NO. 2:20-cv-02082-TJH-PJW <br><br> **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)** <br><br> Hearing Date: June 29, 2020 <br> Hearing Time: UNDER SUBMISSION <br> Judge: Terry J. Hatter, Jr. <br> Place: Courtroom 9B <br><br> [Accompanying Papers: DECLARATIONS OF GARTH FISHER AND DARREL TILLMANNSHOFER IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT PURSUANT TO FRCP 55(B); [PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT PURSUANT TO FRCP 55(B) AND JUDGMENT] |

1

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

TO THE HONORABLE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that on June 29, 2020, this matter will be taken under submission at the above entitled Court located at 350 West 1st Street, Courtroom 9B, Los Angeles, CA 90012-4565, the Plaintiffs in this case will move this Court to grant Entry of Default Judgment.

The Motion is based upon this Notice and Memorandum of Points and Authorities in Support of the Motion For Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) ("Motion"); the Declaration of Darrell Tillmannshofer in Support of Motion For Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) ("Tillmannshofer Decl."); the Declaration of Garth Fisher in Support of Motion For Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) ("Fisher Decl.") and the [Proposed] Order Granting Plaintiffs' Motion for Entry of Default Judgment By Court Pursuant to Federal Rule of Civil Procedure 55(b) and Judgment; as well as any oral and documentary evidence as may be allowed at a hearing on this Motion.

Dated: <u>May 28, 2020</u>          /s/ Valentina S. Mindirgasova
                                                Kerry K. Fennelly
                                                Valentina S. Mindirgasova
                                                Kraw Law Group, APC
                                                1017 East Grand Avenue
                                                Escondido, CA 92025
                                                (760) 747-1100 tel
                                                (760) 747-1188 fax
                                                kfennelly@kraw.com
                                                vmindirgasova@kraw.com

                                                Attorneys for Plaintiffs

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

# TABLE OF CONTENTS

**PAGES**

I.    Introduction ........................................................................................... 3

II.   Jurisdiction and Venue .......................................................................... 3

III.  Facts and Procedural History ................................................................ 4

    A.    Collection of Payroll Audit Liability ........................................... 4

    B.    Collection of Minimum Total Annual Contribution Shortages ................ 6

    C.    Audit of Books and Records ......................................................... 8

IV.   Legal Standard ....................................................................................... 8

V.    Plaintiffs Have Met the Procedural Requirements .............................. 10

VI.   Plaintiffs Have Satisfied the *Eitel* Factors ........................................ 10

    A.    *Denial of Default Judgment Would Prejudice the Plaintiffs* .................. 10

    B.    *Plaintiffs Have Demonstrated the Sufficiency of the Merits of Their*
       *Claims* ...................................................................................... 11

    C.    *The Amount of Money at Stake is Proportional to the Harm Caused by*
       *Defendants' Conduct* ............................................................... 12

    D.    *There is No Factual Dispute That Would Preclude Entry of Default*
       *Judgment* ................................................................................. 13

    E.    *The Possibility of Excusable Neglect is Minimal* ................................ 13

    F.    *The Six Eitel Factors Have Been Met and Are Not in Conflict with the*
       *Policy Favoring Decisions on the Merits* ............................... 14

VII.  Requested Damages ............................................................................. 14

    A.    *Claim for Payroll Audit Liability* .............................................. 15

    B.    *Claim for Minimum Total Annual Contributions Shortages* ................ 15

    C.    *Interest and Liquidated Damages for Payroll Audit Liability and Minimum*
       *Total Annual Contribution Shortages* ...................................... 16

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

D.    *Audit Costs* ........................................................................................ 17

E.    *Order for Production of Defendant's Books and Records* ...................... 17

F.    *Attorney's Fees and Costs* .................................................................... 18

VIII.  Conclusion .............................................................................................. 18

# TABLE OF AUTHORITIES

Cases

*Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986) .................................. 9, 10

*Elektra Entm't Grp. v. Bryant*, No. 03-6381GAF, 2004 U.S. Dist. LEXIS 26700, at *5 (C.D. Cal. Feb. 13, 2004) .................................................................. 14

*Kloepping v. Fireman*, No. C 94-2684 THE, 1996 U.S. Dist. LEXIS 1789, at *2 (N.D. Cal. Feb. 13, 1996) .................................................................. 11

*Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919-923 (2010) .................................................................................... 9, 12, 13, 14

*Operating Eng'rs Pension Trust Fund v. Clarke's Welding, Inc.*, 688 F. Supp. 2d 902, 914 (N.D. Cal. 2010) .................................................................. 14

*Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1174, 1175, 1177 (C.D. Cal. 2002) .................................................................. 8, 9, 10, 11

*Solis v. Vigilance, Inc.,* No 08-05083 JW, 2009 U.S. Dist. Lexis 63541, at *4-6 (N.D. Cal. July 9, 2009) .................................................................. 13

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

**Statutes**

29 U.S.C.

§ 185(a) .................................................................................................. 4

§ 1002(5) ............................................................................................... 4

§ 1085(e)(1) ........................................................................................... 5

§ 1085(e)(3) ........................................................................................... 5

§ 1132(e) ................................................................................................ 3

§ 1132(e)(2) ........................................................................................... 3

§ 1132(f) ................................................................................................ 3

§ 1132(g)(2) .................................................................................. 14, 16

§ 1132(g)(2)(D) ................................................................................... 18

§ 1145 ............................................................................................ 3, 11, 14

§ 1451(c) ................................................................................................ 3

Employee Retirement Income Security Act of 1974

§ 3(5) ...................................................................................................... 4

§ 502(e) .................................................................................................. 3

§ 502(e)(2) ............................................................................................. 3

§ 502(f) .................................................................................................. 3

§ 502(g)(2) .................................................................................... 14, 16

§ 502(g)(2)(D) ..................................................................................... 18

§ 515 ............................................................................................. 3, 11, 14

§ 4301(c) ................................................................................................ 3

§ 4301(d) ............................................................................................... 3

Labor-Management Relations Act

§ 301(a) .................................................................................................. 4

Federal Rules of Civil Procedure

Rule 8(b)(6) ........................................................................................... 9

Rule 12 ................................................................................................. 10

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

Rule 54(c) ................................................................................................... 9, 14

Rule 55 ............................................................................................................. 8

Rule 55(b)(2) ................................................................................................... 3

**Local Rules**

Rule 55-1 .................................................................................................... 8, 10

Rule 55-3 ....................................................................................................... 18

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55(B)**

Plaintiffs, the GCIU-Employer Retirement Fund and the Board of Trustees of the GCIU-Employer Retirement Fund, respectfully move this Court to enter default judgment against Defendant Eagle Graphics, Inc., ("Eagle") under Fed. R. Civ. P. 55(b)(2). Defendant has failed to appear or otherwise defend itself in this matter, and the clerk has noted their default upon the record (Dkt. No. 11). For the reasons set forth below, the Court should enter default judgment against Defendant.

## I.    Introduction

On March 3, 2020, Plaintiffs GCIU-Employer Retirement Fund ("Fund") and the Board of Trustees of the GCIU-Employer Retirement Fund ("Board") filed their Complaint ("Complaint") (Dkt. No.1) against Defendant for collection of unpaid benefit contributions, associated interest and liquidated damages pursuant to section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, audit costs, and the production of books and records for the period of June 1, 2019 through January 21, 2020. The court clerk entered default against Defendant on April 20, 2020 (Dkt. No. 11). Plaintiffs then filed the instant Motion for Entry of Default Judgment ("Motion") against Defendant. This Motion seeks a default judgment awarding damages for unpaid benefit contributions, interest, liquidated damages, attorneys' fees, costs (including audit costs), and an order for Defendant to produce its books and records within 30 days of the entry of judgment.

## II.    Jurisdiction and Venue

This Court has jurisdiction pursuant to ERISA §§ 502(e), 502(f) and 4301(c), 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c). Venue lies in this Court under ERISA §§ 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Plaintiff Fund is administered in Los Angeles County, California.

## III.    Facts and Procedural History

Plaintiff Fund is a multiemployer pension plan and is administered in Pasadena,

California. Plaintiff Board of Trustees, the plan sponsor of the Fund, is comprised of present trustees who are named fiduciaries of the Fund. The Board of Trustees administers the Fund in Pasadena, California. Defendant Eagle Graphics, Inc. is a corporation organized under the laws of the State of New York. At all times relevant to this action, Defendant was an "employer" as the term is defined by section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

As a result of several collective bargaining agreements ("CBAs") with Graphic Communications Conference/ International Brotherhood of Teamsters Local 503-M, Defendant was required to make pension benefit contributions to the Plaintiff Fund on behalf of employees covered under the CBAs. (Complaint ¶ 19; Complaint Exhibit 3).

Pursuant to the CBAs, the Defendant was also bound by the terms and conditions, rules and regulations of the Fund's Trust Agreement ("Trust Agreement"). (Complaint ¶ 20; Complaint Exhibit 1).

### A. Collection of Payroll Audit Liability

Defendant failed to make contributions for the period of July 1, 2011 through April 30, 2017 that it was required to make pursuant to the CBAs and the Trust Agreement. (Fisher Decl., ¶ 12). As a result, on or about August 24, 2017, Plaintiffs and Defendant entered into a Repayment Plan Agreement ("Agreement") for the repayment of the delinquency. (Fisher Decl., ¶ 13). Pursuant to the Agreement, Defendant was obligated to submit to an audit of its books and records to confirm the amounts of contributions that would be owing for the period of July 1, 2011 through April 30, 2017; to commence remitting ongoing benefit contributions beginning with those for May 2017; and to pay an initial installment of $74,465.15 which would be a partial prepayment towards the final total to be determined owing upon completion of the payroll audit covering July 1, 2011 through April 30, 2017. (Fisher Decl., ¶ 14; Exhibit 2 of Fisher Decl.).

During the pendency of the payroll audit, Plaintiffs received Defendant's payment of $74,465.15, and Defendant resumed its contributions beginning with those for May 2017. (Fisher Decl., ¶¶ 15-16). However, the recommencement of contributions was short-lived because Defendant stopped remitting ongoing contributions beginning with those for February 2018, thus breaching the Agreement. (Fisher Decl., ¶ 16). On or about August 13, 2019, Defendant sent a payment to the Plaintiff Fund for February 2018 through May 2018 contributions. However, at that time, Defendant already owed contributions for February 2018 through June 2019, thus the payment did not bring Defendant's delinquencies current. (Fisher Decl., ¶ 17).

After encountering difficulties with Defendant providing the requisite books and records that Plaintiffs' auditor needed to complete the audit, the audit was eventually finalized on or about October 23, 2019. (Tillmannshofer Decl., ¶¶ 2-3). Due to Defendant's delinquency with respect to the ongoing contribution obligations during the pendency of the payroll audit, the audit period was extended through May 31, 2019. (Fisher Decl., ¶18; Tillmannshofer Decl., ¶2). As such, the completed audit covered the period of July 1, 2011 through May 31, 2019 ("audit period").

The auditor's findings showed that Defendant owed $121,304.37 in principal, which included base contributions and contribution increases under the Fund's Rehabilitation Plan[1], $43,751.51 in interest at 10% per annum calculated through October 18, 2019 (when the auditor's report was drafted), and $6,539.50 in audit costs. (Tillmannshofer Decl., ¶¶ 3-5; Exhibit 1 to Tillmannshofer Decl.). The totals accounted for the February 2018 through May 2018 contribution payments made by Defendant during the audit's pendency, but did not reflect Defendant's earlier lump sum payment

---

[1] 29 U.S.C. §1085(e)(1) and (3) generally requires a fund in critical status to adopt a rehabilitation plan containing measurers, including contributions increases, reasonably intended to cause the plan to exit critical status or to forestall insolvency. Article VIII, Section 27 of Plaintiffs' Trust Agreement authorizes the trustees to implement a rehabilitation plan pursuant to ERISA if Plaintiff Fund is in endangered or critical status. Plaintiff Fund entered critical status, and effective November 1, 2009, implemented a rehabilitation plan. Pursuant to that plan, as of January 1, 2012, employers, including Defendant, are to pay a 25% contribution increase.(Fisher Decl., ¶8).

5

of $74,465.15. (Tillmannshofer Decl., ¶¶ 6-7). As such, Plaintiffs applied the $74,465.15 lump sum payment to the oldest findings first, updating the interest due to reflect the receipt of this payment on August 31, 2017, thereby reducing the interest for that portion of the audit findings. As a result, the $74,465.15 payment accounted for the entirety of the July 1, 2011 through December 31, 2013 principal and interest, and partially covered the January 1, 2014 through December 31, 2014 balance. (Fisher Decl. ¶21; Tillmannshofer Decl., ¶¶ 8-9). On November 13, 2019, Plaintiffs, through counsel, informed Defendant of the updated amounts owed. (Fisher Decl., ¶ 22). However, Defendant did not make a payment.

As of May 28, 2020, the date of the filing of this Motion, Plaintiffs are owed $62,681.13 in contributions and contribution increases under the Fund's Rehabilitation Plan; $18,532.37 in interest calculated through October 18, 2019; $3,276.28 in additional interest[2] through May 28, 2020; and $6,539.50 in payroll audit costs, plus an additional $2,092.60 [3] in audit costs incurred to date. (Tillmannshofer Decl., ¶¶ 10-12). Moreover, pursuant to Article IX, Section 7 of Plaintiffs' Trust Agreement, if a judgment is entered against Defendant, liquidated damages of twenty percent (20%) of the amount of contributions are also due. Twenty percent of $62,681.13, is $12,536.23. Accordingly, $105,658.11 is owed as of the filing date of this Motion.

**B. Collection of Minimum Total Annual Contribution Shortages**

In addition to requiring contribution increases, Plaintiff Fund's Rehabilitation Plan obligates each participating employer to pay a minimum total annual contribution amount. Specifically, the Rehabilitation Plan states that,

> "Effective for each calendar year on or after the adoption of the rehabilitation plan by the bargaining parties, the required minimum total annual contribution (including the base

---

[2]Additional interest on the delinquent contributions continues to accrue at ten percent (10%) per annum pursuant to Article IX, Section 6 of Plaintiffs' Trust Agreement, until paid. This amounts to $14.69 per day after May 28, 2020. (Tillmannshofer Decl., ¶10).
[3] Additional auditor costs were incurred by Plaintiffs during collection efforts and this litigation. (Tillmannshofer Decl., ¶12).    6

> contribution and the rehabilitation plan contribution increases) for each employer (determined on a contract-by-contract basis) will be no less than the total annual contributions for the that employer from September 1, 2008 through August 31, 2009."

(Fisher Decl., ¶ 25; Exhibit 1 to Fisher Decl.). Pursuant to Plaintiffs' records, Defendant's contributions payments for September 1, 2008 through August 31, 2009, ("base period"), totaled $17,360.35. (Fisher Decl., ¶ 26). Based on the contributions that were paid by Defendant and those that are still to be paid as outlined in the July 1, 2011 through May 31, 2019 payroll audit, Defendant has not met or will not meet its minimum total annual contribution requirements for the 2011, 2012, 2015, 2016, 2018, and 2019 years. (Fisher Decl., ¶ 27).

For the period of January 1, 2011 through December 31, 2011, Defendant's total annual contributions were $16,746.13. As such, Defendant underpaid its 2011 minimum total annual contribution requirement by $614.22. (Fisher Decl., ¶ 28). For the period of January 1, 2012 through December 31, 2012, Defendant's total annual contributions were $15,572.69. As such, Defendant underpaid its 2012 minimum total annual contributions by $1,787.66. (Fisher Decl., ¶ 29). For the period of January 1, 2015 through December 31, 2015, Defendant's total annual contributions to be paid will be $16,682.44. As such, Defendant's underpayment of its 2015 minimum total annual contributions will be $677.91. (Fisher Decl., ¶ 30). For the period of January 1, 2016 through December 31, 2016, Defendant's total annual contributions to be paid will be $17,068.44. As such, Defendant's underpayment of its 2016 minimum total annual contributions will be $291.91. (Fisher Decl., ¶ 31). For the period of January 1, 2018 through December 31, 2018, Defendant's total annual contributions to be paid will be $15,777.76. As such, Defendant's underpayment of its 2018 minimum total annual contributions will be $1,582.59. (Fisher Decl., ¶ 32). For the period of January 1, 2019 through December 31, 2019, Defendant's total annual contributions to be paid will be $6,381.06. As such, Defendant's underpayment of its 2019 minimum total annual contributions will be $10,979.29. (Fisher Decl., ¶ 33). Plaintiffs notified Defendant of their outstanding underpaid minimum total annual contribution by letter

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

dated January 31, 2020. (Fisher Decl., ¶ 34). However, Defendant has not paid the $15,933.58 in minimum total annual contribution shortages that aredue and owing. (Fisher Decl., ¶ 35).

Accordingly, $15,933.58 remains owing. Interest on the delinquent contributions continues to accrue at ten percent (10%) per annum pursuant to Article IX, Section 6 of Plaintiffs' Trust Agreement, until paid. Moreover, pursuant to Article IX, Section 7 of Plaintiffs' Trust Agreement, if a judgment is entered against Defendant, liquidated damages of twenty percent (20%) of the amount of contributions are also due.

## C. Audit of Books and Records

Defendant had an obligation to make contributions with regard to the hours worked by employees covered by one of its CBAs during the period of June 1, 2019 through January 21, 2020. (Fisher Decl., ¶ 7; Complaint Exhibit 3). The CBA and Article IX, Section 5 of the Trust Agreement obligate Defendant to permit the Plaintiffs, on demand, to check, examine and audit its books and records, including payroll records, relating to hours worked by all employees, including bargaining unit, and non-bargaining unit employees, of Defendant. (Complaint Exhibit 1, pp. 47-48). Thus, Plaintiffs are entitled to an audit covering the period June 1, 2019 through January 21, 2020 to determine whether work covered by the CBA was being performed during this time period for which contributions would be due to Plaintiff Fund. Defendant has not provided Plaintiffs with the requisite books and records for June 1, 2019 through January 21, 2020, and Plaintiffs are asking for an order from the Court requiring Defendant to produce its books and records.

## IV. **Legal Standard**

Before a Court may rule on a Motion for Default Judgment ("Motion"), it first must determine whether the Motion complies with Fed. R. Civ. P.55 and Local Rule 55-1. *See Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The Motion must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3)

8

whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the Motion has been served on the defaulting party, if required. *Id.*; see also *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal.2010) (holding that service on defaulting party is required only if the party has appeared in the action).

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." *Landstar*, 725 F. Supp. 2d at 919. Entry of default does not automatically entitle the non-defaulting party to a court-ordered judgment. *See Pepsico*, 238 F. Supp. 2d at 1174. In fact, default judgments are ordinarily disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Accordingly, the Ninth Circuit has instructed courts to consider the following factors in deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

Upon entry of default, the well-pleaded allegations of the complaint, except those concerning damages, are deemed true. Fed. R. Civ. P.8(b)(6). The court, however, must assure itself that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Landstar*, 725 F. Supp. 2d at 920. Further, the plaintiff must provide evidence of its damages, and the damages sought must not be different in kind or exceed the amount demanded in the pleadings. Fed. R. Civ. Pro. 54(c) ("A judgment by default shall not be different in kind from, or exceeding amount, what is demanded in the pleadings.").

## V. __Plaintiffs Have Met the Procedural Requirements__

Plaintiffs have satisfied the procedural requirements for default judgment under

9

Local Rule 55-1. Specifically, Defendant has not appeared in this action and has not responded to the operative Complaint within the time permitted by Fed. R. Civ. P.12. Moreover, Plaintiffs filed a Request for Entry of Default on the Complaint on April 17, 2020, and Default by Clerk was entered April 20, 2020. Defendant is not a natural person, and therefore is neither an infant nor an incompetent person. In addition, because Defendant is not a natural person, they are not exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. (Fisher Decl., ¶ 5). Plaintiffs have served a copy of this Motion on Defendant in conjunction with the filing of the Motion. However, it should be noted that because Defendant has not appeared in the action, Plaintiffs are not required to serve notice of this Motion.

Therefore, Plaintiffs have met the procedural requirements for default judgment under Local Rule 55-1.

## VI.    **Plaintiffs Have Satisfied the *Eitel* Factors**

As previously discussed, the Ninth Circuit has instructed courts to consider the following when determining whether default judgment should be granted: the possibility of prejudice to the plaintiff; the merits of the plaintiff's substantive claim; sufficiency of the complaint; the sum of money at stake in the action; the possibility of a dispute concerning material facts; whether the default was due to excusable neglect; and the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. Per the discussion below, the Court should find that the *Eitel* factors in this instant matter favor the granting default judgment.

### A. *Denial of Default Judgment Would Prejudice the Plaintiffs*

A denial of default judgment that leaves a plaintiff without other recourse has been found to be prejudicial. *Pepsico, Inc.*, 238 F. Supp.2d at 1177. Denying default judgment would leave Plaintiffs with no other means to recover the damages they sustained by Defendant's failure to remit pension benefit contributions for its employees, and no other means to verify whether Defendant has followed its obligations under the CBA and the Plaintiff Fund's Trust Agreement. Moreover, under

10

Article IX, Section 9 of the Trust Agreement, the Plaintiff Board may have to extend pension credits to Defendant's employees even if Defendant fails to remit the contributions. Thus, Plaintiffs will end up paying to each of Defendant's employees a pension benefit based on pension credits for which contributions were not received from Defendant. This would be financially damaging to the Plaintiff Fund, which is already underfunded, is in critical and declining status as defined under the Multiemployer Pension Reform Act of 2014, and approaching insolvency. (Fisher Decl., ¶¶ 8-9). Additionally, a denial would unfairly burden the Plaintiff Fund's participating members with reductions in benefits upon the Plaintiff Fund's premature insolvency when it must apply to the Pension Benefit Guaranty Corporation for financial assistance. Based on the foregoing, Plaintiffs would suffer prejudice absent the entry of default judgment

### B. *Plaintiffs Have Demonstrated the Sufficiency of the Merits of Their Claims*

The second and third *Eitel* factors are often analyzed together. The Ninth Circuit has "suggested that these two factors require that a plaintiff 'state a claim on which [it] may recover.'" *Pepsico*, 238 F.Supp. 2d at 1175 (quoting *Kloeppingv. Fireman*, No. C 94-2684 THE, 1996 U.S. Dist. LEXIS 1789, at *2 (N.D. Cal. Feb. 13, 1996)).

Section 515 of ERISA, 29 U.S.C. § 1145, provides that every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan in such agreement. Here, Plaintiffs have adequately stated their claims that Defendant had an obligation to pay contributions on behalf of its employees to the Plaintiff Fund under the relevant CBAs, Trust Agreement, and Rehabilitation Plan, and that Defendant did not pay these contributions as evidenced by the payroll audit findings for the period of July 1, 2011 through May 31, 2019, and Plaintiffs'

records with respect to the minimum total annual contribution shortages under their Rehabilitation Plan.

Plaintiffs have also adequately stated their claims that Defendant's failure to remit these contributions resulted in applicable interest, liquidated damages, and audit costs to become due and owing. Specifically, Plaintiffs have submitted copies of the CBAs, Trust Agreement, and Rehabilitation Plan that bound Defendant to make contributions to the Plaintiff Fund and to pay the aforementioned penalties if it failed to do so. (Fisher Decl., ¶¶ 6-7, 24; Exhibit 1 to Fisher Decl.; Complaint ¶¶ 6, 19, 40; Complaint Exhibits 1, 3, and 5).

Additionally, Plaintiffs have adequately stated their claim that Defendant is obligated to produce its books and records covering the period of June 1, 2019 through January 21, 2020. By submitting a copy of Defendant's CBA covering this period, Plaintiffs have demonstrated that Defendant was contractually required to make contributions to the Fund for the June 1, 2019 through January 21, 2020 period. Plaintiffs have also demonstrated their entitlement to the books and records by submitting a copy of the Trust Agreement, which provides that the Board of Trustees "shall have the authority to audit the payroll books and records of a participating employer … as they deem necessary in the administration of the Trust Fund." *See* Exhibit 1 of Complaint, Article IX, Section 5.

Based on the foregoing, Plaintiffs have demonstrated the sufficiency of the merits of their claims and this weighs in favor of default judgment.

### C. *The Amount of Money at Stake is Proportional to the Harm Caused by Defendant's Conduct*

This factor asks "whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar*, 725 F. Supp. 2d at 921 (internal citations omitted). Plaintiffs seek to recover $84,489.78 in payroll audit liability (including interest through May 28, 2020), additional interest through the date of payment, $12,536.23 in liquidated damages, and payroll audit costs of $8,632.10; $18,843.75 in minimum total

12

annual contribution shortages (including interest through May 28, 2020), additional interest through the date of payment, and $3,186.72 in  liquidated damages; and payroll records for June 1, 2019 through January 21, 2020 to ensure that Defendant was complying with its obligations under its most recent CBA and the Fund's Trust Agreement for the benefit of all of the beneficiaries and participants. Plaintiffs have provided detailed accountings by their auditor and the Plaintiff Fund's administrator of the amounts that they are seeking. (Tillmannshofer Decl.,¶¶ 3-5, 8-12; Exhibits 1-3 of Tillmannshofer Decl.; Fisher Decl.,¶¶ 34, 36-37; Exhibit 3 to Fisher Decl.). Moreover, with respect to their claim for the production of books and records, Plaintiffs have provided supporting documents that explain their reasoning for why they are entitled to the documents, and why these documents are necessary for the proper administration of the Plaintiff Fund. *See* Exhibit 1 of Complaint, Article IX, Section 5.

Therefore, based on the evidence submitted, the Court should be able to conclude that the damages sought are "consistent with the terms of the contracts and are otherwise appropriate." *Landstar*, 725 F. Supp. 2d at 921.

### D. *There is No Factual Dispute That Would Preclude Entry of Default Judgment*

Defendant has made no attempt to challenge the accuracy of the allegations in the Complaint. Moreover, Plaintiffs have provided support of their factual allegations with ample evidence, including the submission of relevant exhibits upon the filing of the Complaint and the Declarations of Darrel Tillmannshofer and Garth Fisher in support of this Motion. As such, there should be "no factual dispute precluding entry of default judgment. *Landstar*, 725 F. Supp. 2d at 921-22.

### E. *The Possibility of Excusable Neglect is Minimal*

The possibility of excusable neglect is minimal. Even where a defendant is only constructively served through the Secretary of State, the failure to appear or defend is not a result of excusable neglect. See Solis*v. Vigilance, Inc.,* No 08-05083 JW, 2009 U.S. Dist. Lexis 63541, at *4-6 (N.D. Cal. July 9, 2009). Here, Defendant's owner was

13

served with the Summons and Complaint on March 13, 2020. (Dkt. No. 9). Moreover, Defendant's Vice President wrote a letter to Judge Hatter seeking a continuance of the matter after the court clerk had already entered a default (Dkt. 12). Since the continuance was requested by letter to Judge Hatter directly, and was also not done so through counsel, this Court ordered the request to be stricken (Dkt. 13). Defendant did not make any further attempts to appear or defend this case. As such, Defendant has failed to respond, and this factor should weigh in favor of granting default judgment.

**F. _The Six Eitel Factors Have Been Met and Are Not in Conflict with the Policy Favoring Decisions on the Merits_**

On balance, even though there is a general preference to decide matters on the merits, the first six _Eitel_ factors discussed above strongly favor the granting of a default judgment against Defendant.

**VII.   Requested Damages**

Awards granted after entering default judgment are governed by Fed. R. Civ. P. 54(c), which "allows only the amount prayed for in the complaint to be awarded to the plaintiff in default." See _Elektra Entm't Grp. v. Bryant_, No. 03-6381GAF, 2004 U.S. Dist. LEXIS 26700, at *5 (C.D. Cal. Feb. 13, 2004). Plaintiffs' demand for relief must be specific, and it "must prove up the amount of damages." _Landstar_, 725 F. Supp. 2d at 923 (internal quotation marks omitted).

In an action to enforce payment of delinquent contributions, a plaintiff is entitled to recover the unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs. ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2). See also _Operating Eng'rs Pension Trust Fund v. Clarke's Welding, Inc._, 688 F. Supp. 2d 902, 914 (N.D. Cal. 2010).

**A. _Claim for Payroll Audit Liability_**

Plaintiffs' first cause of action seeks a judgment against Defendant, and on behalf of Plaintiffs, for unpaid payroll audit liability for the period of July 1, 2011 through May 31, 2019. Section 515 of ERISA, 29 U.S.C. § 1145, provides that every

employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan in such agreements.

Pursuant to the CBAs and Plaintiff's Trust Agreement Defendant was obligated to remit contributions to the Plaintiff Fund. As discussed above, Plaintiffs determined that Defendant did not pay contributions for the shifts worked by or paid to its employees covered by the collective bargaining agreement during the period of July 1, 2011 through May 31, 2019. To support the damages sought, Plaintiffs have provided a copy of the payroll audit report outlining Plaintiffs' auditor's findings and an updated accounting of the remaining amounts that are due after the application of Defendant's partial payment towards this payroll audit liability. (Tillmannshofer Decl., ¶¶ 3-5, 7-11; Exhibits 1-3 of Tillmannshofer Decl.). As outlined in the payroll audit report and updated by the auditor's accounting, Defendant owes $62,681.13 in contributions and contribution increases under the Fund's Rehabilitation Plan.

## B. *Claim for Minimum Total Annual Contribution Shortages*

Plaintiffs' second cause of action seeks a judgment against Defendant, and on behalf of Plaintiffs, for unpaid minimum total annual contribution shortages for the 2011, 2012, 2015, 2016, 2018, and 2019 years. Section 515 of ERISA, 29 U.S.C. § 1145, is also applicable here. In addition to the contribution requirements set forth in Defendant's CBAs and Plaintiff's Trust Agreement, Defendant was obligated to remit contributions to the Plaintiff Fund because Plaintiffs' Rehabilitation Plan requires each participating employer to pay a minimum annual contribution rate which includes a base contribution rate determined by the employer's contributions from September 1, 2008 through August 31, 2009.  (Fisher Decl., ¶26). As discussed above, Defendant's contribution payments did not meet its 2011 and 2012 minimum total annual requirement, and upon payment of its delinquent 2015, 2016, 2018 and 2019 contributions, it will not meet its minimum total annual requirement for those years. As

15

outlined in Exhibit 3 to the Fisher Decl., Defendant owes $15,933.58 in minimum total annual contribution shortages for the 2011, 2012, 2015, 2016, 2018, and 2019 years. (Fisher Decl., ¶35).

## C. *Interest and Liquidated Damages for Payroll Audit Liability and Minimum Total Annual Contribution Shortages*

ERISA provides that "[i]n an action to enforce payment of contributions, a plaintiff is entitled to recover the unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs. ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2). See also *Operating Eng'rs Pension Trust Fund v. Clarke's Welding, Inc.*, 688 F. Supp. 2d 902, 914 (N.D. Cal. 2010). Moreover, pursuant to Article IX, Sections 6-7 of Plaintiff Fund's Trust Agreement and ERISA § 502(g)(2), 29 U.S.C.§1132(g)(2), in the event the Defendant fails to timely remit the contributions, it is liable not only for the amount of contributions due, but also for the following: (1) interest on the unpaid and untimely paid Fund contributions, at the rate of ten percent (10%) per annum, plus (2) liquidated damages equal to twenty percent (20%) of those delinquent contributions. (Complaint Exhibit 1, p.48).

With respect to Plaintiffs' payroll audit liability claim, interest is calculated from the due date of each monthly contribution payment, which is the 15th date of the month following the month for which contribution payment are due. (Tillmannshofer Decl., ¶ 10; Complaint Exhibit 1). As such, $18,532.37 in interest was calculated through October 18, 2019, when Plaintiffs' auditor initially drafted the payroll audit report. (Tillmannshofer Decl., ¶ 4). However, at the time of the filing of this Motion, the updated total interest amount on the payroll audit liability is $3,276.28. (Tillmannshofer Decl., ¶ 10). An additional $14.69 per day continues to accrue until paid. (Id.) Liquidated damages are $12,536.23. (Fisher Decl., ¶ 24).

With respect to Plaintiffs' minimum total annual contributions claim, interest is calculated from January 1 of the following year, for which the prior year's shortage is attributable to. As an example, the 2011 minimum total annual contribution shortage

would have been due January 1, 2012. Accordingly, as of the time of the filing of this Motion, the resulting interest amount is $2,910.17 plus $4.37 per day until paid. (Fisher Decl., ¶ 38.) Liquidated damages are $3,186.72. (Fisher Decl., ¶ 38.)

As such, Defendant owes a combined total of $24,718.82 in interest to date, plus $19.06 per day until paid, and a total of $15,722.95 in liquidated damages.

## D. *Audit Costs*

Under Article IX, Section 5 of the Plaintiff Fund's Trust Agreement, Defendant is required to permit the Plaintiff Fund to review its books and records to confirm that monthly contributions are being made in accordance with the terms of the CBA and the Trust Agreement. Under that same section, in the event the payroll audit discloses that the participating employer has not paid contributions, the employer shall be liable for the costs of the audit. (Complaint Exhibit 1, pp. 47-48).

Here, Plaintiffs incurred $8,632.10 in audit costs and the payroll audit disclosed that Defendant underpaid contributions during the period of July 1, 2011 through May 31, 2019. (Tillmannshofer Decl., ¶¶ 5, 12; Exhibit 2 to Tillmannshofer Decl.) Accordingly, Plaintiffs are entitled to $8,632.10 in audit costs.

## E. *Order for Production of Defendant's Books and Records*

As discussed above, together, the CBA and the Trust Agreement contractually obligate Defendant to make timely contributions on behalf of its employees covered under the CBA. As an enforcement mechanism, Plaintiffs perform routine payroll audits of participating employers to ensure that contributions are being made in accordance with the requirements of the CBA and the Trust Agreement. These audits are necessary for the proper administration of the Plaintiff Fund. The CBA and Plaintiff Fund's Trust Agreement also contractually obligate Defendant to permit the Plaintiffs, on demand, to check, examine and audit its books and records, including its payroll records, relating to hours worked by all of its employees. As such, the Court should order Defendant to produce its books and records covering the period of June 1, 2019 through January 21, 2020, within 30 days of Judgment by this Court.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

### F. *Attorney's Fees and Costs*

Since Defendant was delinquent in paying its contributions, Plaintiffs are entitled to reasonable attorney's fees. ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D). Local Rule 55–3 states that where a statute provides for reasonable attorney's fees, those fees must be calculated according to the schedule provided under that Rule. As of the date of the filing of this Motion, the total delinquency here is $127,688.58 which includes payroll audit liability, audit costs, minimum total annual contribution shortages, interest, and liquidated damages. Local Rule 55–3's schedule establishes that where the amount of judgment is over $100,000.00, attorney's fees are calculated at $5,600 plus 2% of the amount over $100,000.00. This totals $6,153.77 in attorney's fees. (Fisher Decl., ¶ 44). In addition, costs in this instant case total $853.50. (Fisher Decl., ¶ 45). Therefore, Plaintiffs are entitled to reasonable attorney's fees in the amount of $6,153.77 and costs in the amount of $853.50.

## VIII. Conclusion

For the reasons set forth above, the Court should grant this Motion for Default Judgment against Defendant Eagle Graphics, Inc.

Respectfully submitted,

Dated: <u>May 28, 2020</u>

<u>/s/ Valentina S. Mindirgasova</u>
Kerry K. Fennelly
Valentina S. Mindirgasova
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100
(760) 747-1188
kfennelly@kraw.com
vmindirgasova@kraw.com

Attorneys for Plaintiffs